UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL CETTA, INC. d/b/a/ SPARKS STEAK HOUSE, on behalf of themselves and all others similarly situated, | Case No. 1:20-cv-04612 (AT) |
| *Plaintiff*, | |
| v. | |
| ADMIRAL INDEMNITY COMPANY, | |
| *Defendant*. | |

### DEFENDANT ADMIRAL INDEMNITY COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS <u>MOTION TO DISMISS THE COMPLAINT</u>

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................ 1

II.   PROCEDURAL HISTORY AND ALLEGED FACTS ....................................... 3

    A.   This Lawsuit .......................................................................................... 3

    B.   Contract Language at Issue ................................................................... 5

        1.   Relevant Coverage Provisions ................................................. 5

        2.   The Virus Exclusion ................................................................ 6

III.  LEGAL STANDARDS ........................................................................................ 7

IV.   ARGUMENT ....................................................................................................... 8

    A.   The Virus Exclusion and Other Applicable Exclusions Bar Coverage for All of Plaintiff's Claims ................................................... 8

    B.   As a Matter of Law, Plaintiff Is Not Entitled to Business Income or Extra Expense Coverage Because the Complaint Fails to Allege Any "Direct Physical Loss of or Damage To Property" At the Insured Premises ................. 13

    C.   Plaintiff Cannot Establish Entitlement to Civil Authority Coverage Because the Orders Did Not Prohibit Access to the Insured Premises, and Were Not the Result of Physical Damage to Property Caused by a Covered Cause of Loss ................................................... 20

    D.   Dismissal of the First, Third and Fifth Causes of Action is Proper Because Plaintiff is Not Entitled to its Request Declarations ............................................ 23

    E.   Dismissal of the Second, Fourth, and Sixth Causes of Action for Breach of Contract is Proper Because Plaintiff is Not Entitled to Any Coverage ............... 24

    F.   The Putative Class Claims Must Be Dismissed Where Plaintiff's Individual Claims Fail ......................................................................... 25

V.    CONCLUSION ................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*10E, LLC v. Travelers Indem. Co.*,
  2020 WL 5359653 (C.D. Cal. Sept. 2, 2020) ..................................................11, 17, 18, 19, 23

*54th St. Ltd. Partners, L.P. v. Fid. & Guar. Ins. Co.*,
  763 N.Y.S.2d 243 (1st Dept. 2003) ...........................................................................................21

*730 Bienville Partners, Ltd. v. Assurance Co. of Am.*,
  67 F. App'x 248 (5th Cir. 2003) (unpublished) .........................................................................20

*Abner, Herrman & Brock, Inc. v. Great Northern Ins. Co.*,
  308 F. Supp. 2d 331 (S.D.N.Y. 2004)........................................................................................21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................................................................7

*Bamundo, Zwal & Schermerhorn, LLP v. Sentinel Ins. Co., Ltd.*,
  2015 WL 1408873 (S.D.N.Y. Mar. 26, 2015) ...........................................................................24

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................................................................7

*Casey v. Odwalla, Inc.*,
  338 F. Supp. 3d 284 (S.D.N.Y. 2018)........................................................................................22

*In re Citigroup Auction Rate Sec. Litig.*,
  700 F. Supp. 2d 294 (S.D.N.Y. 2009)........................................................................................25

*Commstop, Inc. v. Travelers Indemn. Co. of Conn.*,
  2012 WL 1883461 (W.D. La. 2012)...........................................................................................22

*Cytopath Biopsy Lab, Inc. v. U.S. Fid. & Guar. Co.*,
  6 A.D.3d 300, 774 N.Y.S.2d 710 (1st Dept. 2004)...................................................................12

*Diesel Barbershop, LLC, et al. v. State Farm Lloyds*,
  2020 WL 4724305 (W.D. Tex. Aug. 13, 2020).............................................................10, 11, 16

*Estruch v. Volkswagenwerk, AG*,
  97 A.D.2d 978, 468 N.Y.S.2d 959 (4th Dep't 1983).................................................................25

*Gavrilides Management Co. v. Michigan Ins. Co.*,
  Case No. 20-258-CB (Mich. Cir. Ct. July 1, 2020) (Ex. C) ...............................................11, 19

ii

*Harry's Cadillac-Pontiac-GMC Truck Co.*,
      486 S.E.2d 249 (N.C. App. 1997) ..........................................................16

*Ira Stier, DDS, P.C. v. Merchants Ins. Grp.*,
      127 A.D.3d 922, 7 N.Y.S.3d 365 (2d Dept. 2015) ...............................12

*J. O. Emmerich & Assocs., Inc. v. State Auto Ins. Cos.*,
      2007 WL 9775576 (S.D. Miss. Nov. 19, 2007).....................................16

*K. Bell & Assocs., Inc. v. Lloyd's Underwriters*,
      97 F.3d 632 (2d Cir.1996)........................................................................7

*Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins.*
      *Co. of Hartford*, 2007 WL 2489711 (M.D. La. Aug. 29, 2007) ...........22

*Lend Lease (U.S.) Constr. LMB Inc. v. Zurich Am. Ins. Co.*,
      136 A.D.3d 52, 22 N.Y.S.3d 24 (1st Dep't 2015) ................................10

*Malaube, LLC, v. Greenwich Ins. Co.*,
      2020 WL 5051581 (S.D. Fla. Aug. 26, 2020)..............................18, 20

*Mama Jo's Inc. v. Sparta Ins. Co.*,
      No. 18-12887, 2020 WL 4782369 (11th Cir. Aug. 18, 2020) (unpublished) .........................18

*Maurice Goldman & Sons, Inc. v. Hanover Ins. Co.*,
      80 N.Y.2d 986 (1992) ...............................................................................7

*Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am.*,
      2020 WL 5240218 (M.D. Fla. Sept. 2, 2020) ........................................11

*Nautilus Ins. Co. v. Barfield Realty Corp.*,
      2012 WL 4889280 (S.D.N.Y. Oct. 16, 2012) .......................................24

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*,
      17 F. Supp. 3d 323 (S.D.N.Y. 2014).........................................14, 15, 18, 19

*Northeast Georgia Heart Ctr., P.C. v. Phoenix Ins. Co.*,
      No. 2:12-CV-00245-WCO, 2014 WL 12480022 (N.D. Ga. May 23, 2014) ...........16

*Olin Corp. v. Consol. Alum. Corp.*,
      5 F.3d 10 (2d Cir. 1993)..........................................................................24

*Paradies Shops, Inc. v. Hartford Fire Ins. Co.*,
      2004 WL 5704715 (N.D. Ga. Dec. 15, 2004).......................................22

*Pearson Cap. Partners LLC v. James River Ins. Co.*,
      151 F. Supp. 3d 392 (S.D.N.Y. 2015)......................................................5

*Pentair, Inc. v. American Guar. and Liab. Ins. Co.*,
  400 F.3d 613 (8th Cir. 2005) ..................................................................16

*Philadelphia Parking Auth. v. Fed. Ins. Co.*,
  385 F. Supp. 2d 280 (S.D.N.Y. 2005).......................................................15, 21, 22

*Porrazzo v. Bumble Bee Foods, LLC*,
  822 F. Supp. 2d 406 (S.D.N.Y. 2011).......................................................22

*Prime All. Grp., Ltd. v. Hartford Fire Ins. Co.*,
  2007 WL 9703576 (S.D. Fla. Oct. 19, 2007).............................................12

*Rose's 1 LLC, et al. v. Erie Insurance Exchange*,
  2020 WL 4589206 (D.C. Super. Ct. Aug. 6, 2020) ..................................17

*Roundabout Theatre Co., Inc. v. Continental Cas. Co.*,
  302 A.D.2d 1, 751 N.Y.S.2d 4 (1st Dep't 2002) ......................................10, 13, 14, 15, 18, 19

*Ski Shawnee, Inc. v. Commonwealth Ins. Co.*,
  2010 WL 2696782 (M.D. Pa. July 6, 2010)...............................................21

*Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*,
  No. 20 Civ. 3311 (VEC) (S.D.N.Y. May 14, 2020) (Ex. D) ...........................16, 19

*Soley v. Wasserman*,
  823 F. Supp. 2d 221 (S.D.N.Y. 2011).......................................................24

*Southern Hospitality, Inc. v. Zurich American Ins.*,
  393 F.3d 1137 (10th Cir. 2004) ................................................................20, 21

*Studio 417, Inc. v. Cincinnati Ins. Co.*,
  No. 20-CV-03127-SRB, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020)............19, 20

*Syufy Enterprises v. The Home Insurance. Co. of Indiana*,
  1995 WL 129229 (N.D. Cal. Mar. 21, 1995).............................................22

*United Air Lines, Inc. v. Ins. Co. of State of PA*,
  439 F.3d 128 (2d Cir. 2006).....................................................................15

*Vill. of Sylvan Beach v. Travelers Indem. Co.*,
  55 F.3d 114 (2d Cir.1995)........................................................................7

## I.     **INTRODUCTION**

The COVID-19 pandemic has affected the public and many businesses throughout the country in unprecedented ways.  But these challenging and unfortunate circumstances do not create insurance coverage for losses that fall outside the terms of a policyholder's insurance contract.

This proposed class action case alleges that an insurance policy issued by Defendant Admiral Indemnity Company ("Admiral") provides coverage for business income losses and extra expenses resulting from the COVID-19 virus and government orders issued in connection therewith (the "Orders").  Plaintiff Michael Cetta, Inc. d/b/a Sparks Steak House operates the Sparks Steak House restaurant in Manhattan.  In its Complaint, Plaintiff alleges breach of contract claims and seeks various declaratory judgments.  Plaintiff's claims fail because, among other reasons, the policy contains an explicit exclusion of *any* type of property coverage for any "loss or damage resulting from any virus…that induces or is capable of inducing physical distress, illness or disease." (Ex. A, at 83.) This exclusion expressly applies to the Business Income, Extra Expense and Civil Authority coverages, and precludes coverage for Plaintiff's losses, which the Complaint alleges resulted from the COVID-19 virus. To the extent Plaintiff attempts to avoid the virus exclusion by pointing to the Orders as the cause of its losses, the Orders were issued to slow the spread of the virus, and cannot be divorced from their purpose. Moreover, the Orders cannot be a Covered Cause of Loss because, among other reasons, the Orders are a separately *excluded* cause of loss under the Ordinance or Law exclusion and Acts or Decisions exclusion in the Policies.

In addition to the case-dispositive virus exclusion, for additional reasons Plaintiff cannot establish that it is entitled to coverage under the policy's Civil Authority, Business Income, or Extra Expense provisions, or any of the declarations it seeks.  The Complaint fails, as a matter of law, in the following additional respects:

1

*First*, to be entitled to coverage under the policy's "Business Income" and "Extra Expense" provisions, Plaintiff must allege and ultimately prove, *inter alia*, that there was "direct physical loss of or damage to property" at the insured premises caused by or resulting from a Covered Cause of Loss (i.e., a risk that is not excluded), and that the loss or damage caused a suspension of its business operations.  (Ex. A, at 56). The Complaint pleads no facts supporting these requirements. The Complaint does not allege that any property at Plaintiff's premises was physically lost or damaged.  Plaintiff admits that the coronavirus has not been found on Plaintiff's premises. (Compl. ¶ 43.) Courts in New York and nationwide, including several recent decisions involving COVID-19-related business interruption insurance claims, have repeatedly and consistently rejected Plaintiff's legal theory that a temporary loss of use or functionality of premises constitutes "direct physical loss of or damage to property." Plaintiff's inability to plead any physical loss of or damage to its property is fatal to its claim for Business Income and Extra Expense coverage. Moreover, even if Plaintiff could establish "direct physical loss of or damage to property" within the meaning of the Business Income and Extra Expense provisions (and it cannot), the alleged loss or damage was not caused by or resulting from a Covered Cause of Loss, as required by the policy. Rather, Plaintiff's losses are excluded by the virus exclusion.

*Second*, the facts alleged in the Complaint demonstrate that Plaintiff is not entitled to coverage under the Policy's Civil Authority provision. This provision applies only where: (1) "action of civil authority . . . prohibits access to the [insured] premises" and the immediate surrounding area; (2) "a Covered Cause of Loss causes damage to property other than property at the described premises"; and (3) "[t]he action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to

the damaged property." (Ex. A, at 57). Plaintiff cannot satisfy the requirement that the civil authority action must "prohibit[] access" to its premises and the surrounding area because, as Plaintiff concedes and the relevant mayoral order reflects, restaurants were permitted to remain open for take-out and delivery service. (Compl. ¶ 30; Ex. B, § 7). Moreover, to the extent the mayor's order cites purported physical damage to property allegedly caused by the COVID-19 virus, this was not a "Covered Cause of Loss" because the virus exclusion applies. Accordingly, Civil Authority coverage is not available.

Because the Complaint does not plead facts supporting a plausible entitlement to coverage under the policy, Plaintiff, as a matter of law, is not entitled to any of the declarations it seeks. Moreover, because Plaintiff cannot plead facts to establish coverage, its claims for breach of contract, all premised on the wrongful denial of coverage, likewise fail as a matter of law. Without any viable claim in its own right, Plaintiff cannot proceed on behalf of a class. The Complaint should therefore be dismissed, in its entirety, and with prejudice.

## II.   PROCEDURAL HISTORY AND ALLEGED FACTS

### A.   This Lawsuit

Plaintiff commenced this action by filing the Complaint on June 16, 2020. (ECF Doc. 1). After the parties completed the exchange of letters required by Your Honor's Individual Practices in Civil Cases, and Plaintiff did not elect to amend the Complaint, Defendant requested a pre-motion conference or a briefing schedule for its anticipated Rule 12(b)(6) motion to dismiss. (Doc. 15).  Following Plaintiff's response to Defendant's pre-motion letter (Doc. 18), this Court denied Defendant's request for a pre-motion conference and ordered a briefing schedule for Defendant's motion to dismiss. (Doc. 19).

The Complaint alleges that Plaintiff operates Sparks Steak House restaurant in Manhattan. (*Id.*, ¶ 14).  In or about June 2019, Plaintiff purchased a policy of insurance from Admiral bearing

policy number 21-31120731-36 (the "Policy") and having effective dates of June 26, 2019 through June 26, 2020. (*Id.*, ¶ 16).  Plaintiff alleges that the Policy insures "business losses and extra expenses, and related losses resulting from actions taken by civil authorities to stop the human to human and surface to human spread of the COVID-19 outbreak." (*Id.*, ¶ 10).

The Complaint alleges that Plaintiff "suffered a direct physical loss of and damage to their property" "caused by" stay-at-home orders (the "Orders") issued to "stop the spread of COVID-19," a "novel virus" that created a "public health emergency of international concern."  (*Id.*, ¶¶ 10, 19, 20, 42, 75).  Specifically, Plaintiff alleges that the Orders were issued "to protect the health and safety of . . . residents from the human to human and surface to human spread of COVID-19," and "to stop the spread of COVID-19 among the population." (*Id.*, ¶¶ 3, 9).  Plaintiff alleges that under the Orders "all but one state has closed restaurants and bars for services other than take-out and delivery." (*Id.*, ¶ 30).  According to the Complaint, the Orders "requir[ed] suspension of operations" and "Plaintiff was forced to close." (*Id.*, ¶¶ 46, 75).

The Complaint alleges six counts for declaratory judgment and breach of contract under the Business Income, Civil Authority and Extra Expense coverage provisions. (*Id.*, ¶¶ 62-108.) Plaintiff seeks a declaratory judgment that Plaintiff incurred "Business Income losses" in "connection with" the Orders; that "Admiral is obligated to pay . . . for the full Amount of the Business Income losses incurred and to be incurred in connection with" the Orders; that Plaintiff incurred "Civil Authority losses . . . in connection with" the Orders; that "Admiral is obligated to pay . . . the full amount of the Civil Authority losses"; that Plaintiff incurred "Extra Expense losses . . . in connection with" the Orders; and that "Admiral is obligated to pay . . . for the full amount of Extra Expense losses." (*Id.*, ¶¶ 68, 85, 100).  The Complaint also seeks compensatory damages,

attorneys' fees and costs related to its allegations of breach of contract under the same coverage provisions.  (*Id.*, ¶¶ 71–78, 88–93, 103–08, Prayer for Relief).

### B.   Contract Language at Issue[1]

#### 1.   Relevant Coverage Provisions

Plaintiff purchased a commercial property insurance policy from Admiral, a type of insurance policy for businesses and other commercial organizations which insured its business personal property from covered causes of loss, such as a fire or windstorm. For example, in the event of a fire that damages business personal property and requires a suspension of business operations, the Policy would cover a loss of business income or increase in expenses that results from the suspension of operations that occurs during the "period of restoration"—while the repairs are being made. The Business Income and Extra Expense coverages provide, in relevant part:

#### 1.   Business Income

. . .

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration".  The "suspension" must be caused by <u>direct physical loss of or damage to property at premises which are described in the Declarations</u> . . . .   The loss or damage must be caused by or result from a <u>Covered Cause of Loss</u>.

. . .

#### 2.   Extra Expense

. . .

---

[1] Admiral attaches as <u>Exhibit A</u> hereto a certified copy of the Policy. The Court may consider the Policy in ruling on Admiral's Motion to Dismiss.  *See Pearson Cap. Partners LLC v. James River Ins. Co.,* 151 F. Supp. 3d 392, 402 (S.D.N.Y. 2015) ("Because the dispute between the Parties centers around whether the terms of the Policy provide coverage to Plaintiffs under the circumstances alleged, the Policy itself is clearly integral to the complaint.") (internal citations and quotation marks omitted).

> Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no <u>direct physical loss of or damage to property</u> caused by or resulting from a <u>Covered Cause of Loss</u>.

(Ex. A., at 56 (underscores added)).

In the provision entitled "Civil Authority," coverage for Business Income and Extra

Expense is extended as follows, for a period of up to 30 days:

> When a <u>Covered Cause of Loss causes damage to property other than property at the described premises</u>, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by <u>action of civil authority that prohibits access to the described premises</u>, provided that both of the following apply:
>
> **(1)** <u>Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage</u>, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> **(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(*Id.* at 57 (underscores added)).

The Business Income, Extra Expense and Civil Authority coverages all require a "Covered Causes of Loss."  The Policy defines the term "Covered Causes of Loss" as "Risks of Direct Physical Loss <u>unless the loss is . . . [e]xcluded[.]</u>" (*Id.* at 68 (emphasis added)).

### 2.    The Virus Exclusion

Virus is among the risks of loss that are expressly excluded by the Policy.  The virus exclusion is found in an endorsement entitled "NEW YORK - EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA," which "applies to all coverage under all forms and endorsements that comprise" the Commercial Property Coverage Part of the Policy, "including but not limited to

forms or endorsements that cover . . . business income, extra expense or action of civil authority."
The exclusion concisely states in plain terms that:

> We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

(*Id.* at 83 (emphasis added)).

## III.   LEGAL STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, which, if accepted as true, "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff "must plead more than labels and conclusions," and "[f]actual allegations must be enough to raise the right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678.

Under New York law, the initial interpretation of a contract is a matter of law for the Court to decide. *K. Bell & Assocs., Inc. v. Lloyd's Underwriters,* 97 F.3d 632, 637 (2d Cir.1996).  An insurance policy is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract. *See Vill. of Sylvan Beach v. Travelers Indem. Co.,* 55 F.3d 114, 115 (2d Cir.1995) (citations omitted).  When the provisions are clear and unambiguous, courts enforce them as written. *Id.,* (citations omitted).  A court should "not strain to superimpose an unnatural or unreasonable construction." *Maurice Goldman & Sons, Inc. v. Hanover Ins. Co.,* 80 N.Y.2d 986, 987 (1992).

IV.   **ARGUMENT**

The facts alleged in the Complaint demonstrate, as a matter of law, that Plaintiff is not entitled to Business Income, Extra Expense or Civil Authority coverage under the Policy.  Indeed, the Complaint seeks coverage for losses that Plaintiff alleges were caused by Orders issued to combat the spread of a virus—yet, as previously described, the Policy contains an explicit exclusion of *any* type of property coverage—including Business Income, Extra Expense and Civil Authority coverage—for *any* "loss or damage resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."  For this reason alone, all six of the Complaint's causes of action should be dismissed with prejudice.

**A.    The Virus Exclusion and Other Applicable Exclusions Bar Coverage for All of Plaintiff's Claims**

Plaintiff cannot obtain Business Income, Extra Expense or Civil Authority coverage for its losses because it cannot satisfy the Policy's requirement of a Covered Cause of Loss.  The Business Income and Extra Expense provisions require "direct physical loss of or damage to property" at the insured premises that is "caused by or result[s] from a Covered Cause of Loss." (Ex. A, at 56.) The Civil Authority provision applies only "[w]hen a Covered Cause of Loss causes damage to property other than property at the described premises," this results in "action of civil authority that prohibits access to the described premises," and certain other requirements are satisfied. (*Id.* at 57.) Thus, either "direct physical loss of or damage to property" or "damage to property" caused by a Covered Cause of Loss is required for any of the coverages sought by Plaintiff to apply. And the Policy makes clear that an excluded risk of loss, such as a virus, is not a Covered Cause of Loss. (*Id.* at 68.) As the Complaint acknowledges, the Policy's virus exclusion applies to all "loss or damage caused by or resulting from any virus … that induces or is capable of inducing physical distress, illness or disease." (Compl., ¶ 41; *see also* Ex. A, at 83).  The plain language of the

exclusion demonstrates its broad scope, stating that it "applies to all coverage under all forms and endorsements that comprise this [Commercial Property] Coverage Part including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover <u>business income, extra expense or action of civil authority</u>." (Ex. A, at 83 (emphasis added)). Thus, any loss of business income or extra expense claimed under the Business Income, Extra Expense or Civil Authority coverage is excluded if it is caused by or results from a virus.

The Complaint makes clear that the coronavirus, SARS-CoV-2, is a "virus" that causes "COVID-19," which "constitute[s] a public health emergency of international concern" resulting in "2.5 million cases . . . globally and over 170,000 deaths." (Compl., ¶¶ 19, 20). Thus, as alleged by Plaintiff, COVID-19 is a virus "that induces or is capable of inducing physical distress, illness or disease," falling squarely within the virus exclusion. (Ex. A, at 83). A virus is not a Covered Cause of Loss and therefore cannot give rise to Business Income, Extra Expense or Civil Authority coverage.

To avoid this outcome, Plaintiff alleges that the Orders were the "efficient proximate cause" of Plaintiff's losses. (Compl., ¶ 43). Plaintiff's argument fails. The virus exclusion plainly communicates that if a business is closed because of a virus, there is no coverage, and the Orders cannot be divorced from the reason why they were issued. The virus exclusion expressly applies to the Business Income, Extra Expense and Civil Authority coverages (Ex. A, at 83), which only apply where, among other requirements, a business has been forced to suspend its operations. But a virus cannot, in and of itself, close a business; rather, some form of human intervention (such as by government order or business decision) is obviously required to cause a business income or extra expense loss. To adopt Plaintiff's theory that the Orders, divorced from their purpose,

constitute a Covered Cause of Loss would render the virus exclusion "meaningless," *Roundabout Theatre Co., Inc. v. Continental Cas. Co.*, 302 A.D.2d 1, 8, 751 N.Y.S.2d 4, 9 (1st Dep't 2002), and effectively "rewrite" the Policy "to include coverage that was never intended." *Lend Lease (U.S.) Constr. LMB Inc. v. Zurich Am. Ins. Co.*, 136 A.D.3d 52, 59, 22 N.Y.S.3d 24, 30 (1st Dep't 2015).  Moreover, to adopt Plaintiff's theory that the Orders can be divorced from their purpose would render the virus exclusion illusory as it relates to Civil Authority coverage because any colorable claim for Civil Authority coverage can be said to be caused by a government order. New York law does not allow such a construction of the Policy.

Several courts have recently held that virus exclusions exclude business income losses caused by the COVID-19 pandemic. In *Diesel Barbershop, LLC, et al. v. State Farm Lloyds*, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020), for example, the court granted the insurer's motion to dismiss, rejecting the same argument that Plaintiff puts forth in its Complaint here—that government orders issued to mitigate the spread of the virus were the cause of loss rather than the virus.  The court explained that:

> Plaintiffs have pleaded that COVID-19 is in fact the reason for the [government] Orders being issued and the underlying cause of Plaintiffs' alleged losses. While the Orders technically forced the Properties to close to protect public health, *the Orders only came about sequentially as a result of the COVID-19 virus spreading rapidly throughout the community. **Thus, it was the presence of COVID-19 in Bexar County and in Texas that was the primary root cause of Plaintiffs' businesses temporarily closing.***

*Id.* at *6 (emphasis added).[2]

A Michigan Circuit Court rejected the same argument in another COVID-19 property insurance coverage case.  The insured restaurant claimed the virus exclusion did not apply to its

---

[2] The court also discussed an anti-concurrent causation ("ACC") clause in the virus exclusion in the policy at issue. *Id.* at *6-7. The ACC clause was not essential to the outcome, however, because the court concluded that the virus was the "primary root cause." *Id.* at *6.

business income losses because "the damage caused was really caused by actions of the civil authority to protect public health." *Gavrilides Management Co. v. Michigan Ins. Co.*, Case No. 20-258-CB, Mich. Cir. Ct. for Ingham County, Tr. of July 1, 2020 Hearing, p. 21 (Ex. C hereto). As in *Diesel Barbershop*, the court rejected this argument, concluding that the virus exclusion "supplies a completely workable, understandable, usable definition of the word virus," and "the plaintiff has not supported that [the virus exclusion] doesn't apply . . . ." *Id.*

In *Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am.*, 2020 WL 5240218 (M.D. Fla. Sept. 2, 2020), the court again granted an insurer's motion to dismiss, holding that a virus exclusion barred coverage for a COVID-19-related business interruption insurance claim made by a dental practice. The court explained that "[b]ecause [plaintiff's] damages resulted from COVID-19, which is clearly a virus, neither the Governor's executive order narrowing dental services to only emergency procedures nor the disinfection of the dental office of the virus is a 'Covered Cause of Loss' under the plain language of the policy's exclusion." *Id.* at *2.[3]

Here, as in *Deisel Barberhop*, *Gavrilides* and *Martinez*, the virus exclusion bars coverage for Plaintiff's claimed losses. Moreover, even assuming the Orders themselves could be divorced from their purpose and considered the cause of Plaintiff's losses (which they are not), Plaintiff's claims still fail because the purported cause would be excluded from coverage under two other exclusions in the Policy. First, the Policy's Ordinance or Law exclusion provides that Admiral "will not pay for loss or damage caused directly or indirectly by . . . [t]he enforcement of any

---

[3] In *10E, LLC v. Travelers Indem. Co.*, 2020 WL 5359653 (C.D. Cal. Sept. 2, 2020), the court dismissed the complaint without expressly reaching the applicability of the virus exclusion, but stated that "the Court notes its skepticism that Plaintiff can evade application of the Policy's virus exclusion" because the plaintiff restaurant's "theory of liability appears to inevitably rest on a potentially implausible allegation that in-person dining restrictions are not attributable to 'any virus,' a cause which the Policy expressly excludes." *Id.* at *6.

ordinance or law . . . [r]egulating the . . . use . . . of any property . . . ."  (Ex. A, at 68).  This

exclusion applies, to the extent that Plaintiff claims that the Orders caused its loss, because the

Orders regulate the use of Plaintiff's property by restricting restaurant operations to take-out and

delivery. (Compl., ¶ 30). The Appellate Division, Second Department has explained that this

exclusion "clearly and unambiguously excludes coverage for losses caused directly or indirectly

by the enforcement of any ordinance or law regulating the . . . use . . . of any property" and

"excludes coverage for losses, including business income losses, caused by the enforcement of the

law." *Ira Stier, DDS, P.C. v. Merchants Ins. Grp.*, 127 A.D.3d 922, 924, 7 N.Y.S.3d 365, 367 (2d

Dept. 2015) (holding that, where dental practice could not operate due to ordinance requiring

certificate of occupancy, Ordinance or Law exclusion precluded coverage for plaintiff's business

income losses).

Second, the Policy's Acts or Decisions exclusion provides that Admiral "will not pay for

loss or damage caused by or resulting from . . . [a]cts or decisions, including the failure to act or

decide, of any person, group, organization or governmental body." (Ex. A, at 71).  The Orders

plainly fall within this exclusion. *See Cytopath Biopsy Lab, Inc. v. U.S. Fid. & Guar. Co.*, 6 A.D.3d

300, 774 N.Y.S.2d 710, 711 (1st Dept. 2004) (acts or decisions exclusion applied where losses

"resulted from refusal by the authorities to permit resumption of operations until proper permits

were obtained and a more acceptable ventilation system was installed").  Accordingly, Plaintiff

cannot establish that its losses were caused by a Covered Cause of Law, even on its theory that its

losses were caused by the Orders rather than the COVID-19 virus. *See also Prime All. Grp., Ltd.*

*v. Hartford Fire Ins. Co.*, No. 06-22535-CIV, 2007 WL 9703576, at *4 (S.D. Fla. Oct. 19, 2007)

("The order of civil authority cannot in any reasonable manner be construed as" a covered loss

under the policy because the Civil Authority provision "merely extends *coverage* under the policy

12

to include 'the loss sustained' when 'access to real or personal property is prohibited by an order of civil or military authority.'").

B.   **As a Matter of Law, Plaintiff Is Not Entitled to Business Income or Extra Expense Coverage Because the Complaint Fails to Allege Any "Direct Physical Loss of or Damage To Property" At the Insured Premises**

Both the Business Income and Extra Expense provisions require, as a prerequisite to coverage, "direct physical loss of or damage to property" at the insured premises "caused by or result[ing] from a Covered Cause of Loss." (Ex. A, at 56).  The First Department construed similar policy language in *Roundabout Theatre Co. v. Continental Cas. Co.*, 302 A.D.2d 1, 751 N.Y.S.2d 4 (1st Dept. 2002), in which the insured theatre was required to close when an exterior elevator being used in the construction of a nearby building collapsed into the street, requiring a closure of the street where the theatre was located. *Id.* at 3. The insurance policy provided business interruption coverage "in the event of interruption, postponement or cancellation of an Insured Production as *a direct and sole result of loss of, damage to, or destruction of property or facilities (including the theatre building occupied ... by the Insured, and [certain equipment])*, contracted by the Insured for use in connection with such Production, *caused by the perils insured against . . . .*" *Id.* (emphasis in original). The perils insured against included all risks of direct physical loss or damage that were not excluded. *Id.* The First Department held that the policy "clearly and unambiguously provides coverage only where the insured's property suffers direct physical damage," and that "the business interruption coverage is limited to losses involving physical damage to the insured's property." *Id.* at 6-7. In so holding, the First Department expressly rejected the trial court's conclusion that "loss of" property included "loss of use of" property, explaining that "'loss of' could refer to the theft or misplacement of theatre property that is neither damaged nor destroyed . . . ." *Id.* at 7. The court further noted that the policy language "loss of, damage to,

13

or destruction of" "is limited by the phrase 'caused by the perils insured against," which as noted, requires 'direct physical loss or damage to the [insured's] property." *Id.*  The court explained that the "plain meaning of the words 'direct' and 'physical' narrow the scope of coverage and mandate the conclusion that losses resulting from off-site property damage do not constitute covered perils under the policy." *Id.*  The court further noted that under the policy the measure of recovery would be limited to the time reasonably necessary to "rebuild, repair, or replace" the lost or damaged property, further demonstrating "that coverage is limited to instances where the insured's property suffered direct physical damage." *Id.* at 7-8 (emphasis removed).

In *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323 (S.D.N.Y. 2014) (Engelmayer, J.), this Court applied the reasoning in *Roundabout* in concluding that "[t]he critical policy language here—'direct physical loss or damage'—similarly, and unambiguously, requires some form of actual, physical damage to the insured premises to trigger loss of business income and extra expense coverage." *Id.* at 331.  The plaintiff conceded that its premises did not "sustain any structural damage as a result of Hurricane Sandy," but power to its premises was shut off to preserve the utility provider's system from anticipated flooding due to Hurricane Sandy. The plaintiff claimed, however, that the utility provider's shutdown of power constituted "direct physical loss or damage" to plaintiff's property, as required under the policy. *Id.* at 329.  The plaintiff relied on out-of-state decisions holding that noxious fumes or gases in a workplace constituted "direct physical loss or damage" "because the property at issue was rendered unusable or unsatisfactory for its intended purpose." *Id.* The Court found these cases distinguishable because "[i]n each there was some compromise to the physical integrity of the workplace"—"[w]hether or not these cases were each correctly decided, each involved the closure of a building due to either a physical change for the worse in the premises . . . or a newly discovered

14

risk to its physical integrity . . . ." *Id.* at 330. Applying the Appellate Division precedent in

*Roundabout Theatre*, the Court held that:

> The critical policy language here—"direct physical loss or damage"—similarly,
> and unambiguously, *requires some form of actual, physical damage to the insured
> premises* to trigger loss of business income and extra expense coverage. Newman
> Myers simply cannot show any such loss or damage to the 40 Wall Street Building
> as a result of either (1) its inability to access its office from October 29 to November
> 3, 2012, or (2) Con Ed's decision to shut off the power to the Bowling Green
> network. *The words "direct" and "physical," which modify the phrase "loss or
> damage," ordinarily connote actual, demonstrable harm of some form to the
> premises itself, rather than forced closure of the premises for reasons exogenous to
> the premises themselves, or the adverse business consequences that flow from such
> closure.*

*Id.* at 331 (emphasis added). The Court therefore rejected the insured's argument that "'direct

physical loss or damage' should be read to include to [sic] extend to mere loss of use of a premises,

where there has been no physical damage to such premises." *Id.* The Court also noted that the

policy's definition of "period of restoration," i.e., the time period for which coverage would be

provided for a covered business income or extra expense loss, was defined as the time required to

"repair or replace property," and "[t]he words 'repair' and 'replace' contemplate physical damage

to the insured premises as opposed to loss of use of it."[4] *Id.* at 332; *see also Philadelphia Parking

Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 287 (S.D.N.Y. 2005) ("'Rebuild,' 'repair' and 'replace'

all strongly suggest that the damage contemplated by the Policy is physical in nature."); *United

Air Lines, Inc. v. Ins. Co. of State of PA*, 439 F.3d 128, 129 (2d Cir. 2006) ("because [the insured]

cannot show that [its] lost earnings resulted from physical damage to its property or from physical

---

[4] Here, the Policy contains a similar definition of the "period of restoration," which is defined to
end on the earlier of "(1) [t]he date when the *property at the described premises should be repaired,
rebuilt or replaced* with reasonable speed and similar quality; or (2) [t]he date when business is
resumed at a new permanent location." (Ex. A, at 66 (emphasis added)).

damage to an adjacent property, under the unambiguous language of the insurance policy, the losses are not covered").

Consistent with these New York decisions, courts nationwide have repeatedly held that property insurance policies do not cover purely economic losses caused by a loss of use of property that has not been physically lost or damaged.[5] In accordance with these prior decisions, several courts have found no coverage for COVID-19-related business income losses because the plaintiff could not demonstrate "direct physical loss of or damage to property" at the insured premises:

- In *Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*, No. 20 Civ. 3311 (VEC) (S.D.N.Y. May 14, 2020) (Ex. D hereto), Judge Caproni denied the plaintiff's motion for a preliminary injunction, explaining that the COVID-19 virus "damages lungs," "[i]t doesn't damage printing presses" or other property, and "this is just not what's covered under these insurance policies." *Id.* at 5, 15.

- In *Diesel Barbershop*, the court granted the insurer's motion to dismiss in COVID-19 case because, among other reasons, the plaintiffs failed to plead "direct physical loss" because they did not allege "a distinct, demonstrable physical alteration of the property." *Diesel Barbershop*, 2020 WL 4724305 at *5.

---

[5] *See, e.g.*, *Pentair, Inc. v. American Guar. and Liab. Ins. Co.*, 400 F.3d 613, 617 (8th Cir. 2005) (Minnesota law) (rejecting argument that "mere loss of use or function of property constitutes 'direct physical loss or damage'" without demonstrable physical damage); *Northeast Georgia Heart Ctr., P.C. v. Phoenix Ins. Co.*, No. 2:12-CV-00245-WCO, 2014 WL 12480022, *6 (N.D. Ga. May 23, 2014) ("The court will not expand 'direct physical loss' to include loss-of-use damages when the property has not been physically impacted in some way.  To do so would be equivalent to erasing the words 'direct' and 'physical' from the policy."); *J. O. Emmerich & Assocs., Inc. v. State Auto Ins. Cos.*, 2007 WL 9775576, *5 (S.D. Miss. Nov. 19, 2007) (where insured was denied access to computer data during power outage, this was not "direct physical loss of or damage to" property); *Harry's Cadillac-Pontiac-GMC Truck Co.*, 486 S.E.2d 249, 251 (N.C. App. 1997) (finding no "physical loss" sufficient to trigger business interruption coverage where customers could not access car dealership due to heavy snowstorm).

- In *Gavrilides Mgmt.*, the Michigan Circuit Court held that there were "no allegations of direct physical loss of or damage to . . . property" because that "has to be something with material existence," "[s]omething that is tangible," "that alters the physical integrity of the property." *Gavrildes Mgmt.*, tr. at 18–19 (Ex. C hereto). The court further stated that "it seems like the plaintiff is saying that the physical requirement is met because people were physically restricted from dine-in services [at the plaintiffs' restaurants]," "[b]ut, that argument is ***just simply nonsense*** [a]nd it comes nowhere close to meeting the requirement that . . . there has to be some physical alteration to or physical damage or tangible damage to the integrity of the building." *Id.* at 20 (emphasis added).

- The District of Columbia Superior Court held that there was no "direct physical loss" caused by governmental orders limiting restaurant operations because the orders "did not effect any direct changes to the properties," and "did not have any effect on the material or tangible structure of the insured properties." *Rose's 1 LLC, et al. v. Erie Insurance Exchange*, 2020 WL 4589206, *2 (D.C. Super. Ct. Aug. 6, 2020). The court further explained that the policy required that the loss "must be caused, without the intervention of other persons or conditions, by something pertaining to matter—in other words, a direct physical intrusion on to the insured property[,] [and] Mayor Bowser's orders were not such a direct physical intrusion." *Id.*

- In *10E*, the court granted the insurer's motion to dismiss, rejecting the same argument Plaintiff makes here—that "'loss,' unlike 'damage,' encompasses temporary impaired use." *10E*, 2020 WL 5359653, at *5. Specifically, the court held that an "insured cannot recover by attempting to artfully plead impairment to economically valuable use of property as physical loss or damage." *Id.* While "public health restrictions" limited the

plaintiff's restaurant services to take-out and delivery, those restrictions did not "physically alter any of Plaintiff's property," precluding coverage under the policy. *Id.* Rather, the "[p]laintiff only plausibly alleges that in-person dining restrictions interfered with the use or value of its property – not that the restrictions caused direct physical loss or damage." *Id.* The court further explained that "[e]ven if the Policy covers 'permanent dispossession' in addition to physical alteration, that does not benefit Plaintiff here," because the plaintiff's complaint "does not allege that it was permanently dispossessed of any insured property," instead "Plaintiff remained in possession of its dining room, bar, flatware, and all of the accoutrements of its 'elegantly sophisticated surrounding.'" *Id.*

- In *Malaube, LLC, v. Greenwich Ins. Co.*, 2020 WL 5051581 (S.D. Fla. Aug. 26, 2020), a federal magistrate judge issued a report and recommendation, recommending that the defendant's motion to dismiss should be granted. The plaintiff claimed that Florida government orders "caused a direct physical loss because they forced Plaintiff to close its indoor dining to mitigate the spread of COVID-19." *Id.* at *5. The court held that there was no coverage because the plaintiff "has not alleged any physical harm," and "the restaurant merely suffered economic losses – not anything tangible, actual, or physical." *Id.* at *7-8; *see also Mama Jo's Inc. v. Sparta Ins. Co.*, No. 18-12887, 2020 WL 4782369, at *8 (11th Cir. Aug. 18, 2020) (unpublished) (holding that, in applying the "direct physical loss" requirement under Florida law, "an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical'"))..

Here, as in *Roundabout Theatre*, *Newman Myers*, and all of the COVID-19 cases cited above, Plaintiff has not alleged that any of its property was physically lost or damaged, and thus it cannot establish an entitlement to coverage. The Complaint alleges that Plaintiff has "suffered a

direct physical loss of and damage to their property because they have been unable to use their property for its intended purpose," due to the Orders issued "to stop the spread of COVID-19." (Compl., ¶¶ 9, 42, 75). The Complaint admits that the COVID-19 virus has not been found on Plaintiff's premises.[6] (*Id.*, ¶ 43). The Complaint does not allege that any property at Plaintiff's premises was physically lost (such as a theft or disappearance) or damaged. Plaintiff has "pleaded impairment to economically valuable use of property," which courts in New York and elsewhere have consistently held does not satisfy the direct physical loss requirement, including in the COVID-19 context. *See, e.g.*, *Newman*, 17 F. Supp. 3d at 330; *10E*, at *5. Under New York law, a limitation on the use of an insured premises does not constitute "direct physical loss of or damage to property" within the meaning of the Policy. *See, e.g.*, *Roundabout Theatre*, 302 A.D.2d at 7 ("business interruption coverage is limited to losses involving physical damage to the insured's property"); *Newman Myers*, 17 F. Supp. 3d at 331 (business income coverage "requires some form of actual, physical damage to the insured premises to trigger" coverage); *see also Gavrilides*, tr. at 20 (describing this argument as "simply nonsense" in a COVID-19 business interruption insurance case). Plaintiff has not alleged "actual, demonstrable harm of some form to the premises itself," rather; it alleges a "forced closure of the premises for reasons exogenous to the premises themselves." *Newman*, 17 F. Supp. 3d at 331. Plaintiff "cannot recover by attempting to artfully plead impairment to economically valuable use of property as physical loss or damage to property." *10E*, at *5.[7]

---

[6] Admiral maintains that the presence of a virus would not constitutes "direct physical loss of or damage to property" under the Policy, *see Social Life*, tr., at 5, but Admiral does not seek adjudication of that issue, and the Court need not address that issue because the Complaint does not allege that the COVID-19 virus was present at Plaintiff's premises.

[7] Plaintiff undoubtedly will cite the recent Western District of Missouri decision in *Studio 417, Inc. v. Cincinnati Ins. Co.*, No. 20-CV-03127-SRB, 2020 WL 4692385, at *1 (W.D. Mo. Aug. 12,

Moreover, even if Plaintiff could establish "direct physical loss of or damage to property" within the meaning of the Business Income and Extra Expense provisions (and it cannot), the alleged loss or damage was not "caused by or result[ing] from a Covered Cause of Loss."  The Complaint identifies, in numerous paragraphs, the outbreak of the COVID-19 virus as the cause of Plaintiff's losses. (*See, e.g.*, Compl., ¶¶ 1–3, 9–10, 18–30).  Plaintiff's losses are therefore excluded by the virus exclusion in the Policy, as explained in Section IV.A. above.

### C. Plaintiff Cannot Establish Entitlement to Civil Authority Coverage Because the Orders Did Not Prohibit Access to the Insured Premises, and Were Not the Result of Physical Damage to Property Caused by a Covered Cause of Loss

Plaintiff's allegations also fail to satisfy the Policy's requirement for Civil Authority coverage that there must be "action of civil authority that prohibits access to the described premises" and the surrounding area. (Ex. A, at 57).  Courts interpreting civil authority provisions uniformly hold that the phrase "prohibit access" means to "formally forbid" or "prevent" any access to the premises. *See*, *e.g.*, *Southern Hospitality, Inc. v. Zurich American Ins.*, 393 F.3d 1137, 1140 (10th Cir. 2004); *730 Bienville Partners, Ltd. v. Assurance Co. of Am.*, 67 F. App'x 248 (5th Cir. 2003) (unpublished) ("The generally prevailing meaning of 'prohibit' is . . . 'to forbid by

---

2020), which involved a COVID-19-related business income insurance claim made under a policy that had no virus exclusion. In addition to the absence of a virus exclusion, *Studio 417* is readily distinguishable because the court relied entirely on the plaintiffs' allegations that "over the last several months, it is likely that customers, employees, and/or other visitors to the insured properties were infected with COVID-19 and thereby infected the insured properties with the virus." *Id.* at *2. The court concluded that the plaintiffs had adequately alleged "direct physical loss" by alleging that "COVID-19 allegedly attached to and deprived Plaintiffs of their property, making it 'unsafe and unusable, resulting in direct physical loss to the premises and property.'" *Id.* at *4. Here, in contrast, Plaintiff alleges that it is *not* claiming that "coronavirus was found in or on Plaintiff's insured property." (Compl., ¶ 43). *See Malaube*, 2020 WL 5051571, at *7 (distinguishing *Studio 417* because "[t]here is no allegation, for example, that COVID-19 was physically present on the premises. Instead, Plaintiff only alleges that two Florida Emergency Orders forced the closure of its restaurant."). Moreover, any allegation that the COVID-19 virus was in Plaintiff's premises here would be fatal to their claims under the virus exclusion, as explained in Section IV.A, above.

authority or command,'" and "[i]t is undisputed that the FAA did not forbid any person to access the [insured's] hotels" after the September 11th attacks). In *54th St. Ltd. Partners, L.P. v. Fid. & Guar. Ins. Co.*, 763 N.Y.S.2d 243, 244 (1st Dept. 2003), for example, the First Department held that a civil authority provision applied only when access to the premises was completely "denied," not during a period when "although vehicular and pedestrian traffic in the area was diverted, access to the restaurant was not denied; [and] the restaurant was accessible to the public, plaintiff's employees and its vendors." *Id.*

In *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280 (S.D.N.Y. 2005) (Batts, J.), this Court concluded that a civil authority provision did not provide coverage for business income losses suffered by an airport parking garage after the federal government's nationwide grounding of commercial aircraft in the wake of the 9/11 terrorist attacks. *Id.* at 289. Granting the insurer's motion to dismiss, the Court determined that the "plain language of the [Order] shows it did not 'prohibit access to' Plaintiff's garages as the policy requires." Although the Order "may have temporarily obviated the need for Plaintiff's parking services," it did not mandate the complete closure of airport parking garages. *Id.* Rather, the Order centered on "the grounding of airplanes," precluding a finding that access to the garages had been prohibited. *Id.*; *see also Abner, Herrman & Brock, Inc. v. Great Northern Ins. Co.*, 308 F. Supp. 2d 331, 333, 335 (S.D.N.Y. 2004) (Koeltl, J.) (holding that civil authority coverage applied after 9/11 attacks only for "those days when civil authority actually prohibited access," and did not apply when "vehicular traffic was restricted, but pedestrian access was permitted, and public transit was available").[8]

---

[8] *See also Southern Hospitality*, 393 F.3d at 1140 (finding no civil authority coverage because "[t]he FAA order prohibited access to airplane flights; it did not prohibit access to hotel operations"); *Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, 2010 WL 2696782, *4-5 (M.D. Pa. July 6, 2010) (explaining that "where the action of a civil authority merely hinders access to the covered premises, without completely prohibiting access, federal courts have held that such action

As the Complaint acknowledges, restaurants were not forced to close but were permitted to continue operations for purposes of take-out and delivery. (Compl., ¶ 30). This is confirmed by the Mayor's Emergency Executive Order No. 100, which expressly provided that "establishments serving food and/or drink (including restaurants, bars, and cafes) may remain open for the sole purpose of providing take-out or delivery service, provided the establishments do not exceed fifty percent of their occupancy or seating capacity while persons are waiting for take-out and that such persons follow social distancing protocols."[9] (Ex. B, § 7.) Given that the order did not prohibit access to Plaintiff's premises, Plaintiff cannot establish that essential requirement for Civil Authority coverage. *See, e.g.*, *Philadelphia Parking Auth.*, 385 F. Supp. 2d at 289.

The Complaint also fails to plead that access was prohibited to an "area immediately surrounding the damaged property" that included Plaintiff's premises, or that order was issued

is not covered" under civil authority provisions; court found no coverage where a "majority of the customers" may not have been able to reach the insured's ski resort, but there was no "complete inability to access the premises"); *Commstop, Inc. v. Travelers Indemn. Co. of Conn.*, 2012 WL 1883461, *9 (W.D. La. 2012) ("'Civil Authority' provision . . . require[s] insured to show "access to [insured property] was totally and completely prevented—i.e., made impossible—by [the civil authority action]."); *Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*, 2007 WL 2489711, *4 (M.D. La. Aug. 29, 2007) (holding coverage not triggered by order that "encouraged" residents to stay off streets before hurricane, because it did not "actually and completely prohibit[] access to the insured premises"); *Paradies Shops, Inc. v. Hartford Fire Ins. Co.*, 2004 WL 5704715, *7 (N.D. Ga. Dec. 15, 2004) ("The Court sees no reasonable means of construing [the] order to ground all aircraft as an order specifically forbidding access to plaintiff's premises" in airport terminal stores); *Syufy Enterprises v. The Home Insurance. Co. of Indiana*, 1995 WL 129229, *1-2 (N.D. Cal. Mar. 21, 1995) (finding no civil authority coverage for theater's business income losses caused by curfews imposed after Rodney King riots because government orders did not "deny access to a Syufy theater," even though customers could not attend).

[9] The Court may take judicial notice of the relevant executive order on this motion to dismiss. *See*, *e.g.*, *Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 294 (S.D.N.Y. 2018) (on motion to dismiss, "[c]ourts may take judicial notice of public documents or matters of public record"); *Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 411 (S.D.N.Y. 2011) ("it is well-established that courts may take judicial notice of publicly available documents on a motion to dismiss").

"[w]hen a Covered Cause of Loss cause[d] damage to property other than property at the described premises," or that the civil authority action was "taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or . . . to enable a civil authority to have unimpeded access to the damaged property." (Ex. A, at 57). The Complaint contains no allegation that there was a prohibition of access to the area "immediately surrounding" Plaintiff's premises. With regard to the requirement of damage to property caused by a Covered Cause of Loss, the Mayor's order contains a statement that "this order is given because of the propensity of the virus to spread person to person and also because the virus physically is causing property loss and damage . . . ." (Ex. B, § 7.) But even assuming for purposes of this motion to dismiss that this statement accurately reflected a reason why the order was issued, under the virus exclusion, a virus is an expressly *excluded* cause of loss under the Policy, not a Covered Cause of Loss, as explained in Section IV.A., above; *see also 10E*, at *5-6 (holding that plaintiff failed to adequately plead requirements for Civil Authority coverage, and it was unlikely that plaintiff could evade application of virus exclusion).

### D. Dismissal of the First, Third and Fifth Causes of Action is Proper Because Plaintiff is Not Entitled to its Request Declarations

Because the facts alleged in the Complaint are insufficient to support Plaintiff's entitlement to coverage under the Policy's Civil Authority, Business Income or Extra Expense provisions, as explained above, Plaintiff is not entitled to any of the declarations requested in the Complaint.

To the extent Plaintiff also seeks "a declaratory judgment that [the Policy] provides coverage for future civil authority orders that result in future suspensions or curtailments of business operations" (Compl., ¶ 9), that claim also should be dismissed because it seeks what would amount to an improper advisory opinion. "Article III of the Constitution limits the jurisdiction of the federal courts to actual cases and controversies, as distinguished from

'advisory opinions.'" *Olin Corp. v. Consol. Alum. Corp.*, 5 F.3d 10, 17 (2d Cir. 1993).  When faced with a particular request for declaratory relief, a district court must inquire "'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality* to warrant the issuance of a declaratory judgment.' . . . .  The controversy must be 'real and substantial ... admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Id.* (citations omitted). Here, Plaintiff plainly is not entitled to a declaration of coverage for orders or actions of civil authority that it speculates might be issued in the future.  (*See* Compl., ¶ 9). The very *request* for such a judgment reveals that there is no controversy of "sufficient immediacy and reality" to warrant its issuance. *See Olin Corp.*, 5 F.3d at 17.

> **E.    Dismissal of the Second, Fourth, and Sixth Causes of Action for Breach of Contract is Proper Because Plaintiff is Not Entitled to Any Coverage**

To be entitled to damages for breach of contract, a plaintiff must demonstrate: (1) the existence of a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages. *Soley v. Wasserman*, 823 F. Supp. 2d 221, 229 (S.D.N.Y. 2011).  There can be no breach of contract where, as here, the policy unambiguously does not provide coverage. *See, e.g.*, *Nautilus Ins. Co. v. Barfield Realty Corp.*, 2012 WL 4889280, at *8 (S.D.N.Y. Oct. 16, 2012) ("[T]here can be no breach of contract . . . where an insurer rightfully denies coverage under a policy."); *Bamundo, Zwal & Schermerhorn, LLP v. Sentinel Ins. Co., Ltd.*, 2015 WL 1408873, at *4–5 (S.D.N.Y. Mar. 26, 2015) (granting summary judgment in favor of defendant on plaintiff's breach of contract claim because plaintiff's business income losses were not covered by the "wholly unambiguous" civil authority provision in the policy).  As the Policy unambiguously does

not provide coverage for Plaintiff's losses, its breach of contract claims should be dismissed with prejudice.

**F.**    **The Putative Class Claims Must Be Dismissed Where Plaintiff's Individual Claims Fail**

To the extent Plaintiff attempts to plead claims on behalf of a proposed class (Compl., ¶¶ 49–61), those allegations cannot survive where Plaintiff's individual claims fail to state a claim. *See, e.g.*, *Estruch v. Volkswagenwerk, AG*, 97 A.D.2d 978, 468 N.Y.S.2d 959 (4th Dep't 1983) ("Inasmuch as the individual claims for damages [under New York law] have been found to be without merit plaintiffs may not, as representatives, maintain a class action based on those" claims; "thus, the class causes of action were properly dismissed."); *In re Citigroup Auction Rate Sec. Litig.*, 700 F. Supp. 2d 294, 308 (S.D.N.Y. 2009) ("[I]n order to maintain a class action, Plaintiffs must first establish that they have a valid claim . . . .  If the named plaintiffs have no cause of action in their own right, their complaint must be dismissed, even though the facts set forth in the complaint may show that others might have a valid claim.").

**V.**    **CONCLUSION**

For all of the reasons stated above, Plaintiff has failed to state a plausible claim upon which relief can be granted.  Thus, Admiral respectfully requests that the Court dismiss the Complaint, in its entirety and with prejudice, under Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

By: */s/ Wystan M. Ackerman*
    Wystan M. Ackerman (WA8267)
    Robinson & Cole LLP
    280 Trumbull Street
    Hartford, CT  06103
    Tel: 860-275-8388
    Fax: 860-275-8299
    wackerman@rc.com

    Antonia B. Ianniello (*pro hac vice*)
    John F. O'Connor, Jr. (*pro hac vice*)
    STEPTOE & JOHNSON LLP
    1330 Connecticut Avenue, NW
    Washington, DC 20036
    Tel. No.: (202) 429-3000
    aianniello@steptoe.com
    joconnor@steptoe.com

    Attorneys for Defendant
    Admiral Indemnity Company

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2020, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing though the Court's CM/ECF System.

    */s/ Wystan M. Ackerman*