# Exhibit A

NAMED INSURED:   MICHAEL CETTA, INC. SPARKS
STEAK HOUSE
POLICY NUMBER:   21-31120731-36

---

**ADMIRAL INDEMNITY COMPANY**

UNDERWRITTEN BY:



---

301 ROUTE 17 NORTH, SUITE 900 | RUTHERFORD, NJ 07070
PHONE:  (201) 518-2500 | FAX: (201) 342-6381 | WEBSITE: WWW.BERKLEYLUXURYGROUP.COM

IL DS 83 00 04 10

Issuing Company: Admiral Indemnity Company

# COMMERCIAL LINES POLICY
# COMMON POLICY DECLARATIONS

## Renewal

| | |
|---|---|
| **Policy No.:  21-31120731 - 36** | Billing Method: Agency |
| Previous Policy No.:  21-31120731-35 | Payment Plan: 3 Pay |

| **Named Insured Name and Address** | **Agency Name and Address** | 8414 |
|---|---|---|
| Michael Cetta, Inc. | (631) 421-9355 | |
| Sparks Steak House | JLNY Group LLC | |
| 210-220 E 46th St | 80 Crossways Park Dr, Suite 210 | |
| aka 733 Third Avenue | Woodbury, NY 11797-2047 | |
| New York, NY 10017-2903 | | |

**POLICY PERIOD**

Policy Period:  From 06/26/2019 to 06/26/2020 at 12:01 A.M. Standard Time at your mailing address shown above.

**Business Description:**  Restaurant

**Form of Business:** Corporation

IN RETURN FOR YOUR PAYMENT OF THE PREMIUM AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.  THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| | | **Premium** |
|---|---|---|
| Commercial Property Coverage Part | $ | 15,116.00 |
| Commercial General Liability Coverage Part | $ | 39,069.00 |
| Commercial Liquor Liability Coverage Part | $ | 8,650.00 |
| Commercial Auto Coverage Part | $ | 250.00 |
| New York Fire Fee: | $ | 22.74 |
| TOTAL: | $ | 63,107.74 |

**FORMS APPLICABLE TO ALL COVERAGE PARTS**

*See attached "Schedule of Forms and Endorsements"*

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGES FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.**

Countersigned: _____      By  _____

_____
Authorized Representative

CL LOC 09 08

# LOCATION SCHEDULE

Location # 1                  210-220 E 46th St
                             aka 733 Third Avenue
                             New York, NY 10017-2903

COMMERCIAL COMMON POLICY
CL IL FS 01 09 08

Policy Number:  **21-31120731 - 36**

# SCHEDULE OF FORMS AND ENDORSEMENTS

The following Declarations, Coverage Forms, Conditions, and Endorsements are applicable to:

## Commercial Common Policy

| State | Number | Edition | Description |
|-------|--------|---------|-------------|
| ALL | BLG PHN 001 | 02-2018 | Claims Reporting - Notice to Policyholders |
| ALL | CL IL FS 01 | 09-2008 | Schedule of Forms and Endorsements |
| ALL | CL LOC | 09-2008 | Location Schedule |
| ALL | IL 00 17 | 11-1998 | Common Policy Conditions |
| ALL | IL DS 77 00 BLG | 02-2018 | Policy Ending Form |
| ALL | IL DS 83 00 | 04-2010 | Commercial Lines Policy Common Policy Declarations |
| ALL | IL P 001 | 01-2004 | U.S. Treasury Departments Office of Foreign Assets Control (OFAC) Advisory Notice to Policyholders |
| ALL | IL RPJ 01 BLG | 02-2018 | Policy Jacket (Restaurant) |

## Commercial Auto Coverage Part

| State | Number | Edition | Description |
|-------|--------|---------|-------------|
| ALL | IL 01 83 | 08-2008 | New York Changes - Fraud |
| ALL | IL 01 85 | 08-2008 | New York Changes - Calculation of Premium |

## Commercial General Liability Coverage Part

| State | Number | Edition | Description |
|-------|--------|---------|-------------|
| ALL | IL 00 23 | 07-2002 | Nuclear Energy Liability Exclusion |
| ALL | IL 01 85 | 08-2008 | New York Changes - Calculation of Premium |
| ALL | IL 02 68 | 01-2014 | New York Changes Cancellation And NonRenewal |
| ALL | IL 09 85 | 01-2015 | Disclosure Pursuant to Terrorism Risk Insurance Act |
| ALL | TRIA DISCL D | 01-2015 | Disclosure Notice - Exhibit D |

## Commercial Property Coverage Part

| State | Number | Edition | Description |
|-------|--------|---------|-------------|
| ALL | CF PHNRNY | 03-2019 | Revisions to Equipment Breakdown Enhancement Endorsement(SP 157RNY) Advisory Notice to New York Policyholders |
| ALL | CW 25 31 | 10-2011 | Policyholder Notice Mechanical, Electrical and Pressure Systems Breakdown Added Coverage |
| ALL | IL 01 83 | 08-2008 | New York Changes - Fraud |
| ALL | IL 01 85 | 08-2008 | New York Changes - Calculation of Premium |
| ALL | IL 02 68 | 01-2014 | New York Changes Cancellation And NonRenewal |
| ALL | IL 09 35 | 07-2002 | Exclusion of Certain Computer Related Losses |
| ALL | IL 09 52 | 01-2015 | Cap on Losses From Cert Acts of Terrorism |
| ALL | IL 09 85 | 01-2015 | Disclosure Pursuant to Terrorism Risk Insurance Act |
| ALL | TRIA DISCL D | 01-2015 | Disclosure Notice - Exhibit D |

ALL = ALL states on the policy
ALL* = Applies to all states on the policy unless a specific state form is designated

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

BLG PHN 001 02 18

# CLAIMS REPORTING

# ADVISORY NOTICE TO POLICYHOLDERS

If you have an emergency or need to report a catastrophic claim after our normal business hours, please contact our Emergency Call Center at the following toll-free number:

(866) 338-3098

You can also submit a new claim report via our First Notice of Loss on-line mailbox:

firstreports@berkleyluxurygroup.com

Please refer to our website as an additional source of information in advance of, and during, a catastrophic event as well as for important claims contact information.

www.berkleyluxurygroup.com

COMMERCIAL PROPERTY
CF PHNRNY 03 19

# REVISIONS TO EQUIPMENT BREAKDOWN ENHANCEMENT ENDORSEMENT (SP 157RNY)

# ADVISORY NOTICE TO NEW YORK POLICYHOLDERS

This Notice does not form part of your policy. No coverage is provided by this Notice nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided. If there is any conflict between the Policy and this Notice, **THE PROVISIONS OF THE POLICY SHALL PREVAIL**.

Carefully read your policy, including the endorsements attached to your policy.

This Notice provides information concerning the following endorsement which applies to your renewal policy being issued by us:

**SP 157RNY 01 18 – EQUIPMENT BREAKDOWN ENHANCEMENT ENDORSEMENT – NEW YORK**

We are pleased to announce that we've enhanced our Equipment Breakdown Enhancement Endorsement to provide superior equipment breakdown protection against mechanical, electrical and pressure systems breakdown.  Designed to broaden coverage, these enhancements provide additional coverage not otherwise available.  Specifically, we are introducing the following coverage enhancements:

- We are introducing a new **Temperature Fluctuation** coverage.  Under this coverage, we will provide $5,000 for loss of perishable goods caused by or resulting from any condition or event to Covered Property which can be resolved by calibrating, resetting, tightening, adjusting or cleaning of the Covered Property.

  *Loss Example:*

  The thermostat supporting a walk-in cooler malfunctioned resulting in loss of product. Upon inspection, it was determined that the control required adjusting.  Coverage was provide for the lost product up to the temperature fluctuation limit ($5,000).

- We are introducing a new **Unauthorized Instruction** coverage. Under this coverage, we will pay for loss or damage to an insured's computer equipment caused by an unauthorized instruction which results in an equipment breakdown under the new Unauthorized Instruction coverage.

  *Loss Example:*

  A hacker used malicious code to cause the computer-controlled generator to overspeed and seize. Due to the extent of the damage, the generator was replaced.

- We are introducing a new **Risk Improvement** coverage.  Under this coverage, if Covered Property suffers direct physical loss or damage due to an equipment breakdown, we will pay for the insured to improve the power quality of the electrical system or equipment at the loss location where the equipment breakdown occurred.  Coverage is limited to 10% of the loss amount paid or $10,000, whichever is less.

  *Loss Example:*

  A power surge damaged multiple appliances and electronics at a restaurant. After replacing much of the equipment, the insured installed a surge protection device on their main service line and upgraded all surge suppression devices connected to the new equipment.  With a property loss of $40,000, Risk Improvement coverage of up to $4,000 (10% of the loss amount paid) was also provided.

Should you have any questions, please contact your broker or underwriter.

**COMMERCIAL PROPERTY**
**CW 25 31 10 11**

Insured:  Michael Cetta, Inc.  Sparks Steak House
Policy Number:  21-31120731

# POLICYHOLDER NOTICE

# Mechanical, Electrical and Pressure Systems Breakdown Added Coverage

Your policy contains broadened coverage for the perils of mechanical breakdown, electrical breakdown and pressure systems breakdown for an additional premium charge.

Subject to the terms and conditions of your property policy and your mechanical breakdown endorsement, coverage includes the following:

- Damage to covered equipment that is insured as part of your building and business personal property.

- Loss of Income and Extra Expense when this coverage is included in your Property policy.

- Coverage is provided at the same limits and deductible as your Building and Personal Property coverage and your Loss of Income and Extra Expense coverage.

In cases where you have a pressure vessel that requires an inspection by your State or City we provide this service at no additional cost.  If you have questions about this service or require a jurisdictional inspection, **PLEASE CALL** (approximately 60 days prior to the certificate expiration):

Mutual Boiler Re
101 Lindenwood Drive
Suite 400
Malvern, PA  19355
(800) 814-4458 Ext. 7807

**If you have any questions, please contact your broker.**

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IL 00 23 07 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

© ISO Properties, Inc.,  2001

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2001 □

IL 01 83 08 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – FRAUD

This endorsement modifies insurance provided under the following:

> CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
> COMMERCIAL AUTOMOBILE COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> EQUIPMENT BREAKDOWN COVERAGE PART
> FARM COVERAGE PART – FARM PROPERTY – OTHER FARM PROVISIONS FORM – ADDITIONAL
> COVERAGES, CONDITIONS, DEFINITIONS
> FARM COVERAGE PART – LIVESTOCK COVERAGE FORM
> FARM COVERAGE PART – MOBILE AGRICULTURAL MACHINERY AND EQUIPMENT COVERAGE
> FORM

The **CONCEALMENT, MISREPRESENTATION OR FRAUD** Condition is replaced by the following:

**FRAUD**

We do not provide coverage for any insured ("insured") who has made fraudulent statements or engaged in fraudulent conduct in connection with any loss ("loss") or damage for which coverage is sought under this policy.

However, with respect to insurance provided under the COMMERCIAL AUTOMOBILE COVERAGE PART, we will provide coverage to such "insured" for damages sustained by any person who has not made fraudulent statements or engaged in fraudulent conduct if such damages are otherwise covered under the policy.

 © Insurance Services Office, Inc., 2008 ◻

IL 01 85 08 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK

**A.** For policies with fixed terms in excess of one year, or policies with no stated expiration date, except as provided in Paragraph **B.,** the following applies:

The premium shown in the Declarations was computed based on rates and rules in effect at the time the policy was issued. On each renewal or continuation of this policy, we will compute the premium in accordance with our rates and rules then in effect.

**B.** For policies with fixed terms in excess of one year, where premium is computed and paid annually, the following applies:

**1.** The premium shown in the Declarations was computed based on rates and rules in effect at the time the policy was issued. Such rates and rules will be used to calculate the premium at each anniversary, for the entire term of the policy, unless the specific reasons described in Paragraph **2.** or **3.** apply.

**2.** The premium will be computed based on the rates and rules in effect on the anniversary date of the policy only when, subsequent to the inception of the current policy period, one or more of the following occurs:

**a.** After issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and that occurred subsequent to inception of the current policy period;

**b.** A material physical change in the property insured, occurring after issuance or last anniversary renewal date of the policy, causes the property to become uninsurable in accordance with underwriting standards in effect at the time the policy was issued or last renewed; or

**c.** A material change in the nature or extent of the risk, occurring after issuance or last anniversary renewal date of the policy, which causes the risk of "loss" to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed.

**3.** If, subsequent to the inception of the current policy period, the Limit of Insurance is increased, or Additional Coverages or Causes of Loss are insured, the rate and rules in effect at the time of the change will be applied to calculate the premium and will continue to apply to the change at subsequent anniversary dates.

© Insurance Services Office, Inc., 2008
□

IL 02 68 01 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs **1., 2., 3.** and **5.** of the **Cancellation** Common Policy Condition are replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this entire policy by mailing or delivering to us advance written notice of cancellation.

**2. Cancellation Of Policies In Effect**

**a. 60 Days Or Less**

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(1)** 30 days before the effective date of cancellation if we cancel for any reason not included in Paragraph **A.2.b.** below.

**(2)** 15 days before the effective date of cancellation if we cancel for any of the reasons included in Paragraph **A.2.b.** below.

**b. For More Than 60 Days**

If this policy has been in effect for more than 60 days, or if this policy is a renewal or continuation of a policy we issued, we may cancel only for any of the reasons listed below, provided we mail the first Named Insured written notice at least 15 days before the effective date of cancellation:

**(1)** Nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due;

**(2)** Conviction of a crime arising out of acts increasing the hazard insured against;

**(3)** Discovery of fraud or material misrepresentation in the obtaining of the policy or in the presentation of a claim;

**(4)** After issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current policy period;

**(5)** Material physical change in the property insured, occurring after issuance or last annual renewal anniversary date of the policy, which results in the property becoming uninsurable in accordance with our objective, uniformly applied underwriting standards in effect at the time the policy was issued or last renewed; or material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

**(6)** Required pursuant to a determination by the Superintendent that continuation of our present premium volume would jeopardize our solvency or be hazardous to the interest of our policyholders, our creditors or the public;

 © Insurance Services Office, Inc., 2013

**(7)** A determination by the Superintendent that the continuation of the policy would violate, or would place us in violation of, any provision of the Insurance Code; or

**(8)** Where we have reason to believe, in good faith and with sufficient cause, that there is a probable risk of danger that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. If we cancel for this reason, you may make a written request to the Department of Financial Services, within 10 days of receipt of this notice, to review our cancellation decision. Also, we will simultaneously send a copy of this cancellation notice to the Department of Financial Services.

**3.** We will mail or deliver our notice, including the reason for cancellation, to the first Named Insured at the address shown in the policy and to the authorized agent or broker.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata.

However, when the premium is advanced under a premium finance agreement, the cancellation refund will be pro rata. Under such financed policies, we will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

**B.** The following is added to the **Cancellation** Common Policy Condition:

**7.** If one of the reasons for cancellation in Paragraph **A.2.b.** or **D.2.b.(2)** exists, we may cancel this entire policy, even if the reason for cancellation pertains only to a new coverage or endorsement initially effective subsequent to the original issuance of this policy.

**C.** The following conditions are added:

**1. Nonrenewal**

If we decide not to renew this policy we will send notice as provided in Paragraph **C.3.** below.

**2. Conditional Renewal**

If we conditionally renew this policy subject to:

**a.** A change of limits;

**b.** A change in type of coverage;

**c.** A reduction of coverage;

**d.** An increased deductible;

**e.** An addition of exclusion; or

**f.** Increased premiums in excess of 10%, exclusive of any premium increase due to and commensurate with insured value added or increased exposure units; or as a result of experience rating, loss rating, retrospective rating or audit;

we will send notice as provided in Paragraph **C.3.** below.

**3. Notices Of Nonrenewal And Conditional Renewal**

**a.** If we decide not to renew this policy or to conditionally renew this policy as provided in Paragraphs **C.1.** and **C.2.** above, we will mail or deliver written notice to the first Named Insured shown in the Declarations at least 60 but not more than 120 days before:

**(1)** The expiration date; or

**(2)** The anniversary date if this is a continuous policy.

**b.** Notice will be mailed or delivered to the first Named Insured at the address shown in the policy and to the authorized agent or broker. If notice is mailed, proof of mailing will be sufficient proof of notice.

**c.** Notice will include the specific reason(s) for nonrenewal or conditional renewal, including the amount of any premium increase for conditional renewal and description of any other changes.

**d.** If we violate any of the provisions of Paragraph **C.3.a., b.** or **c.** above by sending the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice:

**(1)** And if notice is provided prior to the expiration date of this policy, coverage will remain in effect at the same terms and conditions of this policy at the lower of the current rates or the prior period's rates until 60 days after such notice is mailed or delivered, unless the first Named Insured, during this 60-day period, has replaced the coverage or elects to cancel;

**(2)** And if the notice is provided on or after the expiration date of this policy, coverage will remain in effect at the same terms and conditions of this policy for another policy period, at the lower of the current rates or the prior period's rates, unless the first Named Insured, during this additional policy period, has replaced the coverage or elects to cancel.

**e.** If you elect to renew on the basis of a late conditional renewal notice, the terms, conditions and rates set forth in such notice shall apply:

**(1)** Upon expiration of the 60-day period, unless Subparagraph **(2)** below applies; or

**(2)** Notwithstanding the provisions in Paragraphs **d.(1)** and **d.(2)**, as of the renewal date of the policy if the conditional renewal notice was sent at least 30 days prior to the expiration or anniversary date of the policy.

**f.** We will not send you notice of nonrenewal or conditional renewal if you, your authorized agent or broker or another insurer of yours mails or delivers notice that the policy has been replaced or is no longer desired.

**D.** The following provisions apply when the Commercial Property Coverage Part, the Farm Coverage Part or the Capital Assets Program (Output Policy) Coverage Part is made a part of this policy:

**1.** Items **D.2.** and **D.3.** apply if this policy meets the following conditions:

**a.** The policy is issued or issued for delivery in New York State covering property located in this state; and

**b.** The policy insures:

**(1)** For loss of or damage to structures, other than hotels or motels, used predominantly for residential purposes and consisting of no more than four dwelling units; or

**(2)** For loss of or damage to personal property other than farm personal property or business property; or

**(3)** Against damages arising from liability for loss of, damage to or injury to persons or property, except liability arising from business or farming; and

**c.** The portion of the annual premium attributable to the property and contingencies described in **1.b.** exceeds the portion applicable to other property and contingencies.

**2.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Procedure And Reasons For Cancellation**

**a.** We may cancel this entire policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(1)** 15 days before the effective date of cancellation if we cancel for nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**b.** But if this policy:

**(1)** Has been in effect for more than 60 days; or

**(2)** Is a renewal of a policy we issued;

we may cancel this policy only for one or more of the following reasons:

**(1)** Nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due;

**(2)** Conviction of a crime arising out of acts increasing the risk of loss;

**(3)** Discovery of fraud or material misrepresentation in obtaining the policy or in making a claim;

**(4)** Discovery of willful or reckless acts or omissions increasing the risk of loss;

**(5)** Physical changes in the covered property that make that property uninsurable in accordance with our objective and uniformly applied underwriting standards in effect when we:

**(a)** Issued the policy; or

**(b)** Last voluntarily renewed the policy;

© Insurance Services Office, Inc., 2013

**(6)** The Superintendent of Financial Services' determination that continuing the policy would violate Chapter 28 of the Insurance Law; or

**(7)** Required pursuant to a determination by the Superintendent of Financial Services that the continuation of our present premium volume would be hazardous to the interests of our policyholders, our creditors or the public.

**3.** The following are added:

**a. Conditional Continuation**

Instead of cancelling this policy, we may continue it on the condition that:

**(1)** The policy limits be changed; or

**(2)** Any coverage not required by law be eliminated.

If this policy is conditionally continued, we will mail or deliver written notice at least 20 days before the effective date of the change or elimination. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

**b. Nonrenewal**

If, as allowed by the laws of New York State, we:

**(1)** Do not renew this policy; or

**(2)** Condition policy renewal upon:

**(a)** Change of limits; or

**(b)** Elimination of coverage;

we will mail or deliver written notice of nonrenewal or conditional renewal:

**(a)** At least 45 days; but

**(b)** Not more than 60 days;

before the expiration date of the policy. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

**E.** The following is added to the Farm Property – Other Farm Provisions Form – Additional Coverages, Conditions, Definitions, the Commercial Property Coverage Part and the Capital Assets Program (Output Policy) Coverage Part:

When the property is subject to the Anti-arson Application in accordance with New York Department of Financial Services' Insurance Regulation No. 96, the following provisions are added:

If you fail to return the completed, signed and affirmed anti-arson application to us:

**1.** Or our broker or agent within 45 days of the effective date of a new policy, we will cancel the entire policy by giving 20 days' written notice to you and to the mortgageholder shown in the Declarations.

**2.** Before the expiration date of any policy, we will cancel the policy by giving written notice to you and to the mortgageholder shown in the Declarations at least 15 days before the effective date of cancellation.

The cancellation provisions set forth in **E.1.** and **E.2.** above supersede any contrary provisions in this policy including this endorsement.

If the notice in **E.1.** or **E.2.** above is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

**F.** The following applies to the Commercial Property Coverage Part, the Farm Coverage Part and the Capital Assets Program (Output Policy) Coverage Part:

Paragraphs **f.** and **g.** of the **Mortgageholders** Condition are replaced by the following:

**f. Cancellation**

**(1)** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(a)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(b)** 30 days before the effective date of cancellation if we cancel for any other reason.

© Insurance Services Office, Inc., 2013

**(2)** If you cancel this policy, we will give written notice to the mortgageholder. With respect to the mortgageholder's interest only, cancellation will become effective on the later of:

   **(a)** The effective date of cancellation of the insured's coverage; or

   **(b)** 10 days after we give notice to the mortgageholder.

**g. Nonrenewal**

  **(1)** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

  **(2)** If you elect not to renew this policy, we will give written notice to the mortgageholder. With respect to the mortgageholder's interest only, nonrenewal will become effective on the later of:

   **(a)** The expiration date of the policy; or

   **(b)** 10 days after we give notice to the mortgageholder.

**G.** The following provisions apply when the following are made a part of this policy:

Commercial General Liability Coverage Part

Employment-Related Practices Liability Coverage Part

Farm Liability Coverage Form

Liquor Liability Coverage Part

Products/Completed Operations Liability Coverage Part

  **1.** The aggregate limits of this policy as shown in the Declarations will be increased in proportion to any policy extension provided in accordance with Paragraph **C.3.d.** above.

  **2.** The last sentence of Limits Of Insurance does not apply when the policy period is extended because we sent the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice.

IL 09 35 07 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** We will not pay for loss ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

  **1.** The failure, malfunction or inadequacy of:

    **a.** Any of the following, whether belonging to any insured or to others:

      **(1)** Computer hardware, including micro-processors;

      **(2)** Computer application software;

      **(3)** Computer operating systems and related software;

      **(4)** Computer networks;

      **(5)** Microprocessors (computer chips) not part of any computer system; or

      **(6)** Any other computerized or electronic equipment or components; or

    **b.** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **A.1.a.** of this endorsement;

  due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

  **2.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **A.1.** of this endorsement.

**B.** If an excluded Cause of Loss as described in Paragraph **A.** of this endorsement results:

  **1.** In a Covered Cause of Loss under the Crime and Fidelity Coverage Part, the Commercial Inland Marine Coverage Part or the Standard Property Policy; or

  **2.** Under the Commercial Property Coverage Part:

    **a.** In a "Specified Cause of Loss", or in elevator collision resulting from mechanical breakdown, under the Causes of Loss – Special Form; or

    **b.** In a Covered Cause of Loss under the Causes Of Loss – Basic Form or the Causes Of Loss – Broad Form;

  we will pay only for the loss ("loss") or damage caused by such "Specified Cause of Loss", elevator collision, or Covered Cause of Loss.

**C.** We will not pay for repair, replacement or modification of any items in Paragraphs **A.1.a.** and **A.1.b.** of this endorsement to correct any deficiencies or change any features.

© ISO Properties, Inc.,  2001
□

IL 09 52 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

**A. Cap On Certified Terrorism Losses**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**B. Application Of Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

 © Insurance Services Office, Inc., 2015

IL 09 85 01 15

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT.  THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

### SCHEDULE

---

**Terrorism Premium (Certified Acts) $**   2,361

**This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(s):**

Coverage Forms other than Commercial Auto and Crime Coverages

**Additional information, if any, concerning the terrorism premium:**

---

**SCHEDULE - PART II**

| | |
|---|---|
| **Federal share of terrorism losses: 85%** | **Year: 2015** |
| **Federal share of terrorism losses: 84%** | **Year: 2016** |
| **Federal share of terrorism losses: 83%** | **Year: 2017** |
| **Federal share of terrorism losses: 82%** | **Year: 2018** |
| **Federal share of terrorism losses: 81%** | **Year: 2019** |
| **Federal share of terrorism losses: 80%** | **Year: 2020** |

(Refer to Paragraph **B.** in this endorsement.)

---

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

---

**A.  Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part **II** of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar Year the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© Insurance Services Office, Inc., 2015

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM
## INSURANCE COVERAGE

Coverage for acts of terrorism, as defined in the Terrorism Risk Insurance Act, as amended, (the "Act"), is included in your policy. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury  in consultation with the Secretary of Homeland Security, and the Attorney General of the United States  to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Act. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020 of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Act contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism, as defined in the Act, is $ 2,361, and does not include any charges for the portion of losses covered by the United States government under the Act.

Name of Insurer: Admiral Indemnity Company

Policy Number: 21-31120731-36

**COMMERCIAL PROPERTY**
**CP DS 83 00 04 10**

Issuing Company:   **Admiral Indemnity Company**
301 Route 17 North, Suite 900, Rutherford, NJ 07070

# COMMERCIAL PROPERTY DECLARATIONS

**Policy No.:**  21-31120731 - 36
Previous Policy No.:  21-31120731-35

| NAMED INSURED AND ADDRESS | AGENCY NAME AND ADDRESS | 8414 |
|---|---|---|
| Michael Cetta, Inc. | (631) 421-9355 | |
| Sparks Steak House | JLNY Group LLC | |
| 210-220 E 46th St | 80 Crossways Park Dr, Suite 210 | |
| aka 733 Third Avenue | Woodbury, NY 11797-2047 | |
| New York, NY 10017-2903 | | |

## POLICY PERIOD

Policy Period:  From 06/26/2019 to 06/26/2020 at 12:01 A.M. Standard Time at your mailing address shown above.

| TOTAL ADVANCE PREMIUM | Included |
|---|---|

## DESCRIPTION OF PREMISES AND COVERAGES PROVIDED

**The Agreed Value provisions expire** 06/26/2020.

| Description Of Property | Limit | Cause Of Loss | Coinsurance | Valuation | Inflation Guard |
|---|---|---|---|---|---|
| **LOCATION: # 1** | **Deductible:** | **See Form SP 110** | | | |
| 210-220 E 46th St | | | | | |
| aka 733 Third Avenue | | | | | |
| New York, NY 10017-2903 | | | | | |
| **BUILDING # 1** | | | | | |
| 23 Story Fire Resistive Building | | | | | |
| Occupied As Restaurant | | | | | |
| Business Personal Property Tentative Rate | 10,250,000 | SPECIAL | AV | RC / AV | 2% |
| Business Income Including Extra Expense | Period of Restoration (ALS-12 Months) | SPECIAL | No Coinsurance | | |

KEY:  ACV = Actual Cash Value   ALS = Actual Loss Sustained   AV = Agreed Value   FBV = Functional Building
Valuation   RC = Replacement Cost   MR = Monthly Reporting

## COVERAGES APPLICABLE TO ALL LOCATIONS

## MORTGAGE HOLDER(S)

## FORMS APPLICABLE

*See attached "Schedule of Forms and Endorsements"*

COMMERCIAL PROPERTY
CL CP FS 01 09 08

Policy Number:  **21-31120731 - 36**

# SCHEDULE OF FORMS AND ENDORSEMENTS

The following Declarations, Coverage Forms, Conditions, and Endorsements are applicable to:

## Commercial Property

| State | Number | Edition | Description |
|-------|--------|---------|-------------|
| ALL | CP DS 83 00 | 04-2010 | Commercial Property Declarations |
| ALL | CL CP FS 01 | 09-2008 | Schedule of Forms and Endorsements |
| ALL | TOC-R | 04-2017 | Restaurant Policy Table Of Contents |
| ALL | CSMR 00 10 | 01-2014 | Building And Personal Property Coverage Form |
| ALL | CSMR 00 30 | 01-2014 | Business Income (And Extra Expense) Coverage Form |
| ALL | CSMR 10 30 | 01-2014 | Causes Of Loss - Special Form |
| ALL | CP 00 90 | 07-1988 | Commercial Property Conditions |
| ALL | CP 01 33 | 05-2018 | New York Changes |
| ALL | CP 01 78 | 08-2008 | New York - Exclusion Of Loss Due To Virus Or Bacteria |
| ALL | CP 12 11 | 10-2000 | Burglary And Robbery Protective Safeguards |
| ALL | CP 12 18 | 06-2007 | Loss Payable Provisions |
| ALL | CP 99 93 | 10-1990 | Tentative Rate |
| ALL | CSM 01 64 | 01-2014 | New York Changes - Fungus, Wet Rot And Dry Rot |
| ALL | SP 110 | 01-2017 | Multiple Deductible Form Enhanced Coverage Endorsement |
| ALL | SP 157RNY | 01-2018 | Equipment Breakdown Enhancement Endorsement- New York |
| ALL | SP 301 | 01-2014 | Schedule of Increased Limits Enhancement Coverage Endorsement |
| ALL | SP 314 | 01-2015 | Flood Coverage Schedule |
| ALL | SP 317 | 01-2018 | Flood Coverage Endorsement |
| ALL | SP 318 | 01-2018 | Earthquake & Volcanic Eruption Endorsement (Sub-Limit Form) |
| ALL | SP 319 | 01-2015 | Earthquake & Volcanic Eruption Coverage Schedule |
| ALL | SP 320 | 01-2014 | Period Of Restoration Changes Endorsement |
| ALL | SP 336 | 01-2018 | Restaurant Coverage Changes Endorsement |
| ALL | SP 337R | 08-2017 | Computer Coverage Endorsement |
| ALL | SP 640 | 01-2016 | Electronic Data-Changes Endorsement |
| ALL | SP 641 | 01-2016 | Interruption of Computer Operations-Changes Endorsement |

ALL = ALL states on the policy
ALL* = Applies to all states on the policy unless a specific state form is designated

# RESTAURANT POLICY
# TABLE OF CONTENTS

| SECTION NAME | PAGE # |
|---|---|
| **BUILDING AND PERSONAL PROPERTY COVERAGE FORM** | |
| A.  Coverage | BPP-1 |
| B.  Exclusions And Limitations | BPP-19 |
| C.  Limits of Insurance | BPP-19 |
| D.  Deductible | BPP-19 |
| E.  Loss Conditions | BPP-19 |
| F.  Additional Conditions | BPP-22 |
| G.  Optional Coverages | BPP-24 |
| H.  Definitions | BPP-26 |
| **BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM** | |
| A.  Coverage | BI-1 |
| B.  Limits of Insurance | BI-6 |
| C.  Loss Conditions | BI-7 |
| D.  Additional Condition | BI-8 |
| E.  Optional Coverages | BI-9 |
| F.  Definitions | BI-11 |
| **CAUSES OF LOSS – SPECIAL FORM** | |
| A.  Covered Causes Of Loss | COL-1 |
| B.  Exclusions | COL-1 |
| C.  Limitations | COL-5 |
| D.  Additional Coverage – Collapse | COL-6 |
| E.  Additional Coverage – Limited Coverage For "Fugus", Wet Rot, Dry Rot And Bacteria | COL-7 |
| F.  Additional Coverage Extensions | COL-8 |
| G.  Definitions | COL-9 |

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

**(CP 00 10 06 07)**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H. Definitions**.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.,** and limited in **A.2.,** Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, including outdoor fixtures;

**(3)** Permanently installed:

**(a)** Machinery and

**(b)** Equipment;

**(4)** Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

**(a)** Fire-extinguishing equipment;

**(b)** Outdoor furniture;

**(c)** Floor coverings; and

**(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(5)** If not covered by other insurance:

**(a)** Additions under construction, alterations and repairs to the building or structure;

**(b)** Materials, equipment, supplies and temporary structures, on or within 1,000 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**(6)** Building valuation includes necessary and incurred architectural, engineering, consulting and construction management fees related to the construction and repair of the lost or damaged building.

**b. Your Business Personal Property** located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises, consisting of the following unless otherwise specified in the Declarations or on the Your Business Personal Property - Separation Of Coverage form:

**(1)** Furniture and fixtures;

**(2)** Machinery and equipment;

**(3)** "Stock";

**(4)** All other personal property owned by you and used in your business;

**(5)** Labor, materials or services furnished or arranged by you on personal property of others;

**(6)** Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but do not own; and

**(b)** You acquired or made at your expense but cannot legally remove;

**(7)** Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

**c. Personal Property Of Others** that is:

**(1)** In your care, custody or control; and

**(2)** Located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**2. Property Not Covered**

Covered Property does not include:

**a.** Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

**b.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

**c.** Automobiles held for sale;

**d.** Bridges, roadways, walks, patios or other paved surfaces;

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.** The cost of excavations, grading, backfilling or filling;

**g.** Foundations of buildings, structures, machinery or boilers if their foundations are below:

**(1)** The lowest basement floor; or

**(2)** The surface of the ground, if there is no basement;

**h.** Land (including land on which the property is located), water, growing crops or lawns;

**i.** Personal property while airborne or waterborne;

**j.** Bulkheads, pilings, piers, wharves or docks;

**k.** Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.** Retaining walls that are not part of a building;

**m.** Underground pipes, flues or drains;

**n.** Electronic data, except as provided under the Additional Coverage, Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This paragraph, **n.,** does not apply to your "stock" of prepackaged software;

**o.** Vehicles or self-propelled machines (including aircraft or watercraft) that:

**(1)** Are licensed for use on public roads; or

**(2)** Are operated principally away from the described premises.

This paragraph does not apply to:

**(a)** Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

**(b)** Vehicles or self-propelled machines, other than autos, you hold for sale;

**(c)** Rowboats or canoes out of water at the described premises; or

**(d)** Trailers, but only to the extent provided for in the Coverage Extension for Non-owned Detached Trailers;

**p.** The following property while outside of buildings:

**(1)** Grain, hay, straw or other crops;

**(2)** The lead-in wiring, masts or towers of outdoor radio or television antennas (including satellite dishes), trees, shrubs or plants (other than "stock" of trees, shrubs or plants), all except as provided in the Coverage Extensions.

**3. Covered Causes Of Loss**

See applicable Causes Of Loss Form as shown in the Declarations.

**4. Additional Coverages**

Unless otherwise indicated, the policy deductible applies to the following Additional Coverages on a per location basis.

**a. Debris Removal**

**(1)** Subject to Paragraphs **(3)** and **(4)**, we will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

**(2)** Debris Removal does not apply to costs to:

**(a)** Extract "pollutants" from land or water; or

**(b)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

**(a)** The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

**(4)** We will pay up to an additional $250,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if **(4)(a)** and/or **(4)(b)** apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $250,000.

**(5)** We will also pay up to $1,000 for the cost you incur at each premises to remove debris of outdoor trees, shrubs or plants that are blown into your premises by wind.

**(6) Examples**

The following examples assume that there is no Coinsurance penalty.

**EXAMPLE #1**

| | | |
|---|---|---|
| Limit of Insurance: | $ | 1,250,000 |
| Amount of Deductible: | $ | 10,000 |
| Amount of Loss: | $ | 500,000 |
| Amount of Loss Payable: | $ | 490,000 |
| | ($500,000 - $10,000) | |
| Debris Removal Expense: | $ | 100,000 |
| Debris Removal Expense Payable: | $ | 100,000 |

($100,000 is 20% of $500,000.)

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($490,000 + $100,000 = $590,000) is less than the Limit of

Insurance. Therefore the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3).**

**EXAMPLE #2**

| | | |
|---|---|---|
| Limit of Insurance: | $ | 1,250,000 |
| Amount of Deductible: | $ | 10,000 |
| Amount of Loss: | $ | 1,100,000 |
| Amount of Loss Payable: | $ | 1,090,000 |
| | ($1,100,000 - $10,000) | |
| Debris Removal Expense: | $ | 500,000 |
| Debris Removal Expense Payable | | |
| Basic Amount: | $ | 160,000 |
| Additional Amount: | $ | 250,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $1,100,000 ($1,090,000 + $10,000) x .25 = $275,000; capped at $160,000. The cap applies because the sum of the loss payable ($1,090,000) and the basic amount payable for debris removal expense ($160,000) cannot exceed the Limit of Insurance ($1,250,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4),** because the debris removal expense ($500,000) exceeds 25% of the loss payable plus the deductible ($500,000 is 45.5% of $1,100,000), and because the sum of the loss payable and debris removal expense ($1,090,000 + $500,000 = $1,590,000) would exceed the Limit of Insurance ($1,250,000). The additional amount of covered debris removal expense is $250,000, the maximum payable under Paragraph **(4).** Thus the total payable for debris removal expense in this example is $410,000; $90,000 of the debris removal expense is not covered.

    **b.**  **Preservation Of Property**

        If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

        **(1)**  While it is being moved or while temporarily stored at another location; and

        **(2)**  Only if the loss or damage occurs within 180 days after the property is first moved.

    **c.**  **Fire Department Service Charge**

        When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $100,000, unless a higher limit is shown in the Declarations, for your liability for fire department service charges:

        **(1)**  Assumed by contract or agreement prior to loss; or

        **(2)**  Required by local ordinance.

        No Deductible applies to this Additional Coverage.

    **d.**  **Pollutant Clean-up And Removal**

        We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

        This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

        The most we will pay under this Additional Coverage for each described premises is $25,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

    **e.**  **Increased Cost Of Construction**

        **(1)**  This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

**(3)** The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

**(4)** Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

  **(a)** You were required to comply with before the loss, even when the building was undamaged; and

  **(b)** You failed to comply with.

**(5)** Under this Additional Coverage, we will not pay for:

  **(a)** The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

  **(b)** Any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

**(6)** The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of: $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable Coinsurance percentage.

  The amount payable under this Additional Coverage is additional insurance.

**(7)** With respect to this Additional Coverage:

  **(a)** We will not pay for the Increased Cost of Construction:

    **(i)** Until the property is actually repaired or replaced, at the same or another premises; and

    **(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

  **(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

  **(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment and Valuation Conditions, and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**f.** **Electronic Data**

  **(1)** Under this Additional Coverage, electronic data has the meaning described under Property Not Covered, Electronic Data.

  **(2)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

**(3)** The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage, Electronic Data, subject to the following:

    **(a)** If the Causes Of Loss - Special Form applies, coverage under this Additional Coverage, Electronic Data, is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

    **(b)** If the Causes Of Loss - Broad Form applies, coverage under this Additional Coverage, Electronic Data, includes Collapse as set forth in that form.

    **(c)** If the Causes Of Loss Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Electronic Data.

    **(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

**(4)** The most we will pay under this Additional Coverage, Electronic Data, is $250,000 for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**g.** **Accidental Chemical Extinguishing System Discharge**

**(1)** We will pay costs you incur to:

    **(a)** Make "chemical extinguishing systems" fully operational;

    **(b)** Refill "chemical extinguishing systems";

    **(c)** Reset automatic fuel shutoff devices;

    **(d)** Remove debris of Covered Property; and

    **(e)** Clean up chemical agents discharged from "chemical extinguishing systems";

only if an accident occurs to "chemical extinguishing systems" causing it to discharge.  Accident, as used in this coverage, does not include any Covered Cause of Loss that is otherwise covered under this Coverage Part.

**(2)** "Chemical extinguishing systems" means fixed automatic fire extinguishing systems that protect cooking equipment and related hoods and ducts.

**(3)** The most we will pay under this coverage for each occurrence (or accident) is $25,000.

**h.** **Accounts Receivable (including Credit Cards)**

**(1)** We will pay for Accounts Receivable loss you incur caused by a Covered Cause of Loss:

    **(a)** At a described premises or in or on a vehicle in transit between described premises; or

    **(b)** If the records must be removed from a described premises to protect them from the threat of a Covered Cause of Loss, while the Accounts Receivable are:

        **(i)** At a safe place away from your described premises; or

        **(ii)** Being taken to and returned from that place; or

    **(c)** In transit, including registered shipments by mail.

**(2)** The amount of your Accounts Receivable loss includes:

    **(a)** All amounts due from your customers that you are unable to collect;

    **(b)** Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

    **(c)** Collection expenses in excess of your normal collection expenses that are made necessary by the loss; and

**(d)** Other reasonable expenses that you incur to reestablish your records of Accounts Receivable,

that result from direct physical damage by any Covered Cause of Loss to your records of Accounts Receivable, including credit or charge card slips and invoices and accounting records on electronic data processing media, used to control and document the collection of money due from customers.

**(3)** Accounts Receivable loss payment will be determined as follows:

**(a)** If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss, the following method will be used:

**(i)** Determine the total of the average monthly Amounts Receivable for the 12 months immediately preceding the month in which the loss occurs; and

**(ii)** Adjust that total for any normal fluctuations in the amount of Accounts Receivable for the month in which the loss occurred or for any demonstrated variance from the average of that month.

**(b)** The following will be deducted from the total amount of accounts receivable, however that amount is established:

**(i)** The amount of the accounts for which there is no loss; and

**(ii)** The amount of the accounts that you are able to reestablish or collect; and

**(iii)** An amount to allow for probable bad debts that you are normally unable to collect.

**(c)** You will pay us the amount of all recoveries you receive for a loss paid by us.  But any recovery in excess of the amount we have paid belong to you.

**(4)** Exclusions

**(a)** We will not pay for a loss caused by or resulting from any of the following:

**(i)** Alteration, falsification, concealment or destruction of records of Accounts Receivable done to conceal the wrongful giving, taking or withholding of money, securities or other property.

**(ii)** Bookkeeping, accounting or billing errors or omissions.

**(b)** We will not pay for a loss that requires any audit of records or any inventory computation to prove its actual existence.

**(5)** The most we will pay under this Additional Coverage is $250,000, except $10,000 for transit loss covered in paragraph **(1)(c)** above.

**i.  Employee Theft**

**(1)** We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee" whether identified or not, acting alone or in collusion with other persons.

For the purposes of this Insuring Agreement, "theft" shall also include "forgery".

**(2)** The most we will pay for all loss resulting directly from an "occurrence" is $100,000.

**(3)** This insurance does not cover:

**(a)** Loss resulting from "theft" or any other dishonest act committed by:

**(i)** You; or

**(ii)** Any of your partners or "members,"

whether acting alone or in collusion with other persons.

**(b)** Loss caused by an "employee" if the "employee" had also committed "theft" or any other dishonest act prior to the effective date of this insurance and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the "employee", learned of that "theft" or dishonest act prior to the Policy Period shown in the Declarations.

**(c)** Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(i)** An inventory computation; or

**(ii)** A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

**(4)** We will pay for loss that you sustained prior to the effective date of cancellation of this insurance, which is "discovered" by you:

  **(a)** No later than 1 year from the date of that cancellation.  However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer, replacing in whole or in part the coverage afforded under this insurance, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

  **(b)** No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

**(5)** We will pay only for loss you sustain through an "occurrence" that occurs during the Policy Period.  Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

**(6)** The Insuring Agreement terminates as to any "employee":

  **(a)** As soon as:

  **(i)** You; or

  **(ii)** Any of your partners, "members", "managers", officers, directors, or trustees not in collusion with the "employee";

  learn of "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you; or

  **(b)** On the date specified in a notice mailed to the first Named Insured.  That date will be at least 30 days after the date of mailing.

  We will mail or deliver our notice to the first Named Insured's last mailing address known to us.  If notice is mailed, or proof of mailing will be sufficient proof of notice.

**(7)** Definitions

  **(a)** "Discover" or "discovered" means the time when you first become aware of facts which could cause a reasonable person to assume that a loss of a type covered by this insurance has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

  "Discover" or "discovered" also means the time when you first receive notice of an actual or potential claim in which it is alleged that you are liable to a third party under circumstances which, if true, would constitute a loss under this insurance.

  **(b)** "Employee" means:

  Any natural person:

  **(i)** While in your service and for the first 30 days immediately after termination of service, only when such termination is not due to "theft" or any dishonest act committed by the "employee";

  **(ii)** Who you compensate directly by salary, wages or commissions;

  **(iii)** Who you have the right to direct and control while performing services for you;

  **(iv)** Who is your managing agent;

  **(v)** Who is a trustee, officer, employee, administrator or manager, except an administrator or manager who is an independent contractor, of any "employee benefit plan";

  **(vi)** Who is a director or trustee of yours while that person is engaged in handling "funds" or "other property" of any "employee benefit plan";

  **(vii)** Who is a former "employee", "partner", "member", "manager", director or trustee retained as a consultant while performing services for you; and

  **(viii)** Any of your "managers", directors or trustees while:

  **(a)** Performing acts within the scope of the usual duties of an "employee"; or

**(b)** Acting as a member of any committee duly elected or appointed by resolution of your board of directors or board of trustees to perform specific, as distinguished from general, directorial acts on your behalf.

**(c)** "Employee benefit plan" means any welfare or pension benefit plan that you sponsor and which is subject to the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto.

**(d)** "Manager" means a person serving in a directorial capacity for a limited liability company.

**(e)** "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

**(f)** "Money" means:

    **(i)** Currency, coins and bank notes in current use and having a face value; and

    **(ii)** Travelers checks, register checks and money orders held for sale to the public.

**(g)** For purposes of this coverage, "Occurrence" means:

    **(i)** An individual act;

    **(ii)** The combined total of all separate acts whether or not related; or

    **(iii)** A series of acts whether or not related;

    committed by an "employee" acting alone or in collusion with other persons, during the Policy Period.

**(h)** "Other property" means any tangible property other than "money" and "securities" that has intrinsic value. "Other property" does not include computer programs, electronic data or any property specifically excluded under this insurance.

**(i)** "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or property and includes:

    **(i)** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

    **(ii)** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

    but does not include "money".

**(j)** "Theft" means the unlawful taking of property to the deprivation of the Insured.

**(8)** For this Employee Theft Coverage, "money" and "securities" are removed from paragraph **a.** of **A.2.** Property Not Covered of the Building and Personal Property Coverage Form.

**(9)** Paragraph **f.** of **B.2.** Exclusions of the Causes of Loss – Special Form is removed.

**j.  Money and Securities**

**(1)** We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee having use and custody of the property, at the described premises, or in transit between any of these places, resulting directly from:

    **(a)** Theft, meaning any act of stealing;

    **(b)** Disappearance; or

    **(c)** Destruction.

**(2)** In addition to the Limitations and Exclusions applicable, we will not pay for loss:

    **(a)** Resulting from accounting or arithmetical errors or omissions;

    **(b)** Due to the giving or surrendering of property in any exchange or purchase; or

    **(c)** Of property contained in any "money"-operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device

**(3)** You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

**(4)** The most we will pay for loss in any one occurrence is:

    **(a)** $25,000 for loss Inside the Premises for "money" and "securities" while:

        **(i)** In or on the described premises; or

**(ii)** Within a bank or savings institution; and

**(b)** $15,000 for loss Outside the Premises for "money" and "securities" while anywhere else.

**(5)** All loss:

**(a)** Caused by one or more persons; or

**(b)** Involved a single act or series of related acts;

is considered one occurrence.

**(6)** Item **2.a.** of Property Not Covered does not apply to this Additional Coverage.

**k. Money Orders and Counterfeit Paper Currency**

**(1)** We will pay for loss due to the good faith acceptance of:

**(a)** Any U.S. or Canadian post office, express company, or national or state (or Canadian) chartered bank money order that is not paid upon presentation to the issuer; or

**(b)** Counterfeit United States or Canadian paper currency;

in exchange for merchandise, "money" or services or as part of a normal business transaction.

**(2)** The most we will pay for any loss under this Additional Coverage is $5,000.

**l. Forgery and Alteration**

**(1)** We will pay for loss resulting directly from "forgery" or alteration of, any check, draft, promissory note, bill of exchange or similar written promise of payment in "money," that you or your agent has issued, or that was issued by someone who impersonates you or your agent.

**(2)** If you are sued for refusing to pay the check, draft, promissory note, bill of exchange or similar written promise of payment in "money," on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur in that defense.

**(3)** The most we will pay for any loss, including legal expenses, under this Additional Coverage is $25,000.

**(4)** "Forgery" means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

**m. Catering Contract Penalty Clause**

**(1)** We will pay the contract penalties you are required to pay your customers as a result of a penalty clause in your contracts for failure to deliver your products according to contract terms

**(2)** The penalties must result solely from direct physical loss or damage by a Covered Cause of Loss to Covered Property.

**(3)** The most we will pay under this Additional Coverage is $25,000.

**n. Lost Key Consequential Loss**

**(1)** We will pay for consequential loss to locks or keys if a master or grand master key is lost or damaged.  This coverage does not apply to keys left in the possession of former employees.

**(2)** We will pay for:

**(a)** The actual cost of keys; and

**(b)** Adjustment of locks to accept new keys, or

**(c)** If required, new locks, including the cost of their installation.

**(3)** The most we will pay for loss or damage under this Additional Coverage is $1,000.

**o. Theft of Telephone or Dataline Services**

**(1)** We will pay for the theft of your telephone and dataline services by an authorized person or group – but not by you, your officers or your partners.

**(2)** You must make a claim within 60 days of the close of the month in which the theft or series of theft commences.

**(3)** You must take reasonable steps to change access security codes immediately upon discovery of the theft or series of thefts.

**(4)** Exclusion **B.2.f.** of the Causes of Loss – Special Form, as respects employees, does not apply to this coverage.

**(5)** The most we will pay for loss under the Additional Coverage is $2,500.

**p.  Computer Fraud and Funds Transfer Fraud**

**(1)** We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from the use of any computer to fraudulently cause a transfer of that property from inside the "premises" or "banking premises"; and for loss of "funds" resulting directly from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "funds" from your "transfer account":

**(a)** To a person (other than a "messenger") outside those "premises"; or

**(b)** To a place outside those "premises".

**(2)** The most we will pay for all loss resulting directly from an "occurrence" is $100,000.

**(3)** This insurance does not cover:

**(a)** Loss resulting from "theft" or any other dishonest act committed by:

**(i)** You; or

**(ii)** Any of your partners or "members,"

whether acting alone or in collusion with other persons.

**(b)** Loss caused by an "employee" if the "employee" had also committed "theft" or any other dishonest act prior to the effective date of this insurance and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the "employee", learned of that "theft" or dishonest act prior to the Policy Period shown in the Declarations.

**(c)** Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(i)** An inventory computation; or

**(ii)** A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

**(d)** Loss resulting from:

**(i)** The unauthorized disclosure of your confidential information including, but not limited to, patents, trade secrets, processing methods or customers lists; or

**(ii)** The unauthorized use or disclosure of confidential information of another person or entity which is held by you including, but not limited to, financial information, personal information or similar non-public information.

**(iii)** The use or purported use of credit, debit, charge, access, convenience, identification, stored-value or other cards of the information contained on such cards.

**(4)** We will pay for loss that you sustained prior to the effective date of cancellation of this insurance, which is "discovered" by you:

**(a)** No later than 1 year from the date of that cancellation.  However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer, replacing in whole or in part the coverage afforded under this insurance, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**(b)** No later than 1 year from the date of that cancellation with regards to any "employee benefit plans".

**(5)** We will pay only for loss you sustain through an "occurrence" that occurs during the Policy Period.  Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

**(6)** This Insuring Agreement terminates as to any "employee":

**(a)** As soon as:

**(i)** You; or

**(ii)** Any of your partners, "members", "managers", officers, directors, or trustees not in collusion with the "employee";

learn of "theft" or any dishonest act committed by the "employee" whether before or after becoming employed by you; or

**(b)** On the date specified in a notice mailed to the first Named Insured. That date will be at least 30 days after the date of mailing.

We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**(7)** We will cover loss that you sustain resulting from an "occurrence" taking place anywhere in the world.

**(8)** Definitions

In addition to the definitions in **A.4.i.** above, the following definitions apply to this Computer Fraud and Funds Transfer Fraud coverage:

**(a)** "Banking premises" means the interior of that portion of any building occupied by a banking institution or similar safe depository.

**(b)** "Fraudulent instruction" means:

**(i)** An electronic, telegraphic, cable, teletype, telefacsimile or telephone instruction which purports to have been transmitted by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent;

**(ii)** A written instruction (other than those described in **A.4.l. – Forgery and Alteration**) issued by you, which was forged or altered by someone other than you without your knowledge or consent, or which purports to have been issued by you, but was in fact fraudulently issued without your knowledge or consent; or

**(iii)** An electronic, telegraphic, cable, teletype, telefacsimile, telephone or written instruction initially received by you which purports to have been transmitted by an "employee" but which was in fact fraudulently transmitted by someone else without your or the "employee's" knowledge or consent.

**(c)** "Funds" means "money" and "securities".

**(d)** "Messenger" means you, or a relative of yours, or any of your partners or "members", or any "employee" while having care and custody of property outside the "premises".

**(e)** For purposes of this coverage, "occurrence" means:

**(i)** An individual act;

**(ii)** The combined total of all separate acts or events whether or not related; or

**(iii)** A series of acts or events whether or not related;

committed by a person acting alone or in collusion with other persons, or not committed by any person, during the Policy Period shown in the Declarations.

**(f)** "Premises" means the interior of that portion of any building you occupy in conducting your business.

**(g)** "Transfer account" means an account maintained by you at a financial institution from which you can initiate the transfer, payment or delivery of "funds":

**(i)** By means of electronic, telegraphic, cable, teletype, telefacsimile or telephone instructions communicated directly through an electronic funds transfer system; or

**(ii)** By means of written instructions (other than those described in **A.4.l. – Forgery and Alteration**) establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

**(9)** For this Computer Fraud and Funds Transfer Fraud coverage, "money" and "securities" are removed from paragraph **a.** of **A.2. Property Not Covered** of the Building and Personal Property Form.

**(10)** For this Computer Fraud and Funds Transfer Fraud coverage, Paragraph **g.** of **B.2. Exclusions** is removed from the Causes of Loss – Special Form:

**q.  Fine Arts**

**(1)** We will pay for direct physical loss or damage to Fine Arts meaning paintings, etchings, pictures, tapestries, art glass windows, valuable rugs, statuary, marbles, bronzes, antique furniture, rare books, antique silver, manuscripts, porcelains, rare glassware, bric-a-brac and similar property of

art rarity, antiquity, historical value or artistic merit, not to exceed $300,000 in any one occurrence.

**(2)** We will pay for direct physical loss or damage to newly acquired Fine Arts at the premises shown in the Declarations or at newly acquired premises caused by or resulting from a Covered Cause of Loss, not to exceed $25,000.

This coverage applies until the first of the following occurs:

**(a)** You report the value of the newly acquired Fine Arts at the premises shown in the Declarations or at the newly acquired premises to us;

**(b)** 180 days pass from the date you acquire the Fine Arts; or

**(c)** This policy expires.

**(3)** We will pay for direct physical loss or damage to Fine Arts in transit, including registered shipments by mail, caused by or resulting from a Covered Cause of Loss, not to exceed $10,000.

**(4)** If loss or damage applies to Fine Arts, the basis of the adjustment is as follows:

**(a)** The Limit of Insurance shown on a schedule for each Fine Arts item.  This will be the agreed value for each item;

**(b)** If the item is newly acquired, the value will be the fair market value; or

**(c)** The most we will pay in the event of loss or damage to unscheduled Fine Arts items is the least of the following:

**(i)** The cost of restoring the property to its condition immediately before the loss or damage;

**(ii)** The cost of replacing the property with substantially identical property; or

**(iii)** The fair market value.

All at the time and place of the loss or damage.

**(5)** Limitation **C.2.b.** of the Causes of Loss – Special Form does not apply to this Additional Coverage.

**r.   Contamination**

**(1)** We will provide coverage for loss or damage which results from contamination, meaning loss or damage to stock caused by a foreign substance accidentally entering or coming into contact with the stock.

**(2)** The insurance provided by this coverage form applies to loss or damage to "stock" owned by you or by others in your care, custody and control at:

**(a)** Your described premises;

**(b)** Premises of a cold storage warehouse; or

**(c)** Premises of a consignee;

**(3)** For purposes of this Additional Coverage, contamination does not include:

**(a)** The wrongful addition or omission of ingredients or substances as part of the production process; nor improper processing or preparation; or

**(b)** Loss or damage resulting from "Equipment Breakdown".

**(4)** Exclusion **B.1.e.** of the Causes of Loss – Special Form does not apply to this Additional Coverage Extension.

**(5)** The most we will pay under this coverage for each occurrence is $50,000.

**s.   Leasehold Interest Improvements and Betterments**

**(1)** We will pay for the value of undamaged improvements and betterments when your lease is canceled by:

**(a)** The lessor; and

**(b)** Pursuant to a valid condition of your lease

due to direct physical loss or damage to Building or Business Personal Property caused by or resulting from a Covered Cause of Loss at the premises shown in the Declarations.

**(2)** When you rent the building, we will pay only if:

**(a)** At least 25% of the above building has been damaged; or

**(b)** A minimum of six months remains in your lease and at least six months is required to repair building for your occupancy.

**(3)** When you rent a portion of the building, we will pay only if:

**(a)** A minimum of six months remains in your lease; and

**(b)** At least six months is required to repair the building for your occupancy.

**(4)** The most we will pay under this Additional Coverage is $250,000.

**t.** **CFC Refrigerants**

We will pay, not to exceed $50,000, for direct physical loss or damage to Covered Property for the additional cost to repair or replace Covered Property because of the use or presence of a refrigerant containing CFC (chlorinated fluorocarbon substances). This means the additional expense to do the least expensive of the following:

**(1)** Repair the damaged property and replace any lost CFC refrigerant;

**(2)** Repair the damaged property, retrofit the system to accept a non-CFC refrigerant and charge the system with a non-CFC refrigerant; or

**(3)** Replace the system with one using non-CFC refrigerant.

Additional costs mean those beyond that would have been required had no CFC refrigerant being involved.

For purposes of this Additional Coverage, we will not pay for loss or damage resulting from "Equipment Breakdown".

**u.** **Utility Services - Direct Damage**

**(1)** We will pay, not to exceed $1,000,000 per "occurrence" for loss of or damage to a covered Building caused by the interruption of service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the following property, not on the described premises.

**(a)** **Water Supply Services**, meaning the following types of property supplying water to the described premises:

**(i)** Pumping stations; and

**(ii)** Water mains.

**(b)** **Communication Supply Services**, meaning property supplying communication services, including telephone, radio, microwave or television services, to the described premises, such as:

**(i)** Communication transmission lines, including optic fiber transmission lines:

**(ii)** Coaxial cables; and

**(iii)** Microwave radio relays except satellites.

**(c)** **Power Supply Services**, meaning the following types of property supplying electricity, steam or gas to the described premises:

**(i)** Utility generating plants;

**(ii)** Switching stations;

**(iii)** Substations;

**(iv)** Transformers; and

**(v)** Underground transmission lines. This coverage does not apply to overhead transmission and distribution lines.

**(2)** The Utility Services Limit of Insurance is part of, not in addition to, the Limit of Insurance stated in the Declarations.

**v.** **Spoilage Coverage**

**(1)** Paragraph **A.1. Covered Property** is replaced by the following:

**1.** **Covered Property**

Covered Property means "perishable stock" at the described premises owned by you or by others that is in your care, custody or control.

The most we will pay for loss damage under this Additional Coverage is $50,000 at each building.

**(2)** With respect to the coverage provided by this endorsement, property located on buildings or in the open or in vehicles is considered to be Property Not Covered.

**(3)** Paragraph **A.3. Covered Causes Of Loss** is replaced by the following:

    **3. Covered Causes Of Loss**

       **a.** **Power Outage**, meaning change in temperature or humidity resulting from complete or partial interruption of electrical power, either on or off the described premises, due to conditions beyond your control.

**(4)** **Selling Price**

    We will determine the value of finished "perishable stock" in the event of loss or damage at:

    **(a)** The selling price, as if no loss or damage had occurred;

    **(b)** Less discounts and expenses you otherwise would have had.

**(5)** Paragraph **A.5. Coverage Extensions** does not apply.

**(6)** Paragraph **B. Exclusions** is replaced by the following:

    **B. Exclusions**

    **1.** Only the following Exclusions contained in Paragraph **B.1.** of the Causes of Loss Form applicable to this Coverage Part apply to Spoilage Coverage:

       **a.** Earth Movement;

       **b.** Governmental Action;

       **c.** Nuclear Hazard;

       **d.** War And Military Action; and

       **e.** Water.

    **2.** The following Exclusions are added:

    We will not pay for loss or damage caused by or resulting from:

       **a.** The disconnection of any refrigerating, cooling or humidity control system from the source of power.

       **b.** The deactivation of electrical power caused by the manipulation of any switch or other device used to control the flow of electrical power or current.

       **c.** The inability of an Electrical Utility Company or other power source to provide sufficient power due to:

          **(i)** Lack of fuel; or

          **(ii)** Governmental order.

       **d.** The inability of a power source at the described premises to provide sufficient power due to lack of generating capacity to meet demand.

       **e.** Breaking of any glass that is a permanent part of any refrigerating, cooling or humidity control unit.

**(7)** Paragraph **F. Additional Conditions** is replaced by the following:

    **ADDITIONAL CONDITION**

    The following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

    **REFRIGERATION MAINTENANCE AGREEMENTS**

    You must maintain a refrigeration maintenance or service agreement. If you voluntarily terminate this agreement and do not notify us, the insurance provided by this endorsement will be automatically suspended at the involved location.

**(8)** Paragraph **G. Optional Coverages** does not apply.

**(9)** The following is added to the Definitions:

    "Perishable stock" means personal property:

    **(a)** Maintained under controlled conditions for its preservation; and

    **(b)** Susceptible to loss or damage if the controlled conditions change.

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

Unless otherwise indicated, the policy deductible applies to all of the following Coverage Extensions on a per location basis.

If a Coinsurance percentage of 80% or more, or a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Building, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at locations, other than the described premises, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $500,000 at each building.

**(2) Your Business Personal Property**

**(a)** If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

**(i)** Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions;

**(ii)** Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations; or

**(iii)** Business personal property that you newly acquire, located at the described premises.

The most we will pay for loss or damage under this Extension is 25% of the limit of insurance for Your Business Personal Property shown in the Declarations, but not more than $500,000 at each building.

**(b)** This Extension does not apply to:

**(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

**(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance on or at each newly acquired or constructed property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 180 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft.

**(a)** The most we will pay for loss or damage under paragraph **(1)** is $25,000 at each described premises.

**(b)** With respect to property covered under paragraph **(1)**, the deductible applicable to Your Business Personal Property does not apply.

**(2)** Personal property of others in your care, custody or control.

    **(a)** The most we will pay for loss or damage under paragraph **(2)** is $100,000 at each described premises. However, the most we will pay to any one customer is $25,000, but no more than $10,000 for any fur or garment trimmed with fur.

    **(b)** Exclusion **B.2.g.** of the Causes of Loss – Special Form does not apply to coverage provided under paragraph **(2)**.

    **(c)** With respect to property covered under paragraph **(2)**, the deductible applicable to Your Business Personal Property does not apply.

    **(d)** Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**(3)** Personal Effects and Property of Others is valued on the same basis as Your Business Personal Property, but we will pay no more than the amount for which you are legally liable.

**c.** **Valuable Papers And Records (Other Than Electronic Data)**

**(1)** We will pay for Valuable Papers and Records loss you incur caused by a Covered Cause of Loss:

    **(a)** At a described premises or in or on a vehicle in transit between described premises; or

    **(b)** If the Valuable Papers and Records must be removed from a described premises to protect them from the threat of a Covered Cause of Loss,

    We will pay for loss while they are:

        **(i)** At a safe place away from your described premises; or

        **(ii)** Being taken to and returned from that place; or

    **(c)** In transit, including registered shipments by mail.

**(2)** Valuable Papers and Records means those that are your property or property of others in your care, custody or control:

    **(a)** Inscribed, printed or written documents, manuscripts or records, including abstracts, books, deeds, drawings, films, maps or mortgages.

    **(b)** But "Valuable Papers and Records" does not mean money or securities, converted data, programs or instructions used in your data processing operations, including the materials on which the data is recorded.

**(3)** Valuable Papers and Records loss payment will be determined as follows:

    **(a)** The full cost of replacement or reproduction at the time of direct physical loss or damage when they are actually replaced or reproduced; or

    **(b)** If not replaced or reproduced, the value based on the cost of blank materials.

    **(c)** If either you or we recover any property after loss settlement, that party must give prompt notice.  At your option, the property will be returned to you.  If so, your loss will be readjusted based on the amount you received for the property recovered, with allowance for recovery expenses incurred.

**(4)** The most we will pay under this Coverage Extension is $250,000, except $10,000 for transit loss covered in paragraph **(1)(c)** above.

**d.** **Property Off-premises**

**(1)** We will pay for direct physical loss or damage to your Business Personal Property at unspecified premises, caused by or resulting from a Covered Cause of Loss, not to exceed $25,000.

**(2)** This Additional Coverage does not apply to:

    **(a)** Salesperson's samples;

    **(b)** Personal Property while at any exhibition, fair or trade show;

    **(c)** Personal Property at a newly acquired premises;

    **(d)** Personal Property at a job site or temporarily warehoused elsewhere awaiting installation at the job site; or

    **(e)** Personal Property while in transit.

**e.** **Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your trees, shrubs and plants (other than "stock" of trees, shrubs or plants), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

**(6)** Vehicle Collision

**(7)** Theft

**(8)** Vandalism and Malicious Mischief

**(9)** Weight of Ice and Snow

The most we will pay for loss or damage under this Extension is $10,000, but not more than $1,000 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

**f.   Non-owned Detached Trailers**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

  **(a)** The trailer is used in your business;

  **(b)** The trailer is in your care, custody or control at the premises described in the Declarations; and

  **(c)** You have a contractual responsibility to pay for loss or damage to the trailer.

**(2)** We will not pay for any loss or damage that occurs:

  **(a)** While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

  **(b)** During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

**(3)** The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

**(4)** This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**g.   Loss Data Preparation Costs**

**(1)** We will pay up to $10,000 for reasonable costs you incur in preparing loss data required by policy conditions after a covered loss.  This includes the cost of taking inventory, making appraisals and preparing other data to determine the extent of your loss.

**(2)** We will not pay for any expenses billed by and payable to independent or public adjusters or for expenses to prepare claims not covered by this Coverage Part.

**h.   Exterior Glass**

**(1)** We will pay for direct physical loss of or damage to glass that is part of the exterior of a covered building or structure at the described premises, including lettering, and ornamentation, provided the glass is owned by you, or owned by others but in your care, custody or control.

**(2)** We will also pay for necessary:

  **(a)** Expenses incurred to put up temporary plates or board up openings;

  **(b)** Repair or replacement of encasing frames; and

  **(c)** Expenses incurred to remove or replace obstructions.

**(3)** Section **B. Exclusions** does not apply to this Coverage Extension except for:

  **(a)** Paragraph **B.1.c. Governmental Action**;

  **(b)** Paragraph **B.1.d. Nuclear Hazard**; and

  **(c)** Paragraph **B.1.f. War and Military Action**.

**(4)** We will not pay for loss or damage caused by or resulting from wear and tear.

**(5)** This Coverage Extension supersedes all Limitations in this policy that apply to exterior glass.

**(6)** No deductible applies to this Coverage Extension.

**i.  Interior Glass**

  **(1)**  We will pay for direct physical loss of or damage to items of glass that are permanently affixed to the interior walls, floors or ceilings of a covered building or structure at the described premises, provided each item is owned by you, or owned by others but in your care, custody or control.

  **(2)**  We will also pay for necessary:

    **(a)**  Expenses incurred to put up temporary plates or board up openings;

    **(b)**  Repair or replacement of encasing frames; and

    **(c)**  Expenses incurred to remove or replace obstructions.

  **(3)**  Section **B. Exclusion** does not apply to this Coverage Extension, except for:

    **(a)**  Paragraph **B.1.c. Governmental Action**;

    **(b)**  Paragraph **B.1.d. Nuclear Hazard**; and

    **(c)**  Paragraph **B.1.f. War and Military Action**.

  **(4)**  We will not pay for loss or damage caused by or resulting from wear and tear.

  **(5)**  This Coverage Extension supersedes all Limitations in this policy that apply to interior glass.

  **(6)**  No deductible applies to this Coverage Extension.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B.  Exclusions And Limitations**

See applicable Causes Of Loss Form as shown in the Declarations.

**C.  Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The amounts of insurance stated in the following Additional Coverages apply in accordance with the terms of such coverages and are separate from the Limit(s) of Insurance shown in the Declarations for any other coverage:

**1.**  Fire Department Service Charge;

**2.**  Pollutant Clean-up And Removal;

**3.**  Increased Cost Of Construction; and

**4.**  Electronic Data.

Payments under the Preservation Of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D.  Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss, and will pay the resulting amount or the Limit of Insurance, whichever is less.

If one occurrence results in loss or damage at more than one location, the applicable deductible will apply separately to loss or damage at each location that has sustained loss or damage.

**EXAMPLE**

(This example assumes there is no Coinsurance penalty.)

| | | |
|---|---|---|
| Deductible: | $ | 25,000 |
| Limit of Insurance: | $ | 6,000,000 |
| Amount of Loss: | $ | 6,010,000 |

The amount of loss ($6,010,000) is less than the sum ($6,025,000) of the Limit of Insurance plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable:

| | |
|---|---|
| $ | 6,010,000 |
| - | 25,000 |
| $ | 5,985,000   Loss Payable |

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Vacancy**

**a. Description Of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value as of the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

However, the following property will be valued at the actual cash value even when attached to the building:

**(1)** Awnings or floor coverings;

**(2)** Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)** Outdoor equipment or furniture.

**c.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**d.** Glass at the cost of replacement with safety-glazing material if required by law.

**e.** Tenants' Improvements and Betterments at:

**(1)** Actual cash value of the lost or damaged property if you make repairs promptly.

**(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(a)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(b)** Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(3)** Nothing if others pay for repairs or replacement.

**f. Brands and Labels**

If branded or labeled merchandise that is Covered Property is damaged by a Covered Cause of Loss, we may take all or any part of the property at an agreed or appraised value.  If so, you may:

**(1)** Stamp "salvage" on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

**(2)** Remove the brands or labels, if doing so will not physically damage the merchandise or its containers to comply with the law.

We will pay reasonable costs you incur to perform the activity described in **(1)** and **(2)** above.  But the total we pay for these costs and the value of the damaged property will not exceed the applicable Limit of Insurance on such property.  In case **(1)** and **(2)** above, Your Business Personal Property valuation will include the difference between:

**(1)** The salvage value of the damaged property with the brand or label attached; and

**(2)** The salvage value of the damaged property with the brand or label removed.

**g. Extended Warranties**

Your Business Personal Property valuation includes the cost of non-refundable extended warranties, maintenance contracts or service contracts that you purchased, which are no longer valid on lost or damaged Business Personal Property that you repair or replace.

**F. Additional Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies.

**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in Step **(1)**;

**(3)** Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **(2)**; and

**(4)** Subtract the deductible from the figure determined in Step **(3)**.

We will pay the amount determined in Step **(4)** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**EXAMPLE #1 (UNDERINSURANCE)**

| When: | The value of the property is: | $ | 250,000 |
|---|---|---|---|
| | The Coinsurance percentage for it is: | | 80% |
| | The Limit of Insurance for it is: | $ | 100,000 |
| | The Deductible is: | $ | 250 |
| | The amount of loss is: | $ | 40,000 |

Step **(1):** $250,000 x 80% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2):** $100,000 ÷ $200,000 = .50

Step **(3):** $40,000 x .50 = $20,000

Step **(4):** $20,000 - .250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**EXAMPLE #2 (ADEQUATE INSURANCE)**

| When: | The value of the property is: | $ | 250,000 |
|---|---|---|---|
| | The Coinsurance percentage for it is: | | 80% |
| | The Limit of Insurance for it is: | $ | 200,000 |
| | The Deductible is: | $ | 250 |
| | The amount of loss is: | $ | 40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this example is adequate and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**EXAMPLE #3**

| When: | The value of the property is: | | |
|---|---|---|---|
| | Building at Location #1: | $ | 75,000 |
| | Building at Location #2: | $ | 100,000 |
| | Personal Property at Location #2: | $ | 75,000 |
| | | $ | 250,000 |
| | The Coinsurance percentage for it is: | | 90% |
| | The Limit of Insurance for Buildings and Personal Property at Locations #1 and #2 is: | $ | 180,000 |
| | The Deductible is: | $ | 1,000 |
| | The amount of loss is: | | |
| | Building at Location #2: | $ | 30,000 |
| | Personal Property at Location #2: | $ | 20,000 |
| | | $ | 50,000 |

Step **(1)**:    $250,000 x 90% = $225,000

(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step **(2)**:    $180,000 ÷ $225,000 = .80

Step **(3)**:    $50,000 x .80 = $40,000

Step **(4)**:    $40,000 - $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2.** **Mortgageholders**

**a.**  The term mortgageholder includes trustee.

**b.**  We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.**  The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.**  If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)**  Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)**  Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)**  Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

**e.**  If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)**  The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)**  The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.**  If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)**  10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)**  30 days before the effective date of cancellation if we cancel for any other reason.

**g.**  If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**G. Optional Coverages**

The following Optional Coverages apply separately to each item whether or not shown as applicable in the Declarations.

**1.  Agreed Value**

**a.**  The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

**b.**  If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

**c.**  The terms of this Optional Coverage apply only to loss or damage that occurs:

**(1)**  On or after the effective date of this Optional Coverage; and

**(2)**  Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

**2. Inflation Guard**

    **a.** The Limit of Insurance for property to which this Optional Coverage applied will automatically increase by the annual percentage shown in the Declarations.

    **b.** The amount of increase will be:

        **(1)** The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

        **(2)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

        **(3)** The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**EXAMPLE**

| If: | | |
|---|---|---|
| The applicable Limit of Insurance is: | $ | 100,000 |
| The annual percentage increase is: | | 8% |
| The number of days since the beginning of the policy year (or last policy change) is: | | 146 |
| The amount of increase is: | | |
| $100,000 x .08 x 146 ÷ 365 = | $ | 3,200 |

**3. Replacement Cost**

    **a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

    **b.** This Optional Coverage does not apply to:

        **(1)** Personal property of others;

        **(2)** Contents of a residence;

        **(3)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

        **(4)** "Stock", unless the Including "Stock" option is shown in the Declarations.

    Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

    **c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

    **d.** We will not pay on a replacement cost basis for any loss or damage:

        **(1)** Until the lost or damaged property is actually repaired or replaced; and

        **(2)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

    With respect to tenants' improvements and betterments, the following also apply:

        **(3)** If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Loss Condition of this Coverage Form; and

        **(4)** We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

    **e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)** or **(3)**, subject to **f.** below:

        **(1)** The Limit of Insurance applicable to the lost or damaged property;

        **(2)** The cost to replace the lost or damaged property with other property:

            **(a)** Of comparable material and quality; and

            **(b)** Used for the same purpose; or

        **(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

    **f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

  **4.** **Extension Of Replacement Cost To Personal Property Of Others**

    **a.** If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

    **b.** With respect to replacement cost on the personal property of others, the following limitation applies:

    If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

## H. Definitions

  **1.** "Equipment Breakdown" as used herein means:

    **a.** Physical Loss or damage both originating within:

      **(1)** Boilers, fired or unfired pressure vessels, vacuum vessels, and pressure piping, all normally subject to vacuum or internal pressure other than static pressure of contents, excluding:

        **(a)** waste disposal piping;

        **(b)** any piping forming part of a fire protective system;

        **(c)** furnaces; and

        **(d)** any water piping other than:

          **(i)** boiler feed water piping between the feed pump and the boiler;

          **(ii)** boiler condensate return piping; or

          **(iii)** water piping forming part of a refrigerating or air conditioning system used for cooling, humidifying or space heating purposes.

      **(2)** All mechanical, electrical, electronic or fiber optic equipment; and

    **b.** Caused by, resulting from, or consisting of:

      **(1)** Mechanical breakdown;

      **(2)** Electrical or electronic breakdown; or

      **(3)** Rupture, bursting, bulging, implosion, or steam explosion.

However, "Equipment Breakdown" will not mean:

Physical loss or damage caused by or resulting from any of the following; however if loss or damage not otherwise excluded results, then we will pay for such resulting damage:

    **(1)** Wear and Tear;

    **(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any other quality in property that causes it to damage or destroy itself;

    **(3)** Smog;

    **(4)** Settling, cracking, shrinking or expansion;

    **(5)** Nesting or infestation, or discharge or release of waste products or secretions, by birds, rodents or other animals;

    **(6)** Any accident, loss, damage, cost, claim, or expense, whether preventative, remedial, or otherwise, directly or indirectly arising out of or relating to the recognition, interpretation, calculation, comparison, differentiation, sequencing, or processing of data by any computer system including any hardware, programs or software;

    **(7)** Scratching and marring;

    **(8)** Loss, damage, cost or expense directly caused by, contributed to by, resulting from or arising out of the following causes of loss:

Fire, lightning, combustion explosion, windstorm or hail, weight of snow, ice or sleet, freeze, falling objects, smoke, aircraft or vehicles, riot or civil commotion, vandalism, sinkhole collapse, volcanic action, leakage from fire extinguishing equipment, water, water damage, earth movement or flood.

**2.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**3.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**4.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

**(CP 00 30 06 07)**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F. Definitions**.

## A.  Coverage

**1.  Business Income**

Business Income means the:

**a.**  Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**b.**  Continuing normal operating expenses incurred, including payroll.

For manufacturing risks, Net Income includes the net sales value of production.

Coverage is provided as described and limited below for one or more of the following options for which a Limit of Insurance is shown in the Declarations:

**(1)**  Business Income Including "Rental Value".

**(2)**  Business Income Other Than "Rental Value".

**(3)**  "Rental Value".

If option **(1)** above is selected, the term Business Income will include "Rental Value". If option **(3)** above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 1,000 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

**(a)**  The portion of the building which you rent, lease or occupy; and

**(b)**  Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

**2.  Extra Expense**

**a.**  Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.

**b.**  Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property) to:

**(1)**  Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

**(2)**  Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

**3. Covered Causes Of Loss, Exclusions And Limitations**

See applicable Causes Of Loss Form as shown in the Declarations.

**4. Additional Limitation - Interruption Of Computer Operations**

**a.** Coverage for Business Income does not apply when a "suspension" of "operations" is caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage - Interruption Of Computer Operations.

**b.** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage - Interruption Of Computer Operations.

**c.** Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**5. Additional Coverages**

**a. Civil Authority**

In this Additional Coverage - Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin immediately (unless a waiting period applies) after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to 30 consecutive days from the date on which such coverage began.

Civil Authority Coverage for Extra Expense will begin immediately (unless a waiting period applies) after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(1)** 30 consecutive days after the date of that action; or

**(2)** When your Civil Authority Coverage for Business Income ends;

whichever is later.

**b. Alterations And New Buildings**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

**(1)** New buildings or structures, whether complete or under construction;

**(2)** Alterations or additions to existing buildings or structures; and

**(3)** Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

**(a)** Used in the construction, alterations or additions; or

**(b)** Incidental to the occupancy of new buildings.

If such direct physical loss or damage delays the start of "operations", the "period of restoration" for Business Income Coverage will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

**c. Extended Business Income**

**(1) Business Income Other Than "Rental Value"**

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

**(a)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

**(b)** Ends on the earlier of:

**(i)** The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

**(ii)** 30 consecutive days after the date determined in **(1)(a)** above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(2) "Rental Value"**

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this policy, we will pay for the actual loss of "Rental Value" you incur during the period that:

**(a)** Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

**(b)** Ends on the earlier of:

**(i)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

**(ii)** 60 consecutive days after the date determined in **(2)(a)** above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of "Rental Value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**d. Interruption Of Computer Operations**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Additional Limitation - Interruption Of Computer Operations.

**(2)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of electronic data due to a Covered Cause of Loss.

**(3)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

**(a)** If the Causes Of Loss - Special Form applies, coverage under this Additional Coverage - Interruption Of Computer Operations is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

**(b)** If the Causes Of Loss - Broad Form applies, coverage under this Additional Coverage - Interruption Of Computer Operations includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage - Interruption Of Computer Operations.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer

system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

**(4)** The most we will pay under this Additional Coverage - Interruption of Computer Operations is $2,500 for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**(5)** This Additional Coverage - Interruption in Computer Operations does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(4)** above has not been exhausted.

**6. Coverage Extension**

If a Coinsurance percentage of 50% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**NEWLY ACQUIRED LOCATIONS**

**a.** You may extend your Business Income and Extra Expense Coverages to apply to property at any location you acquire other than fairs or exhibitions.

**b.** The most we will pay under this Extension, for the sum of Business Income loss and Extra Expense incurred, is $100,000 at each location.

**c.** Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

**(1)** This policy expires;

**(2)** 180 days expire after you acquire or begin to construct the property; or

**(3)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

The Additional Condition, Coinsurance, does not apply to this Extension.

**7. Utility Services - Time Element**

**a.** We will pay for loss of Business Income or Extra Expense at the described premises caused by the interruption of service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the property described in paragraph **b.** and is located outside of a covered building described in the Declarations.

**b. Utility Services**

**(1) Water Supply Services**, meaning the following types of property supplying water to the described premises:

**(a)** Pumping stations; and

**(b)** Water mains.

**(2) Communication Supply Services**, meaning property supplying communication services, including telephone, radio, microwave or television services, to the described premises, such as:

**(a)** Communication transmission lines, including optic fiber transmission lines;

**(b)** Coaxial cables; and

**(c)** Microwave radio relays except satellites.

**(3) Power Supply Services**, meaning the following types of property supplying electricity, steam or gas to the described premises:

**(a)** Utility generating plants;

**(b)** Switching stations;

**(c)** Substations;

**(d)** Transformers; and

    **(e)**  Underground transmission lines. This coverage does not apply to overhead transmission and distribution lines.

  **c.**  The most we will pay under this Extension is for 5 consecutive days after the direct physical loss or damage.

**8.**  **In Transit**

  **a.**  We will pay for the actual Business Income loss and Extra Expense you incur due to the actual or potential impairment of your "operations" during the "period of restoration."

  **b.**  This actual potential impairment of "operations" must be caused by or result from direct physical loss or damage by a Covered Cause of Loss to Business Personal Property while in transit, including registered shipments by mail or salespersons samples.

  **c.**  This additional coverage does not apply:

    **(1)**  To any property while in transit to or from any exhibition, fair or trade show;

    **(2)**  When you are acting as a carrier for hire; or

    **(3)**  If you have purchased separate ocean marine insurance, which covers any property in transit.

**9.**  **Business Income from Dependent Properties**

  **a.**  We will pay for the actual loss of Business Income or Extra Expense you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." "The suspension" must be caused by direct physical loss of or damage to "dependent property" caused by or resulting from any Covered Cause of Loss. The name, occupancy and location of Leader Location(s), as defined in paragraph **e.(1)(d)** below, must be specifically identified in a separate endorsement for this coverage to apply there.

  **b.**  The provisions of the Business Income and Extra Expense Coverage Form with respect to direct physical loss or damage at the described premises will apply separately to each premises described in the Declarations.

  **c.**  But we will not pay more than $1,000 for each day's "suspension" of "operations" due to loss arising from any one "Leader Location" and no more than 30 consecutive days after the direct physical loss or damage.

  **d.**  Under the Loss Determination Loss Condition, the following is added to the Resumption Of Operations Provision:

    We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume "operation", in whole or in part, by using any other available:

    **(1)**  Source of materials; or

    **(2)**  Outlet for your products

  **e.**  The following is added to the **Definitions** Section:

    **(1)**  "Dependent Property" means property operated by others whom you depend on to:

      **(a)**  Deliver materials or services to you, or to others for your account (Contributing Locations). With respect to Contributing Locations, services does not mean water, communication or power supply services;

      **(b)**  Accept your products or services (Recipient Locations);

      **(c)**  Manufacture products for delivery to your customers under contract of sale (Manufacturing Locations); or

      **(d)**  Attract customers to your business (Leader Locations).

    **(2)**  "Period of Restoration", with respect to "dependent property", means the period of time that:

      **(a)**  Begins 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the premises of the "dependent property"; and

      **(b)**  Ends on the date when the property at the premises of the "dependent property" should be repaired, rebuilt or replaced with reasonable speed and similar quality, but not for more than 30 consecutive days after the direct physical loss or damage.

    Period of restoration" does not include any increased period required due to the enforcement of any increase period required due to the enforcement of any ordinance or law that:

      **(a)**  Regulates the construction, use or repair, or requires the tearing down of any property; or

      **(b)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

    The expiration date of this policy will not cut short the "period of restoration".

**10. Auditors Fees**

  **a.** We will pay for reasonable fees you are obligated to pay your accountants or auditors following a loss covered by this Coverage Part when we require your accountants or auditors to certify your expenses, profit or loss, not to exceed $10,000.

  **b.** This additional coverage applies only at the premises for which you have incurred a loss covered by this contract.

  **c.** We will not pay for any expenses billed by and payable to independent or public adjusters or for expenses to prepare claims not covered by this Coverage Part.

**11. Pollutant Cleanup and Removal**

  **a.** We will pay for the actual Business Income loss you incur due to the actual impairment of your "operations" during the "period of restoration," not to exceed $10,000.

  **b.** The actual impairment of "operations" must be caused by or result from the enforcement of any ordinance or law that requires you to clean up or remove pollutants from land or water as a result of direct physical loss or damage by a Covered Cause of Loss to Building or your Business Personal Property at the premises shown in the Declarations.

**12. Food Contamination**

  **a.** If your business at the described premises is ordered closed by the Board of Health or any other governmental authority as a result of the discovery or suspicion of food contamination, we will pay the following:

    **(1)** Extra Expenses:

      **(a)** The cost to clean your equipment as required by the Board of Health or any other governmental authority;

      **(b)** The cost to replace food, which is, or is suspected to be, contaminated;

      **(c)** The cost of necessary medical tests or vaccinations for your employees; and

    **(2)** Business Income Expenses:

      **(a)** The actual loss of Business Income you sustain due to the necessary "suspension" of "operations"; and

      **(b)** The cost of additional advertising to restore your reputation.

    The coverage for Business Income and the cost of additional advertising will begin twenty-four hours after you receive notice of closing from the Board of Health or any other governmental authority and will apply for a period of up to 90 consecutive days after such coverage begins.

  **b.** Food contamination means an incidence of food poisoning to one or more of your patrons as a result of:

    **(1)** Tainted food you purchased;

    **(2)** Food which has been improperly stored, handled or prepared; or

    **(3)** A communicable disease transmitted through one or more of your employees.

  **c.** The most we will pay under this Additional Coverage for loss in any one occurrence is $50,000 unless a different limit for food contamination is shown in the Declarations.

  **d.** We will not pay any fines or penalties levied against you by the Board of Health or any other governmental authority as a result of the discovery or suspicion of food contamination at the described premises.

**13. Property at Any Other Location**

  **a.** You may extend your Business Income Coverage to apply to property at any location other than described premises or newly acquired locations.

  **b.** The most we will pay for loss under this Extension is $25,000 at each location.

**B. Limits Of Insurance**

The most we will pay for loss in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

Payments under the following coverages will not increase the applicable Limit of Insurance:

1. Alterations And New Buildings;

2. Civil Authority;

3. Extra Expense; or

4. Extended Business Income.

The amounts of insurance stated in the Interruption Of Computer Operations Additional Coverage and the Newly Acquired Locations Coverage Extension apply in accordance with the terms of those coverages and are separate from the Limit(s) of Insurance shown in the Declarations for any other coverage.

**C. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Appraisal**

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Loss**

**a.** You must see that the following are done in the event of loss:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when, and where the direct physical loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(6)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(7)** Cooperate with us in the investigation or settlement of the claim.

**(8)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**3. Loss Determination**

**a.** The amount of Business Income loss will be determined based on:

**(1)** The Net Income of the business before the direct physical loss or damage occurred;

    **(2)** The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

    **(3)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

    **(4)** Other relevant sources of information, including:

        **(a)** Your financial records and accounting procedures;

        **(b)** Bills, invoices and other vouchers; and

        **(c)** Deeds, liens or contracts.

**b.** The amount of Extra Expense will be determined based on:

    **(1)** All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

        **(a)** The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

        **(b)** Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

    **(2)** Necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

**c. Resumption Of Operations**

We will reduce the amount of your:

    **(1)** Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

    **(2)** Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**d.** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**4. Loss Payment**

We will pay for covered loss within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

**a.** We have reached agreement with you on the amount of loss; or

**b.** An appraisal award has been made.

**D. Additional Condition**

**COINSURANCE**

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

We will not pay the full amount of any Business Income loss if the Limit of Insurance for Business Income is less than:

**1.** The Coinsurance percentage shown for Business Income in the Declarations; times

**2.** The sum of:

**a.** The Net Income (Net Profit or Loss before income taxes), and

**b.** Operating expenses, including payroll expenses,

that would have been earned or incurred (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

Instead, we will determine the most we will pay using the following steps:

Step **(1):** Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

Step **(2):** Divide the Limit of Insurance for the described premises by the figure determined in Step **(1);** and

Step **(3):**    Multiply the total amount of loss by the figure determined in Step **(2)**.

We will pay the amount determined in Step **(3)** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

    **(1)** Prepaid freight - outgoing;

    **(2)** Returns and allowances;

    **(3)** Discounts;

    **(4)** Bad debts;

    **(5)** Collection expenses;

    **(6)** Cost of raw stock and factory supplies consumed (including transportation charges);

    **(7)** Cost of merchandise sold (including transportation charges);

    **(8)** Cost of other supplies consumed (including transportation charges);

    **(9)** Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

    **(10)** Power, heat and refrigeration expenses that do not continue under contract (if Form **CP 15 11** is attached);

    **(11)** All ordinary payroll expenses or the amount of payroll expense excluded (if Form **CP 15 10** is attached); and

    **(12)** Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion - not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

## EXAMPLE #1 (UNDERINSURANCE)

When:    The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been: $   400,000

        The Coinsurance percentage is:          50%

        The Limit of Insurance is:        $   150,000

        The amount of loss is:         $    80,000

Step **(1):** $400,000 x 50% = $200,000

        (the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2):** $150,000 ÷ $200,000 = .75

Step **(3):** $80,000 x .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

## EXAMPLE #2 (ADEQUATE INSURANCE)

When:    The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been: $   400,000

        The Coinsurance percentage is:          50%

        The Limit of Insurance is:        $   200,000

        The amount of loss is:         $    80,000

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%). Therefore, the Limit of Insurance in this example is adequate and no penalty applies. We will pay no more than $80,000 (amount of loss).

This condition does not apply to Extra Expense Coverage.

**E.  Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

**1.  Maximum Period Of Indemnity**

    **a.**  The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

    **b.**  The most we will pay for the total of Business Income loss and Extra Expense is the lesser of:

        **(1)**  The amount of loss sustained and expenses incurred during the 120 days immediately following the beginning of the "period of restoration"; or

        **(2)**  The Limit of Insurance shown in the Declarations.

**2.  Monthly Limit Of Indemnity**

    **a.**  The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

    **b.**  The most we will pay for loss of Business Income in each period of 30 consecutive days after the beginning of the "period of restoration" is:

        **(1)**  The Limit of Insurance, multiplied by

        **(2)**  The fraction shown in the Declarations for this Optional Coverage.

**EXAMPLE**

| When: | The Limit of Insurance is: | $ | 120,000 |
|---|---|---|---|
| | The fraction shown in the Declarations for this Optional Coverage is: | | 1/4 |
| | The most we will pay for loss in each period of 30 consecutive days is: | $ | 30,000 |
| | ($120,000 x 1/4 = $30,000) | | |
| | If, in this example, the actual amount of loss is: | | |
| | Days 1-30: | $ | 40,000 |
| | Days 31-60: | $ | 20,000 |
| | Days 61-90: | $ | 30,000 |
| | | $ | 90,000 |
| | We will pay: | | |
| | Days 1-30: | $ | 30,000 |
| | Days 31-60: | $ | 20,000 |
| | Days 61-90: | $ | 30,000 |
| | | $ | 80,000 |

The remaining $10,000 is not covered.

**3.  Business Income Agreed Value**

    **a.**  To activate this Optional Coverage:

        **(1)**  A Business Income Report/Work Sheet must be submitted to us and must show financial data for your "operations":

            **(a)**  During the 12 months prior to the date of the Work Sheet; and

            **(b)**  Estimated for the 12 months immediately following the inception of this Optional Coverage.

        **(2)**  The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies, and an Agreed Value must be shown in the Declarations. The Agreed Value should be at least equal to:

            **(a)**  The Coinsurance percentage shown in the Declarations; multiplied by

            **(b)**  The amount of Net Income and operating expenses for the following 12 months you report on the Work Sheet.

    **b.**  The Additional Condition, Coinsurance, is suspended until:

        **(1)**  12 months after the effective date of this Optional Coverage; or

        **(2)**  The expiration date of this policy;

whichever occurs first.

**c.** We will reinstate the Additional Condition, Coinsurance, automatically if you do not submit a new Work Sheet and Agreed Value:

**(1)** Within 12 months of the effective date of this Optional Coverage; or

**(2)** When you request a change in your Business Income Limit of Insurance.

**d.** If the Business Income Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

**(1)** The Business Income Limit of Insurance; divided by

**(2)** The Agreed Value.

**EXAMPLE**

When:    The Limit of Insurance is:          $   100,000

        The Agreed Value is:              $   200,000

        The amount of loss is:            $    80,000

Step **(1):** $100,000 ÷ $200,000 = .50

Step **(2):** .50 x $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

**4. Extended Period Of Indemnity**

Under Paragraph **A.5.c., Extended Business Income**, the number 30 in Subparagraph **(1)(b)** and the number 60 in Subparagraph **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

**F. Definitions**

**1.** "Finished stock" means stock you have manufactured.

"Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

"Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

**2.** "Operations" means:

**a.** Your business activities occurring at the described premises; and

**b.** The tenantability of the described premises, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

**3.** "Period of restoration" means the period of time that:

**a.** Begins:

**(1)** 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

**(2)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

caused by or resulting from any Covered Cause of Loss at the described premises; and

**b.** Ends on the earlier of:

**(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(2)** The date when business is resumed at a new permanent location.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

**(1)** Regulates the construction, use or repair, or requires the tearing down, of any property; or

**(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

**4.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**5.** "Rental Value" means Business Income that consists of:

    **a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and

    **b.** Continuing normal operating expenses incurred in connection with that premises, including:

        **(1)** Payroll; and

        **(2)** The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

**6.** "Suspension" means:

    **a.** The slowdown or cessation of your business activities; or

    **b.** That a part or all of the described premises is rendered untenantable, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

**7.** "Money" means:

    **a.** Currency, coins and bank notes in current use and having a face value; and

    **b.** Travelers checks, register checks and money orders held for sale to the public.

**8.** "Occurrence" means all loss, damage or sequence of loss or damage, casualties or disasters arising from a single happening or event.

**9.** "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

    **a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

    **b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you; but does not include "money".

# CAUSES OF LOSS – SPECIAL FORM

(CP 10 30 06 07)

Words and phrases that appear in quotation marks have special meaning. Refer to Section **G.,** Definitions.

**A. Covered Causes Of Loss**

Covered Causes Of Loss means Risks Of Direct Physical Loss unless the loss is:

**1.** Excluded in Section **B.,** Exclusions; or

**2.** Limited in Section **C.,** Limitations;

that follow.

**B. Exclusions**

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**a. Ordinance Or Law**

The enforcement of any ordinance or law:

**(1)** Regulating the construction, use or repair of any property; or

**(2)** Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance Or Law, applies whether the loss results from:

**(a)** An ordinance or law that is enforced even if the property has not been damaged; or

**(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

**b. Earth Movement**

**(1)** Earthquake, including any earth sinking, rising or shifting related to such event;

**(2)** Landslide, including any earth sinking, rising or shifting related to such event;

**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust or particulate matter; or

**(c)** Lava flow.

All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

This exclusion applies regardless of whether any of the above, in Paragraphs **b.(1)** through **(5)**, are naturally occurring or due to man-made or other artificial causes.

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1)**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(3)**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **(1)** through **(3)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**h. "Fungus", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

**1.** When "fungus", wet or dry rot or bacteria results from fire or lightning; or

**2.** To the extent that coverage is provided in the Additional Coverage - Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(a)** Electrical current, including arcing;

**(b)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(c)** Pulse of electromagnetic energy; or

**(d)** Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by that fire.

**b.** Delay, loss of use or loss of market.

**c.** **(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Settling, cracking, shrinking or expansion;

**(4)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

**(5)** Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

**(6)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in **2.c.(1)** through **(6)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**d.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**e.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**f.** Dishonest or criminal act by you, any of your partners, members, officers, managers, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

**(1)** Acting alone or in collusion with others; or

**(2)** Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered.

**g.** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**h.** Collapse, including any of the following conditions of property or any part of the property:

**(1)** An abrupt falling down or caving in;

**(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **h.(1)** or **(2)** above.

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion, **h.,** does not apply:

    **(a)** To the extent that coverage is provided under the Additional Coverage - Collapse; or

    **(b)** To collapse caused by one or more of the following:

        **(i)** The "specified causes of loss";

        **(ii)** Breakage of building glass;

        **(iii)** Weight of rain that collects on a roof; or

        **(iv)** Weight of people or personal property.

**i.** Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion, **i.,** does not apply to damage to glass caused by chemicals applied to the glass.

**j.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

**b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.** Faulty, inadequate or defective:

    **(1)** Planning, zoning, development, surveying, siting;

    **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    **(3)** Materials used in repair, construction, renovation or remodeling; or

    **(4)** Maintenance;

of part or all of any property on or off the described premises.

**4. Special Exclusions**

The following provisions apply only to the specified Coverage Forms.

**a. Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

    **(1)** Any loss caused by or resulting from:

        **(a)** Damage or destruction of "finished stock"; or

        **(b)** The time required to reproduce "finished stock".

    This exclusion does not apply to Extra Expense.

    **(2)** Any loss caused by or resulting from direct physical loss or damage to the lead-in wiring, masts or towers of outdoor radio or television antennas (including satellite dishes).

    **(3)** Any increase of loss caused by or resulting from the suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

    **(4)** Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

      **(5)** Any other consequential loss.

  **b.** **Leasehold Interest Coverage Form**

      **(1)** Paragraph **B.1.a.,** Ordinance Or Law, does not apply to insurance under this Coverage Form.

      **(2)** We will not pay for any loss caused by:

         **(a)** Your cancelling the lease;

         **(b)** The suspension, lapse or cancellation of any license; or

         **(c)** Any other consequential loss.

  **c.** **Legal Liability Coverage Form**

      **(1)** The following exclusions do not apply to insurance under this Coverage Form:

         **(a)** Paragraph **B.1.a.,** Ordinance Or Law;

         **(b)** Paragraph **B.1.c.,** Governmental Action;

         **(c)** Paragraph **B.1.d.,** Nuclear Hazard;

         **(d)** Paragraph **B.1.e.,** Utility Services; and

         **(e)** Paragraph **B.1.f.,** War And Military Action.

      **(2)** The following additional exclusions apply to insurance under this Coverage Form:

         **(a)** **Contractual Liability**

         We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

            **(i)** Your assumption of liability was executed prior to the accident; and

            **(ii)** The building is Covered Property under this Coverage Form.

         **(b)** **Nuclear Hazard**

         We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

**5.** **Additional Exclusion**

The following provisions apply only to the specified property.

**LOSS OR DAMAGE TO PRODUCTS**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**C.** **Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated.

**1.** We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

  **a.** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

  **b.** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

  **c.** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless :

      **(1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

      **(2)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

    **d.**  Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

**2.**  We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

    **a.**  Animals, and then only if they are killed or their destruction is made necessary.

    **b.**  Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

        **(1)**  Glass; or

        **(2)**  Containers of property held for sale.

**3.**  The special limit shown for each category, **3.a.** through **c.**, is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are:

    **a.**  $10,000 for furs, fur garments and garments trimmed with fur.

    **b.**  $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

    **c.**  $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

This limitation, **C.3.,** does not apply to Business Income Coverage or to Extra Expense Coverage.

**4.**  We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire-extinguishing equipment if the damage:

    **a.**  Results in discharge of any substance from an automatic fire protection system; or

    **b.**  Is directly caused by freezing.

However, this limitation does not apply to Business Income Coverage or to Extra Expense Coverage.

**D.  Additional Coverage - Collapse**

The coverage provided under this Additional Coverage - Collapse applies only to an abrupt collapse as described and limited in **D.1.** through **D.7.**

**1.**  For the purpose of this Additional Coverage - Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**2.**  We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

    **a.**  Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

    **b.**  Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

    **c.**  Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

    **d.**  Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

        **(1)**  A cause of loss listed in **2.a.** or **2.b.**;

        **(2)**  One or more of the "specified causes of loss";

        **(3)**  Breakage of building glass;

        **(4)**  Weight of people or personal property; or

        **(5)**  Weight of rain that collects on a roof.

**3.** This **Additional Coverage - Collapse** does not apply to:

   **a.** A building or any part of a building that is in danger of falling down or caving in;

   **b.** A part of a building that is standing, even if it has separated from another part of the building; or

   **c.** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**4.** With respect to the following property:

   **a.** Outdoor radio or television antennas (including satellite dishes);

   **b.** Awnings, gutters and downspouts;

   **c.** Yard fixtures;

   **d.** Outdoor swimming pools;

   **e.** Fences;

   **f.** Piers, wharves and docks;

   **g.** Beach or diving platforms or appurtenances;

   **h.** Retaining walls; and

   **i.** Walks, roadways and other paved surfaces;

If an abrupt collapse is caused by a cause of loss listed in **2.a.** through **2.d.**, we will pay for loss or damage to that property only if:

   **(1)** Such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form; and

   **(2)** The property is Covered Property under this Coverage Form.

**5.** If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

   **a.** The collapse of personal property was caused by a cause of loss listed in **2.a.** through **2.d.**;

   **b.** The personal property which collapses is inside a building; and

   **c.** The property which collapses is not of a kind listed in **4.**, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **5.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**6.** This Additional Coverage - Collapse does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**7.** This Additional Coverage - Collapse will not increase the Limits of Insurance provided in this Coverage Part.

**8.** The term Covered Cause of Loss includes the Additional Coverage - Collapse as described and limited in **D.1.** through **D.7.**

**E. Additional Coverage - Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

**1.** The coverage described in **E.2.** and **E.6.** only applies when the "fungus", wet or dry rot or bacteria is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

   **a.** A "specified cause of loss" other than fire or lightning; or

   **b.** Flood, if the Flood Coverage Endorsement applies to the affected premises.

**2.** We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

   **a.** Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

   **b.** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

    **c.**  The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

**3.**  The coverage described under **E.2.** of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continues to be present or active, or recurs, in a later policy period.

**4.**  The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

    If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

**5.**  The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph **F.2.** (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes Of Loss Form or under the Additional Coverage - Collapse.

**6.**  The following, **6.a.** or **6.b.,** applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense Coverage Form.

    **a.**  If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

    **b.**  If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**F. Additional Coverage Extensions**

  **1. Property In Transit**

    **a.**  This Extension applies only to your Business Personal Property to which this form applies.

    **b.**  We will cover your Business Personal Property and property for which you are liable while it is in transit. Such property is covered while it is:

        **(1)**  In, on, connected to or being towed by a vehicle you own, operate or lease; or

        **(2)**  In transit in the custody of carriers for hire.

    **c.**  For purposes of this Extension, Paragraph **2.** Property Not Covered of section **A.1.b.** Your Business Personal Property of the Building and Personal Property Coverage Form is amended as follows:

        **(1)**  Paragraph **i.** is deleted in its entirety;

        **(2)**  The following items are added:

            **(a)**  Shipments covered by Ocean Marine Insurance; and

            **(b)**  Exports.

    **d.**  The following coverages have their own Transit sub-limits in this form and, therefore, are not subject to this Extension.

        **(1)**  Accounts Receivable

        **(2)**  Fine Arts

        **(3)**  Valuable Papers

    **e.**  The most we will pay under this Extension of coverage for any one "occurrence" is $500,000. This limit also applies to Business Income and Extra Expense coverage, but not to exceed a combined sum of $500,000 in a single "occurrence".

**2.**  **Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

**3.**  **Glass**

    **a.**  We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

    **b.**  We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

This Coverage Extension, **F.3.,** does not increase the Limit of Insurance.

**G.**  **Definitions**

**1.**  "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.**  "Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

    **a.**  Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

        **(1)**  The cost of filling sinkholes; or

        **(2)**  Sinking or collapse of land into man-made underground cavities.

    **b.**  Falling objects does not include loss or damage to:

        **(1)**  Personal property in the open; or

        **(2)**  The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

    **c.**  Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam.

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

**B. CONTROL OF PROPERTY**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**C. INSURANCE UNDER TWO OR MORE COVERAGES**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**D. LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

**1.** There has been full compliance with all of the terms of this Coverage Part; and

**2.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**E. LIBERALIZATION**

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

**F. NO BENEFIT TO BAILEE**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**G. OTHER INSURANCE**

**1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**2.** If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**H. POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

**1.** We cover loss or damage commencing:

    **a.** During the policy period shown in the Declarations; and

    **b.** Within the coverage territory.

**2.** The coverage territory is:

    **a.** The United States of America (including its territories and possessions);

    **b.** Puerto Rico; and

    **c.** Canada.

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

   a. Someone insured by this insurance;

   b. A business firm:

      (1) Owned or controlled by you; or

      (2) That owns or controls you; or

   c. Your tenant.

This will not restrict your insurance.

     Copyright, ISO Commercial Risk Services, Inc.,  1983, 1987     **CP 00 90 07 88**   □

COMMERCIAL PROPERTY
CP 01 33 05 18

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**A.** If this policy covers the interest of the owner of any of the following types of buildings or structures:

**1.** Residential, except owner-occupied single-family or owner-occupied two-family buildings or structures;

**2.** Commercial; or

**3.** Industrial;

the following provision is added:

Before payment to you for loss or damage to the above buildings or structures caused by or resulting from fire, we will:

**(1)** Deduct from your payment the claim of any tax district that issues a certificate of lien in accordance with the Insurance Law; and

**(2)** Pay directly to the tax district the amount of the claim.

When we pay that claim, we will have no obligation to pay the amount of that claim to you. Our payment of that claim within 30 days of our receipt of the certificate of lien will be a conclusive presumption that the claim was valid and properly paid.

**B.** The following is added with respect to any Condition of this Coverage Part which requires you to notify us of loss or to notify us of an accident, claim or "suit":

**1.** Notice given by or on your behalf; or

**2.** Written notice by or on behalf of any claimant;

to any of our agents in New York State, which adequately identifies you, will be the same as notice to us.

**C. Legal Action Against Us**

**1.** The **Legal Action Against Us** Loss Condition in the Legal Liability Coverage Form is replaced by the following:

No person or organization has a right under this Coverage Form:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from you; or

**b.** To sue us on this Coverage Form unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against you; but we will not be liable for damages that are not payable under the terms of this Coverage Form or that are in excess of the Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, you and the claimant or the claimant's legal representative.

**2.** Paragraph **b.** of Additional Condition **H.5. Legal Action Against Us** in the Mortgageholders Errors And Omissions Coverage Form is replaced by the following:

**b.** No person or organization has a right under Coverages **C** and **D**:

**(1)** To join us as a party or otherwise bring us into a "suit" asking for damages from you; or

**(2)** To sue us on this Coverage Form unless all of its terms have been fully complied with.

© Insurance Services Office, Inc., 2017

A person or organization may sue us to recover on an agreed settlement or on a final judgment against you; but we will not be liable for damages that are not payable under the terms of this Coverage Form or that are in excess of the Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, you and the claimant or the claimant's legal representative.

**D.** The **Examination Of Your Books And Records** Common Policy Condition is replaced by the following:

**Examination Of Your Books And Records**

**1.** Except as provided in **2.** below, we may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**2.** We will conduct an audit to determine the final premium due or to be refunded, for coverage for which an advance or deposit premium was paid based on estimated exposure. But the audit may be waived if:

**a.** The total annual premium attributable to the auditable exposure base is not reasonably expected to exceed $1,500; or

**b.** The policy requires notification to the insurer with the specific identification of any additional exposure units (e.g., buildings) for which coverage is requested.

If the audit is not waived, it must be completed within 180 days after:

**a.** The expiration date of the policy; or

**b.** The anniversary date, if this is a continuous policy or a policy written for a term longer than one year.

**E.** The following sentence is deleted from Paragraph **A.** in the Legal Liability Coverage Form:

We will have the right and duty to defend any "suit" seeking those damages.

The following sentence is added to Paragraph **A.** in the Legal Liability Coverage Form:

We will have the right and duty to defend any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent.

**F.** The following sentence is deleted from Paragraph **A.3.** in the Mortgageholders Errors And Omissions Coverage Form:

We will have the right and duty to defend any "suit" seeking those damages.

The following is added to Paragraph **A.3.** in the Mortgageholders Errors And Omissions Coverage Form:

We will have the right and duty to defend any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent.

**G.** The following Condition is added to Paragraph **D.** of the Legal Liability Coverage Form and Paragraph **F.4.** of the Mortgageholders Errors And Omissions Coverage Form:

**Transfer Of Duties When A Limit Of Insurance Is Used Up**

**1.** If we conclude that, based on claims or "suits" which have been reported to us and to which this insurance may apply, a Limit of Insurance is likely to be used up in the payment of judgments or settlements, we will notify the first Named Insured, in writing, to that effect.

**2.** When the Limit of Insurance has actually been used up in the payment of judgments or settlements:

**a.** We will notify the first Named Insured, in writing, as soon as practicable, that:

**(1)** Such a limit has actually been used up; and

**(2)** Our duty to defend "suits" seeking damages subject to that limit has also ended.

**b.** We will initiate, and cooperate in, the transfer of control, to any appropriate insured, of all claims and "suits" seeking damages which are subject to that limit and which are reported to us before that limit is used up. That insured must cooperate in the transfer of control of said claims and "suits".

We agree to take such steps, as we deem appropriate, to avoid a default in, or continue the defense of, such "suits" until such transfer is completed, provided the appropriate insured is cooperating in completing such transfer.

We will take no action whatsoever with respect to any claim or "suit" seeking damages that would have been subject to that limit, had it not been used up, if the claim or "suit" is reported to us after that limit of insurance has been used up.

   c. The first Named Insured, and any other insured involved in a "suit" seeking damages subject to that limit, must arrange for the defense of such "suit" within such time period as agreed to between the appropriate insured and us. Absent any such agreement, arrangements for the defense of such "suit" must be made as soon as practicable.

3. The first Named Insured will reimburse us for expenses we incur in taking those steps we deem appropriate in accordance with Paragraph **2.b.** above.

   The duty of the first Named Insured to reimburse us will begin on:

   a. The date on which the applicable limit of insurance is used up, if we sent notice in accordance with Paragraph **1.** above; or

   b. The date on which we sent notice in accordance with Paragraph **2.a.** above, if we did not send notice in accordance with Paragraph **1.** above.

4. The exhaustion of any limit of insurance by the payments of judgments or settlements, and the resulting end of our duty to defend, will not be affected by our failure to comply with any of the provisions of this Condition.

H. Except as provided in **I.** below, the **Appraisal** Condition is replaced by the following:

   **Appraisal**

   1. If we and you disagree on the value of the property, the extent of the loss or damage or the amount of the loss or damage, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand.

   2. If we or you fail to proceed with the appraisal of the covered loss after a written demand is made by either party, then either party may apply to a court having jurisdiction for an order directing the party that failed to proceed with the appraisal to comply with the demand for the appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such order.

   3. The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property, the extent of the loss or damage and the amount of the loss or damage. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

   4. Each party will:

      a. Pay its chosen appraiser; and

      b. Bear the other expenses of the appraisal and umpire equally.

   If there is an appraisal, we will still retain our right to deny the claim.

I. The **Appraisal** Condition in:

   1. Business Income (And Extra Expense) Coverage Form **CP 00 30;** and

   2. Business Income (Without Extra Expense) Coverage Form **CP 00 32;**

   is replaced by the following:

   **Appraisal**

   1. If we and you disagree on the amount of Net Income and operating expense, the extent of the loss or damage or the amount of the loss or damage, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand.

   2. If we or you fail to proceed with the appraisal of the covered loss after a written demand is made by either party, then either party may apply to a court having jurisdiction for an order directing the party that failed to proceed with the appraisal to comply with the demand for the appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such order.

   3. The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense, the extent of the loss or damage and the amount of the loss or damage. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

**4.** Each party will:

    **a.** Pay its chosen appraiser; and

    **b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**J.** The following provision is added to the Commercial Property Coverage Part:

**Estimation Of Claims**

Upon request, we will furnish you or your representative with a written estimate of damages to real property specifying all deductions, provided such an estimate has been prepared by us or has been prepared on our behalf for our own purposes. This estimate will be provided within 30 days after your request or its preparation, whichever is later.

**K.** The following provision is added to the Legal Liability Coverage Form and supersedes any provision to the contrary:

Failure to give prompt notice to us, as required under this Coverage Form, shall not invalidate any claim made by you or any other claimant, unless the failure to provide such timely notice has prejudiced us. However, no claim made by you or any other claimant will be invalidated if it shall be shown not to have been reasonably possible to give such timely notice and that notice was given as soon as was reasonably possible thereafter.

© Insurance Services Office, Inc., 2017

**COMMERCIAL PROPERTY**
**CP 01 78 08 08**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK – EXCLUSION OF LOSS
# DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other micro-organism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part.

**C.** The terms of the exclusion in Paragraph **B.,** or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part.

**COMMERCIAL PROPERTY**
**CP 12 11 10 00**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BURGLARY AND ROBBERY PROTECTIVE SAFEGUARDS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**SCHEDULE\***

| Premises<br>No. | Building<br>No. | Protective Safeguards<br>Symbols Applicable |
|---|---|---|
| \*Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations. | | |

**A.** The following is added to the **Commercial Property** Conditions:

    **BURGLARY AND ROBBERY PROTECTIVE SAFEGUARDS**

    **1.** As a condition of this insurance, you are required to maintain the protective devices and/or services listed in the Schedule above.

    **2.** The protective safeguard(s) to which this endorsement applies are identified by the following symbols:

        **a.** "BR-1" Automatic Burglary Alarm, protecting the entire building, that signals to:

            **(1)** An outside central station; or

            **(2)** A police station.

        **b.** "BR-2" Automatic Burglary Alarm, protecting the entire building, that has a loud sounding gong or siren on the outside of the building.

        **c.** "BR-3" Security Service, with a recording system or watch clock, making hourly rounds covering the entire building, when the premises are not in actual operation.

        **d.** "BR-4" The protective safeguard described in the Schedule.

**B.** The following is added to the **Exclusions** section of the Causes Of Loss  Special Form:

    **BURGLARY AND ROBBERY PROTECTIVE SAFEGUARDS**

    We will not pay for loss or damage caused by or resulting from theft if, prior to the theft, you:

    **1.** Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or

    **2.** Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.

**COMMERCIAL PROPERTY**
**CP 12 18 06 07**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

> BUILDING AND PERSONAL PROPERTY COVERAGE FORM
> BUILDERS' RISK COVERAGE FORM
> CONDOMINIUM ASSOCIATION COVERAGE FORM
> CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
> STANDARD PROPERTY POLICY

**SCHEDULE**

| Premises Number:<br>ALL | | Building Number:<br>ALL | | Applicable Clause<br>(Enter C., D., E., or F.):  C | |
|---|---|---|---|---|---|
| **Description Of Property:**  Leased Equipment<br>**Loss Payee Name:**  De Lage Landen<br>**Loss Payee Address:**  PO Box 41602<br>Philadelphia PA 19101 | | | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | | |

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99,** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Loss Condition, as indicated in the Declarations or in the Schedule:

**C. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**D. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Part will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy**.**

© ISO Properties, Inc., 2007   **CP 12 18 06 07**

**E. Contract Of Sale Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   a. Adjust losses with you; and

   b. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

3. The following is added to the **Other Insurance** Condition:

   For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**F. Building Owner Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

2. We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

3. We will adjust losses to tenants' improvements and betterments with you, unless the lease provides otherwise.

COMMERCIAL PROPERTY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TENTATIVE RATE

The rates used in the development of the premium for the Commercial Property Coverage Part are tentative. We will adjust the premium effective from the inception date of this Coverage Part once the rates are promulgated. If this is a renewal of a policy previously issued by us, we will adjust the premium effective from the renewal date of this Coverage Part once the rates are promulgated.

**COMMERCIAL PROPERTY**

**POLICY NUMBER:**                    **ENDORSEMENT NUMBER:**

**ISSUED TO:**

**BY:**

**EFFECTIVE DATE OF COVERAGE:**

(12:01 A.M. Standard time at your mailing address shown
in the Declarations)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – FUNGUS,
# WET ROT AND DRY ROT

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**A.**  In the Causes Of Loss – Basic Form, Causes Of Loss – Broad Form, and Causes Of Loss – Special Form, the exclusion titled "Fungus", Wet Rot, Dry Rot And Bacteria and the Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria are deleted. Under these forms, the following exclusion is added:

We will not pay for loss or damage caused by or resulting from "fungus", wet rot or dry rot. However, this exclusion does not apply when "fungus", wet rot or dry rot results from a Covered Cause of Loss.

**B.**  In the Building And Personal Property Coverage Form and the Condominium Association Coverage Form, under the Additional Coverage – Increased Cost Of Construction, Paragraph **A.4.e.(5)** is replaced by the following:

Under this Additional Coverage, we will not pay for:

**1.**  The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants"; or

**2.**  Any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

**C.**  Paragraph **D.** of Ordinance Or Law Coverage Endorsement is replaced by the following:

We will not pay under Coverage **A, B** or **C** of this endorsement for:

**1.**  Enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants"; or

**2.**  The costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

**COMMERCIAL PROPERTY**
**SP 110 01 17**

**POLICY NUMBER:** 21-31120731-36          **ENDORSEMENT NUMBER:**

**ISSUED TO:** Michael Cetta, Inc. Sparks Steak House

**BY:** Admiral Indemnity Company

**EFFECTIVE DATE OF COVERAGE:** 06/26/2019

(12:01 A.M. Standard time at your mailing address shown in the Declarations)

**THIS ENDORSEMENT CHANGES THIS POLICY.  PLEASE READ IT CAREFULLY.**

# MULTIPLE DEDUCTIBLE FORM

This endorsement modifies insurance provided under the following:

CAUSES OF LOSS - SPECIAL FORM
BUILDING AND PERSONAL PROPERTY COVERAGE FORM
BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM

*NOTE: IF ONE "OCCURRENCE" RESULTS IN LOSS OR DAMAGE AT MORE THAN ONE LOCATION, THE APPLICABLE DEDUCTIBLE(S) SHOWN BELOW WILL APPLY SEPARATELY TO LOSS OR DAMAGE AT EACH LOCATION THAT HAS SUSTAINED LOSS OR DAMAGE.*

## DEDUCTIBLES

| LOCATION NUMBER | WATER DAMAGE | | ALL OTHER PERILS (except where no deductible applies) |
| --- | --- | --- | --- |
| | INTERIOR WATER DAMAGE (No Exterior Damage) *** | ALL OTHER WATER DAMAGE | |
| 1 | $10,000 | $5,000 | $5,000 |

\*\*\* Loss to the interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet or ice, when the building or structure has NOT first sustained damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet or ice enters.

COMMERCIAL PROPERTY
SP 157RNY 01 18

**POLICY NUMBER:** 21-31120731-36          **ENDORSEMENT NUMBER:**

**ISSUED TO:** Michael Cetta, Inc.  Sparks Steak House

**BY:** Admiral Indemnity Company

**EFFECTIVE DATE OF COVERAGE:** 06/26/2019
(12:01 A.M. Standard time at your mailing
address shown in the Declarations.)

**THIS ENDORSEMENT CHANGES THIS POLICY.  PLEASE READ IT CAREFULLY.**

# EQUIPMENT BREAKDOWN ENHANCEMENT ENDORSEMENT - NEW YORK

As respects this **Equipment Breakdown Enhancement Endorsement**, this endorsement changes coverage provided by the following:

 BUILDING AND PERSONAL PROPERTY COVERAGE FORM
 CAUSES OF LOSS - SPECIAL FORM

Read the entire endorsement carefully to determine rights, duties and what is and is not covered.

### SCHEDULE

| LOCATION No. | BUILDING No. | ADDRESS |
|---|---|---|
| 1 | 1 | 210-220 E 46th St, New York, NY |

The following changes apply to the locations included in the **SCHEDULE** above:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

**A. Coverage**

 **4. Additional Coverages**

 With respect to this endorsement only, the following **Additional Coverages** are added as a part of and not in addition to the limit per loss:

 **w. Pollutant Clean Up and Removal**

 We will pay for the Pollutant Clean Up and Removal for loss resulting from an "equipment breakdown". The most we will pay for the Pollutant Clean Up and Removal is $250,000 unless another limit is provided by an endorsement to the property form for which this endorsement is attached.  In that case, whichever limit is greater will apply.

 This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

 **x. Expediting Expenses**

 We will pay for the expediting expense loss resulting from an "equipment breakdown" with respect to your damaged Covered Property. We will pay the "reasonable extra cost" to:

 **(1)** Make temporary repairs;

 **(2)** Expedite permanent repairs; and

 **(3)** Expedite permanent replacement

"Reasonable extra cost" shall mean the extra cost of temporary repair and of expediting the repair of such damaged equipment of the insured, including overtime and the extra cost of express or other rapid means of transportation.

**y.  Refrigerant Contamination**

We will pay the loss from contamination by refrigerant used in refrigerating, cooling or humidity control equipment at the described premises as a result of an "equipment breakdown".

The most we will pay for Refrigerant Contamination is $250,000 unless another limit is provided by an endorsement to the property form for which this endorsement is attached.  In that case, whichever limit is greater will apply.

**z.  Spoilage**

We will pay for loss of "perishable goods" due to spoilage resulting from lack of power, light, heat, steam or refrigeration caused by an "equipment breakdown" to Covered Property.

However, we will not pay for any loss, damage, cost or expense directly caused by, contributed to by, resulting from or arising out of the following causes of loss:

Fire, lightning, combustion explosion, windstorm or hail, weight of snow, ice or sleet, freezing, falling objects, smoke, aircraft or vehicles, riot or civil commotion, vandalism, sinkhole collapse, volcanic action, leakage from fire extinguishing equipment, water, water damage, earth movement or flood.

The most we will pay for loss for Spoilage is $250,000 unless another limit is provided by an endorsement to the property form for which this endorsement is attached.  In that case, whichever limit is greater will apply.

**aa.  Temperature Fluctuation**

We will pay for loss of "perishable goods" only caused by or resulting from any condition or event to Covered Property that can be resolved by calibrating, resetting, tightening, adjusting or cleaning.

However, we will not pay for loss of "perishable goods" as a result of resetting the power supply to the Covered Property containing the "perishable goods".

The most we will pay for this Temperature Fluctuation is $5,000, including any insurance provided for Business Income or Extra Expense.

**bb.  CFC Refrigerants**

We will pay for the additional cost to repair or replace Covered Property because of the use or presence of a refrigerant containing CFC (chlorofluorocarbon) substances caused by an "equipment breakdown".

Additional costs mean those in excess of what would have been required to repair or replace covered property, had no CFC refrigerant been involved.  We also pay for additional loss as described under the Spoilage or Loss of Income Coverages provided by this endorsement, caused by the presence of a refrigerant containing CFC substances.

We pay no more than the least of the following:

**(1)**  The cost to repair the damaged property and replace any lost CFC refrigerant;

**(2)**  The cost to repair the damaged property, retrofit the system to accept a non-CFC refrigerant, and charge the system with a non-CFC refrigerant; or

**(3)**  The cost to replace the system with one using a non-CFC refrigerant.

**cc.  Computer Equipment**

We will pay for loss or damage to your "computer equipment" caused by an "equipment breakdown".

**dd.  Unauthorized Instruction**

We will pay for loss or damage to your "computer equipment" caused by an "unauthorized instruction" which results in an "equipment breakdown".

"Unauthorized instruction" means a virus, harmful code or similar instruction introduced into or enacted on a computer system or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation.

**ee.  Service Interruption**

Any insurance provided for Business Income, Extra Expense, Spoilage or Electronic Data is extended to apply to your loss, damage or expense caused by an "equipment breakdown" to equipment that is owned by a utility, landlord or other supplier with whom you have a contract to supply you with any of the following services: electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water, steam, internet access, telecommunications services, wide area networks,

data transmission or "cloud computing". The equipment must meet the definition of "equipment breakdown" except that it is not Covered Property.

**ff.  Risk Improvement**

If Covered Property suffers direct physical loss or damage due to an "equipment breakdown", we will pay for the insured to improve the "power quality" of the electrical system or equipment at the loss location where the "equipment breakdown" occurred. "Power quality" means the conditions that allow electrical systems or equipment to operate as intended by limiting voltage fluctuations and other power influences that would adversely affect the operational performance and/or reduce the reliability, or the life-span of the electrical system.

We will pay the reasonable extra cost to improve "power quality" for the following electrical systems and/or equipment improvements:

**(1)**  Installation of surge protection devices (SPDs) which are installed at the loss location's line disconnect, load disconnect, or on specific pieces of equipment and that are certified by Underwriter Laboratories (UL) or has an equivalent certification.

However, SPDs do not include any SPDs which are cord-connected surge strips, direct plug-in SPDs or receptacle SPDs;

**(2)**  An upgrade and/or replacement of electrical panels, switchgear and/or circuit breakers; or

**(3)**  Electrical wiring and wiring improvements which include installation of flexible conduit, junction boxes and/or ground wiring.

We will not pay more than 10%, to a maximum limit of $10,000, of the loss amount paid. An invoice for implementation of this Additional Coverage must be sent to us within 180 days after the payment of the loss is received.

**F.  Additional Conditions**

With respect to this endorsement only, the following **Additional Conditions** are added:

**3.  Suspension**

Whenever Covered Property is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss to that Covered Property for the perils covered by this endorsement.  Coverage can be suspended and possibly reinstated by delivering or mailing a written notice of suspension / coverage reinstatement to:

**(a)**  Your last known address; or

**(b)**  The address where the property is located.

If we suspend your insurance, you will get a pro rata refund of premium. But the suspension will be effective even if we have not yet made or offered a refund.

**4.  Jurisdictional Inspections**

If any Covered Property under this endorsement requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf.  We do not warrant that conditions are safe or healthful.

**5.  Environmental, Safety and Efficiency Improvements**

If Covered Property requires replacement due to an "equipment breakdown", we will pay your additional cost to replace with equipment that is better for the environment, safer, or more energy efficient than the equipment being replaced.

However, we will not pay more than 150% of what the cost would have been to repair or replace with like kind and quality.  This Condition does not apply to any property to which Actual Cash Value applies.

**6.  Green Environmental and Efficiency Improvements**

If Covered Property requires repair or replacement due to an "equipment breakdown", we will pay;

**(a)**  The lesser of the reasonable and necessary additional cost incurred by the insured to repair or replace physically damaged Covered Property with equipment of like kind and quality which qualifies as "green". Like kind and quality includes similar size and capacity.

**(b)**  The additional reasonable and necessary fees incurred by the insured for an accredited professional certified by a "green authority" to participate in the repair or replacement of physically damaged Covered Property as "green".

**(c)**  The additional reasonable and necessary cost incurred by the insured for certification or recertification of the repaired or replaced Covered Property as "green".

**(d)** The additional reasonable and necessary cost incurred by the insured for "green" in the removal, disposal or recycling of damaged Covered Property.

**(e)** The business interruption (if covered within the Policy to which this Equipment Breakdown Enhancement Endorsement is attached) loss during the additional time required for repair or replacement of Covered Property, consistent with "green", in the coverages above.

We will not pay more than 150%, to a maximum limit of $100,000, of what the cost would have been to repair or replace with equipment of like kind and quality inclusive of fees, costs, and any business interruption loss incurred as stated above.

**Green Environmental and Efficiency Improvements** does not cover any of the following:

**(a)** Covered Property does not include stock, raw materials, finished goods, "production machinery", merchandise, electronic data processing equipment not used in the functional support of the real property, process water, molds and dies, property in the open, property of others for which the insured is legally liable, or personal property of others.

**(b)** Any loss adjusted on any valuation basis other than a repair or replacement basis as per the Valuation section of this policy.

**(c)** Any loss covered under any other section of this policy.

**(d)** Any cost incurred due to any law or ordinance with which the insured was legally obligated to comply prior to the time of the "equipment breakdown".

## H.  Definitions

With respect to this endorsement only, the following **Definitions** are added:

**5.** **"Equipment breakdown"** as used herein means:

    **a.** Physical loss or damage both originating within:

        **(1)** Boilers, fired or unfired pressure vessels, vacuum vessels, and pressure piping, all normally subject to vacuum or internal pressure other than static pressure of contents, excluding:

            **(a)** waste disposal piping;

            **(b)** any piping forming part of a fire protective system;

            **(c)** furnaces; and

            **(d)** any water piping other than:

                **(i)** boiler feed water piping between the feed pump and the boiler;

                **(ii)** boiler condensate return piping; or

                **(iii)** water piping forming part of a refrigerating or air conditioning system used for cooling, humidifying or space heating purposes.

        **(2)** All mechanical, electrical, fiber optic equipment or "electronic equipment"; and

    **b.** Caused by, resulting from, or consisting of:

        **(1)** Mechanical breakdown;

        **(2)** Electrical or electronic breakdown and "electronic equipment deficiency"; or

        **(3)** Rupture, bursting, bulging, implosion, or steam explosion.

However, "equipment breakdown" will not mean:

    **a.** Physical loss or damage caused by or resulting from any of the following; however if loss or damage not otherwise excluded results, then we will pay for such resulting damage:

        **(1)** Wear and Tear;

        **(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect, or any other quality in property that causes it to damage or destroy itself;

        **(3)** Smog;

        **(4)** Settling, cracking, shrinking or expansion;

        **(5)** Nesting or infestation, or discharge or release of waste products or secretions, by birds, rodents or other animals;

        **(6)** Any accident, loss, damage, cost, claim, or expense, whether preventative, remedial, or otherwise, directly or indirectly arising out of or relating to the recognition, interpretation, calculation, comparison, differentiation, sequencing, or processing of data by any computer system including any hardware, programs or software;

**(7)** Scratching and marring;

**b.** Loss, damage, cost or expense directly caused by, contributed to by, resulting from or arising out of the following causes of loss:

Fire, lightning, combustion explosion, windstorm or hail, weight of snow, ice or sleet, freezing, falling objects, smoke, aircraft or vehicles, riot or civil commotion, vandalism, sinkhole collapse, volcanic action, leakage from fire extinguishing equipment, water, water damage, earth movement or flood.

**6.** "Electronic equipment" means devices which operate using many small electrical parts such as, but not limited to, microchips, transistors or circuits.

**7.** "Electronic equipment deficiency" means the quality or condition inside of "electronic equipment" which renders this equipment unexpectedly inoperable and which is operable again once a piece of "electronic equipment" has been replaced.

However, "electronic equipment deficiency" will not include replacement of "electronic equipment" for any condition that would have been resolved without replacement of the "electronic equipment" including, but not limited to, "computer equipment" maintenance or the reinstallation or incompatibility of software.

**8.** "Perishable goods" means personal property maintained under controlled conditions for its preservation and susceptible to loss or damage if the controlled conditions change.

**9.** "Green" means products, materials, methods and processes certified by a "green authority" that conserve natural resources, reduce energy or water consumption, avoid toxic or other polluting emissions or otherwise minimize environmental impact.

**10.** "Green Authority" means an authority on "green" buildings, products, materials, methods or processes certified and accepted by Leadership in Energy and Environmental Design (LEED®), "green" Building Initiative Green Globes®, Energy Star Rating System or any other recognized "green" rating system.

**11.** "Production machinery" means any machine which processes, forms, shapes, or transports raw materials, materials in process, waste materials or finished products.

**12.** "Cloud computing" means on-demand network access to a shared pool of computing resources via networks, servers, storage, applications and services provided by an organization with whom you have a contract with using the following service models: Software as a Service (SaaS), Platform as a Service (PaaS), and Infrastructure as a Service (IaaS) on the following deployment models: public cloud, community cloud, hybrid cloud and private clouds.

**13.** "Computer equipment" means Covered Property that is electronic computer or other data processing equipment, including peripherals used in conjunction with such equipment, and electronic media and records.

## CAUSES OF LOSS - SPECIAL FORM

**A. Covered Causes of Loss**

With respect to this endorsement only, **Covered Causes of Loss** also means "equipment breakdown".

**B. Exclusions**

**1.** With respect to this endorsement only, all **Exclusions** apply except **B.2.c.(5)** and **B.2.d.**;

**2.** With respect to this endorsement only, **Exclusion B.2.a.** is deleted in its entirety and replaced by the following:

**a.** Artificially generated electrical, magnetic or electromagnetic energy that disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purposes of this exclusion, magnetic or electromagnetic energy includes, but is not limited to:

**(a)** Electrical current, including arcing;

**(b)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(c)** Pulse of electromagnetic energy; or

**(d)** Electromagnetic waves or microwaves.

However, if damage results causing an "equipment breakdown", we will pay for the loss or damage caused by that "equipment breakdown".

**C. Limitations**

With respect to this endorsement only, all **Limitations** apply except **C.1.a.** and **C.1.b.**

**G.  Definitions**

With respect to this endorsement only, the following is added to the "Specified Causes of Loss" definition: "Specified Causes of Loss" also means "equipment breakdown".

All other terms and conditions of this policy remain unchanged.

COMMERCIAL PROPERTY
SP 301 01 14

**POLICY NUMBER:**    21-31120731-36                    **ENDORSEMENT NUMBER:**

**ISSUED TO:**    Michael Cetta, Inc. Sparks Steak House

**BY:**    Admiral Indemnity Company

**EFFECTIVE DATE OF COVERAGE:**    06/26/2019
(12:01 A.M. Standard time at your mailing
address shown in the Declarations)

**THIS ENDORSEMENT CHANGES THIS POLICY.  PLEASE READ IT CAREFULLY.**

# SCHEDULE OF INCREASED LIMITS

The limits of insurance for the following Additional Coverage(s) and Coverage Extension(s) within the form(s) to which this schedule attaches are revised and replaced by the following limits:

| PREM. NO | BLDG. NO. | COVERAGE | TOTAL LIMIT |
|----------|-----------|----------|-------------|
| 1 | | CSMR 00 10 - Spoilage Coverage | $100,000 |

**ONLY THOSE LIMITS SPECIFICALLY MENTIONED ABOVE ARE REVISED.
ALL OTHER LIMITS REMAIN UNCHANGED.**

COMMERCIAL PROPERTY
SP 314 01 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLOOD COVERAGE SCHEDULE

This endorsement provides supplementary information to be used with the following:

FLOOD COVERAGE ENDORSEMENT

**Inception Date Of Flood Coverage Endorsement** 06/26/2019.
**NOTE:** There is no coverage for a Flood that begins before or within 72 hours after this date. Refer to Section **D.5.a.** of the Endorsement for additional information.

Description Of Premises Or Location(s)

**SCHEDULE**

| LOCATION No. | BUILDING No. | ADDRESS | FLOOD DEDUCTIBLE * |
|---|---|---|---|
| 1 | 1 | 210-220 E 46th St aka 733 Third Avenue, New York, NY 10017-2903 | $ 25,000 |

\*   *IF ONE "OCCURRENCE" RESULTS IN LOSS OR DAMAGE AT MORE THAN ONE LOCATION, THE APPLICABLE DEDUCTIBLE WILL APPLY SEPARATELY TO LOSS OR DAMAGE AT EACH LOCATION THAT HAS SUSTAINED LOSS OR DAMAGE.*

**Description Of Personal Property In The Open, If Covered For Flood:**

| |
|---|
| **All Personal Property** |

**No-Coinsurance Option**   ☒

**Other Flood Insurance, if any (Identify insurer and policy number):**

| LOCATION No. | BUILDING No. | INSURER | POLICY NUMBER | EFFECTIVE DATE |
|---|---|---|---|---|
| | | | | |

**Underlying Insurance Waiver**    ☒
**NOTE:** Refer to Section **H.1.** of the Endorsement for an explanation of this option.

**Annual Aggregate Limit - Flood Coverage Endorsement:**    $   250,000
**NOTE:** Refer to the Limit of Insurance provisions in the Endorsement for an explanation.

Policy No.:      21-31120731 - 36

**Flood Limit of Insurance - Single Occurrence:**
Enter the Limit(s) in Section **A** and/or **B** of this Schedule.  Refer to the Limit of Insurance provisions in the Endorsement for an explanation.

**A.  Blanket Limit**      $   250,000

The above Blanket Limit applies to all Locations and Buildings listed in the Schedule above. If a separate Blanket Limit(s) applies at other Locations or Buildings, then a separate Schedule will be used to enter the Blanket Limit(s) for those Locations or Buildings.

Check applicable Covered Property/Coverage(s) for Blanket Limit (**NOTE**: Information required to complete this section, if not shown below, will be shown in the Declarations):

☐      Building

☐      Building Personal Property

☐      Business Income (and Extra Expense) Coverage Form (CP 00 30)

☐      Business Income (without Extra Expense) Coverage Form (CP 00 32)

☐      Extra Expense Coverage Form (CP 00 50)

☐      Other

The Blanket Limit shown above does not apply separately to the Locations, Buildings, Covered Property or Coverages listed. The Blanket Limit is the most we will pay for all loss or damage to the indicated Covered Property/Coverages at the Locations and Buildings listed, subject to all other applicable provisions of the Limit of Insurance section in the Flood Coverage Endorsement.

**B.  Separate Limits**
If a separate Limit of Insurance is entered in this section of the Schedule, **B.**, for a particular Covered Property/Coverage, that Covered Property/Coverage should NOT be included under a Blanket Limit.

| LOCATION No. | | BUILDING No. | |
|---|---|---|---|
| **COVERAGE** | | LIMIT OF INSURANCE | DEDUCTIBLE |
| Building | | | |
| Business Personal Property | | | |
| Business Income (and Extra Expense) Coverage Form (CP 00 30) | | | |
| Business Income (without Extra Expense) Coverage Form (CP 00 32) | | | |
| Extra Expense Coverage Form (CP 00 50) | | | |
| Other | | | |

COMMERCIAL PROPERTY
SP 317 01 18

**POLICY NUMBER:** 21-31120731-36                    **ENDORSEMENT NUMBER:**

**ISSUED TO:** Michael Cetta, Inc.  Sparks Steak House

**BY:** Admiral Indemnity Company

**EFFECTIVE DATE OF COVERAGE:** 06/26/2019
                                (12:01 A.M. Standard time at your mailing address
                                shown in the Declarations)

## THIS ENDORSEMENT CHANGES THIS POLICY.  PLEASE READ IT CAREFULLY.

# FLOOD COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**A.** This endorsement applies solely to the Covered Property and Coverages for which a Flood Limit of Insurance is shown in the Flood Coverage Schedule or in the Declarations. This endorsement does not apply to any newly acquired or constructed property, unless such property is shown as Covered Property in the Flood Coverage Schedule.

**B.  Additional Covered Cause Of Loss**

The following is added to the Covered Causes Of Loss:

Flood, meaning a general and temporary condition of partial or complete inundation of normally dry land areas due to:

**1.** The overflow of inland or tidal waters;

**2.** The unusual or rapid accumulation or runoff of surface waters from any source; or

**3.** Mudslides or mudflows which are caused by flooding as defined in **B.2.** above. For the purpose of this Covered Cause Of Loss, a mudslide or mudflow involves a river of liquid and flowing mud on the surface of normally dry land areas as when earth is carried by a current of water and deposited along the path of the current.

All flooding in a continuous or protracted event will constitute a single flood.

**C.  Exclusions, Limitations And Related Provisions**

**1.** The Exclusions and Limitation(s) sections of the Causes Of Loss Form apply to coverage provided under this endorsement except as provided in **C.2.** and **C.3.** below.

**2.** To the extent that a part of the Water Exclusion conflicts with coverage provided under this endorsement, that part of the Water Exclusion does not apply.

**3.** To the extent that a tsunami causes the overflow of tidal waters, the exclusion of earthquake, in the Earth Movement Exclusion, does not apply.

**4.** The **Ordinance Or Law** Exclusion in this Coverage Part continues to apply with respect to any loss under this Coverage Part including any loss under this endorsement, unless Ordinance Or Law Coverage is added by endorsement.

**5.** The following exclusions and limitations are added and apply to coverage under this endorsement:

**a. (1)** We will not pay for any loss or damage caused by or resulting from any Flood that begins before or within 72 hours after the inception date of this endorsement. However, this limitation does not apply to a particular location if Flood coverage was in effect for that location for at least 72 hours immediately prior to the inception date of this endorsement, under a policy issued by us or by another insurer, and this policy replaces the previous policy without a lapse in coverage.

**(2)** If you request and we provide an increase in the stated Limit of Insurance for Flood during the term of this policy, with the exception of an increase at the time of renewal of the policy, the increase will not apply to loss or damage from any Flood that begins before or within 72 hours after your request was made.

**(3)** If the Flood is due to the overflow of inland or tidal waters, then the Flood is considered to begin when the water first overflows its banks.

**b.** We will not pay for loss or damage caused by or resulting from destabilization of land arising from the accumulation of water in subsurface land areas.

**c.** Under this Coverage Part, as set forth under Property Not Covered in the Coverage Form to which this endorsement is attached, land is not covered property, nor is the cost of excavations, grading, backfilling or filling. Therefore, coverage under this endorsement does not include the cost of restoring or remediating land due to the collapse or sinking of land caused by or resulting from Flood. However, coverage under this endorsement includes damage to the covered portions of the building and to covered personal property, caused by collapse or sinking of land along the shore of a body of water as the result of erosion or undermining caused by Flood.

**d.** Property Not Covered, in the Coverage Form to which this endorsement is attached, is amended and supplemented as follows with respect to Flood Coverage:

**(1)** Property Not Covered includes any building or other property that is not eligible for flood insurance pursuant to the provisions of the Coastal Barrier Resources Act, 16 U.S.C. 3501 *et seq.* and the Coastal Barrier Improvement Act of 1990, Pub. L. 101-591, 16 U.S.C. 3501 *et seq.*

**(2)** Property Not Covered includes boat houses and open structures, and any property in or on the foregoing, if the structure is located on or over a body of water.

**(3)** If bulkheads, pilings, piers, wharves, docks, or retaining walls that are not part of a building, have been removed from Property Not Covered and added as Covered Property by separate endorsement, this Flood Coverage Endorsement does not apply to such property.

**(4)** The following are removed from Property Not Covered and are therefore Covered Property:

**(a)** Foundations below the lowest basement floor or the subsurface of the ground; and

**(b)** Underground pipes, flues and drains.

**D. Additional Coverages And Coverage Extensions**

**1.** With respect to Flood Coverage under this endorsement, the Debris Removal Additional Coverage (and any additional limit for Debris Removal under a Limit Of Insurance clause or an endorsement) is not applicable and is replaced by the following:

**DEBRIS REMOVAL**

**a.** We will pay the reasonable cost to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from Flood. However, we will not pay to remove deposits of mud or earth from the grounds of the described premises.

**b.** We will also pay the reasonable cost to remove debris of Covered Property that has floated or been hurled off the described premises by Flood.

**c.** This coverage for Debris Removal, as set forth in **D.1.a.** and **D.1.b.** above, does not increase the applicable Limit of Insurance for Flood. Therefore, the most we will pay for the total of debris removal and loss or damage to Covered Property is the Limit of Insurance for Flood that applies to the Covered Property at the affected scheduled location or described premises covered under this endorsement.

**2.** With respect to any applicable Additional Coverages and Coverage Extensions in the Coverage Form to which this endorsement is attached, other than Debris Removal, addressed in **D.1.** above, amounts payable under such other provisions, as set forth therein, do not increase the Limit of Insurance for Flood.

**E. Coinsurance**

1. The **Coinsurance** Condition, if any, in the applicable Coverage Form applies to the coverage provided under this endorsement, unless the No-Coinsurance Option, in the Flood Coverage Schedule or in the Declarations, is specified as being applicable.

2. Various Coverage Extensions, in the Coverage Form to which this endorsement is attached, require coinsurance. If the No-Coinsurance Option applies, then the coinsurance requirement for such Coverage Extensions is eliminated.

**F. Limit Of Insurance**

1. **General Information**

   Flood Coverage may be written at a Limit of Insurance that is equal to or less than the Limit of Insurance which applies to other Covered Causes of Loss (e.g., Fire), and is reflected either on the Declarations Page or on a separate Location Schedule, under this Commercial Property Coverage Part.

   The Limit of Insurance for Flood is shown in the Flood Coverage Schedule.

2. **Application Of Limit And Aggregate**

   The Limit of Insurance for Flood is the most we will pay in a single occurrence of Flood for loss or damage caused by the Flood. If there is more than one Flood in a 12-month period (starting with the beginning of the present annual policy period), the most we will pay for the total of all loss or damage sustained during that period of time and caused by Flood is the amount that is identified as the Annual Aggregate for Flood as shown in the Flood Coverage Schedule or the Declarations.

   If the Limit of Insurance and the Annual Aggregate amount are the same, or if there is no amount stated as an Annual Aggregate, then the Limit of Insurance is the most we will pay for the total of all loss or damage that is caused by Flood in a 12-month period (starting with the beginning of the present annual policy period), even if there is more than one occurrence of Flood during that period of time. Thus, if the first Flood does not exhaust the applicable Limit of Insurance, then the balance of that Limit is available for a subsequent Flood(s).

   If a single occurrence of Flood begins during one annual policy period and ends during the following annual policy period, any Limit of Insurance or Annual Aggregate applicable to the following annual policy period will not apply to that Flood.

3. **Ensuing Loss**

   In the event of covered ensuing loss, for example, loss caused by Fire, Explosion and/or Sprinkler Leakage which results from the Flood, the most we will pay, for the total of all loss or damage caused by flood, fire, explosion and sprinkler leakage, is the Limit of Insurance applicable to Fire. We will not pay the sum of the Fire and Flood Limits.

4. **Business Income**

   If the Coverage Part to which this endorsement is attached includes coverage for both Property Damage and Business Interruption, the most we will pay for loss or damage resulting from Flood, regardless of whether the loss involves Property Damage alone or both Property Damage and Business Interruption, is the Limit of Insurance for Flood reflected on the Flood Coverage Schedule.

**G. Deductible**

1. The Deductible for coverage provided under this endorsement is the Deductible applicable to Flood as shown in the Flood Coverage Schedule or in the Declarations.

2. We will not pay that part of the loss that is attributable to any Deductible(s) in the National Flood Insurance Program policy.

3. If Flood results in another Covered Cause of Loss and if both Covered Causes of Loss cause loss or damage, then only the higher deductible applies (e.g., the Flood deductible or the Fire deductible).

**H. Other Insurance**

The **Other Insurance** Commercial Property Condition is replaced by the following with respect to the coverage provided under this endorsement:

1. If the loss is also covered under a National Flood Insurance Program (NFIP) policy, or if the property is eligible to be written under an NFIP policy but there is no such policy in effect, then we will pay only for the amount of loss in excess of the maximum limit that can be insured under that policy. This provision applies whether or not the maximum NFIP limit was obtained or maintained, and whether or not you can collect on

the NFIP policy. We will not, under any circumstances, pay more than the applicable Limit of Insurance for Flood as stated in the Flood Coverage Schedule or the Declarations of this Coverage Part.

However, this Provision **H.1.** does not apply under the following circumstances:

    **a.**  At the time of loss, the property is eligible to be written under an NFIP policy but such policy is not in effect due solely to ineligibility of the property at the time this Flood Coverage Endorsement was written; or

    **b.**  An NFIP policy is not in effect because we have agreed to write this Flood Coverage Endorsement without underlying NFIP coverage. There is such an agreement only if the Flood Coverage Schedule or the Declarations indicate that the Underlying Insurance Waiver applies.

**2.**  If there is other insurance covering the loss, other than that described in **H.1.** above, we will pay our share of the loss. Our share is the proportion that the applicable Limit of Insurance under this endorsement bears to the total of the applicable Limits of Insurance under all other such insurance. But we will not pay more than the applicable Limit of Insurance stated in the Flood Coverage Schedule or the Declarations of this Coverage Part.

Includes copyrighted material of Insurance Services Office, Inc. with its permission
**SP 317 01 18**

COMMERCIAL PROPERTY
SP 318 01 18

**POLICY NUMBER:** 21-31120731-36                    **ENDORSEMENT NUMBER:**

**ISSUED TO:**  Michael Cetta, Inc.  Sparks Steak House

**BY:**  Admiral Indemnity Company

**EFFECTIVE DATE OF COVERAGE:**  06/26/2019
(12:01 A.M. Standard time at your mailing address
shown in the Declarations)

**THIS ENDORSEMENT CHANGES THIS POLICY.  PLEASE READ IT CAREFULLY.**

# EARTHQUAKE & VOLCANIC ERUPTION ENDORSEMENT (SUB-LIMIT FORM)

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**A.**  This endorsement applies solely to the Covered Property and Coverages for which an Earthquake – Volcanic Eruption Limit of Insurance is shown in the Earthquake – Volcanic Eruption Coverage Schedule or in the Declarations.  This endorsement does not apply to any newly acquired or constructed property, unless such property is shown as Covered Property in the Earthquake – Volcanic Eruption Coverage Schedule.

**B.  Additional Covered Causes Of Loss**

   **1.**  The following are added to the Covered Causes of Loss:

   **a.**  Earthquake.

   **b.**  Volcanic Eruption, meaning the eruption, explosion or effusion of a volcano.

   **2.**  If the Earthquake – Volcanic Eruption Coverage Schedule or the Declarations indicate that this endorsement covers Earthquake-Sprinkler Leakage Only, then the Covered Causes of Loss in Paragraph **B.1.** of this endorsement do not apply, and the following apply instead:

   **a.**  Sprinkler Leakage resulting from Earthquake.

   **b.**  Sprinkler Leakage resulting from Volcanic Eruption.

   All Earthquake shocks or Volcanic Eruptions that occur within any 168-hour period will constitute a single occurrence. The expiration of this policy will not reduce the 168-hour period.

**C.  Exclusions, Limitations And Related Provisions**

   **1.**  The Exclusions and Limitation(s) sections of the Causes of Loss – Special Form, apply to coverage provided under this endorsement, except as provided in **C.2.** and **C.3.** below.

   **2.**  To the extent that the Earth Movement Exclusion might conflict with coverage provided under this endorsement, the Earth Movement Exclusion does not apply.

   **3.**  The exclusion of Collapse, in the Causes of Loss-Special Form, does not apply to collapse caused by Earthquake or Volcanic Eruption.

   **4.**  The Additional Coverage – Collapse, in the Causes of Loss – Broad Form and Causes of Loss – Special Form, does not apply to the coverage provided under this endorsement. This endorsement includes coverage for collapse caused by Earthquake or Volcanic Eruption.

5. We will not pay for loss or damage caused directly or indirectly by tidal wave or tsunami, even if caused by or resulting from an Earthquake or Volcanic Eruption.

6. We will not pay for loss or damage caused by or resulting from any Earthquake or Volcanic Eruption that begins before the inception of this insurance.

7. The Ordinance Or Law Exclusion in the Causes of Loss Form continues to apply with respect to any loss under this Coverage Part including any loss under this endorsement, unless Ordinance Or Law Coverage is added by endorsement.

8. We will not pay for loss of or damage to exterior masonry veneer (except stucco) on wood frame walls caused by or resulting from Earthquake or Volcanic Eruption. The value of such veneer will not be included in the value of Covered Property or the amount of loss when applying the Property Damage Deductible applicable to this endorsement.

   This limitation, **C.8.**, does not apply if:

   **a.** The Earthquake – Volcanic Eruption Coverage Schedule or the Declarations indicate that the "Including Masonry Veneer" option applies; or

   **b.** Less than 10% of the total outside wall area is faced with masonry veneer (excluding stucco).

9. Under this Coverage Part, as set forth under Property Not Covered in the Coverage Form to which this endorsement is attached, land is not covered property, nor is the cost of excavations, grading, backfilling or filling. Therefore, coverage under this endorsement does not include the cost of restoring or remediating land.

10. We will not pay for loss or damage caused by or resulting from any Earthquake which occurs due to man-made or other artificial causes.

11. Property Not Covered, in the Coverage Form to which this endorsement is attached, is amended and supplemented as follows with respect to Earthquake & Volcanic Eruption Coverage:

   **a.** The following are removed from Property Not Covered and are therefore Covered Property:

   **(1)** Foundations below the lowest basement floor or the subsurface of the ground; and

   **(2)** Underground pipes, flues and drains.

**D. No Coinsurance**

The Coinsurance Condition in this policy, if any, does not apply to the coverage provided under this endorsement.

Various Coverage Extensions, in the Coverage Form to which this endorsement is attached, may require coinsurance. The coinsurance requirement for such Coverage Extensions does not apply to the coverage provided under this endorsement.

**E. Limit Of Insurance**

   **1. General Information**

   The term Limit of Insurance means the Limit of Insurance applicable to Earthquake – Volcanic Eruption for the Covered Property or Coverage under which loss or damage is sustained.

   The Earthquake – Volcanic Eruption Coverage Schedule or the Declarations provide information on the Limit of Insurance applicable to Covered Property and Coverages for Earthquake – Volcanic Eruption.

   **2. Annual Aggregate Limit**

   The Limit of Insurance for Earthquake – Volcanic Eruption is an annual aggregate limit and as such is the most we will pay for the total of all loss or damage that is caused by Earthquake or Volcanic Eruption in a 12-month period (starting with the beginning of the present annual policy period), even if there is more than one Earthquake or Volcanic Eruption during that period of time. Thus, if the first Earthquake or Volcanic Eruption does not exhaust the Limit of Insurance, then the balance of that Limit is available for a subsequent Earthquake(s) or Volcanic Eruption(s).

   If a single Earthquake or Volcanic Eruption (as defined in Section **B.** of this endorsement) begins during one annual policy period and ends during the following annual policy period, any Limit of Insurance applicable to the following annual policy period will not apply to such Earthquake or Volcanic Eruption.

   **3. Increased Annual Aggregate Limit Option**

If the Earthquake – Volcanic Eruption Coverage Schedule or the Declarations indicate that the Increased Annual Aggregate Limit Option applies, then the following applies instead of Paragraph **E.2.** above:

The Limit of Insurance for Earthquake – Volcanic Eruption is the most we will pay in a single Earthquake or Volcanic Eruption (as defined in Section **B.** of this endorsement) for loss or damage caused by the Earthquake or Volcanic Eruption. If there is more than one Earthquake or Volcanic Eruption in a 12-month period (starting with the beginning of the present annual policy period), the most we will pay for the total of all loss or damage sustained during that period of time and caused by Earthquake or Volcanic Eruption is two times the Limit of Insurance.

If a single Earthquake or Volcanic Eruption (as defined in Section **B.** of this endorsement) begins during one annual policy period and ends during the following annual policy period, any Limit of Insurance applicable to the following annual policy period will **not** apply to such Earthquake or Volcanic Eruption.

4. **Additional Coverages And Coverage Extensions**

   Amounts payable under an Additional Coverage or Coverage Extension, as set forth in the applicable Coverage Form, do not increase the Limit of Insurance for Earthquake – Volcanic Eruption.

5. **Limitation**

   For property or coverage that is subject to a Blanket Limit on Earthquake – Volcanic Eruption (as shown in the Earthquake – Volcanic Eruption Coverage Schedule or in the Declarations), we will not pay more than we would pay in the absence of such Blanket Limit. Therefore, the maximum amount payable for any such item of property or coverage is the Limit of Insurance or stated value (as shown in a Statement of Values on file with us) specific to that item of property or coverage for Covered Causes of Loss other than Earthquake – Volcanic Eruption.

6. **Ensuing Loss**

   If a Cause of Loss (such as fire) is covered by means of an exception to the Earth Movement Exclusion, in the Causes of Loss Form, we will also pay for the loss or damage caused by that other Covered Cause of Loss. But the most we will pay, for the total of all loss or damage caused by the Earthquake, Volcanic Eruption and other Covered Cause of Loss, is the Limit of Insurance applicable to such other Covered Cause of Loss. We will not pay the sum of the two Limits.

F. **Deductible**

   The Deductible, if any, in this Coverage Part is replaced by the following with respect to Earthquake and Volcanic Eruption:

1. **All Policies**

   a. The Deductible provisions apply to each Earthquake or Volcanic Eruption.

   b. We will not pay for loss or damage until the amount of loss or damage exceeds the applicable Deductible. We will then pay the amount of loss or damage in excess of that Deductible, up to the applicable Limit of Insurance.

   c. If there is loss or damage caused by Earthquake or Volcanic Eruption, and loss or damage caused by a Cause of Loss (e.g., fire) that is covered by means of an exception to the Earth Movement Exclusion, then the only applicable Deductible provisions are those stated in this endorsement.

2. **Calculation Of The Deductible – Specific Insurance Other Than Builders Risk**

   a. **Property Not Subject To Value Reporting Forms**

      In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to the deductible (as shown in the Earthquake – Volcanic Eruption Coverage Schedule or in the Declarations, concerning the Earthquake – Volcanic Eruption Deductible) from the value of the property that has sustained loss or damage. The value to be used is that shown in the most recent Statement of Values on file with us.

### b. Property Subject To Value Reporting Forms

In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to the deductible (as shown in the Earthquake – Volcanic Eruption Coverage Schedule or in the Declarations, concerning the Earthquake – Volcanic Eruption Deductible) from the value of the property that has sustained loss or damage. The value to be used is the latest value shown in the most recent Report of Values on file with us.

### 3. Calculation Of The Deductible – Blanket Insurance Other Than Builders Risk

#### a. Property Not Subject To Value Reporting Forms

In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to the deductible (as shown in the Earthquake – Volcanic Eruption Coverage Schedule or in the Declarations, concerning the Earthquake – Volcanic Eruption Deductible) from the value of the property that has sustained loss or damage. The value to be used is that shown in the most recent Statement of Values on file with us.

#### b. Property Subject To Value Reporting Forms

In determining the amount, if any, that we will pay for property that has sustained loss or damage, we will deduct an amount equal to the deductible (as shown in the Earthquake – Volcanic Eruption Coverage Schedule or in the Declarations, concerning the Earthquake – Volcanic Eruption Deductible) from the value of that property as of the time of loss or damage.

### 4. Calculation Of The Deductible – Builders Risk Insurance

#### a. Builders Risk Other Than Reporting Form

In determining the amount, if any, that we will pay for property that has sustained loss or damage, we will deduct an amount equal to the deductible (as shown in the Earthquake – Volcanic Eruption Coverage Schedule or in the Declarations, concerning the Earthquake – Volcanic Eruption Deductible) from the actual cash value of that property as of the time of loss or damage.

#### b. Builders Risk Reporting Form

In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to the deductible (as shown in the Earthquake – Volcanic Eruption Coverage Schedule or in the Declarations, concerning the Earthquake – Volcanic Eruption Deductible) from the value of the property that has sustained loss or damage. The value to be used is the actual cash value shown in the most recent Report of Values on file with us.

## G. Business Income And Extra Expense Period Of Restoration

This Section, **G.**, is applicable only to the Coverage Forms specified below:

**1.** Business Income (And Extra Expense) Coverage Form;

**2.** Business Income (Without Extra Expense) Coverage Form;

**3.** Extra Expense Coverage Form.

The "period of restoration" definition stated in the Coverage Form, or in any endorsement amending the beginning of the "period of restoration", applies to each Earthquake or Volcanic Eruption. A single Earthquake or Volcanic Eruption is defined in Section **B.** of this endorsement.

**COMMERCIAL PROPERTY**
**SP 319 01 15**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EARTHQUAKE & VOLCANIC ERUPTION COVERAGE SCHEDULE

This endorsement provides supplementary information to be used with the following:

EARTHQUAKE AND VOLCANIC ERUPTION ENDORSEMENT (SUB-LIMIT FORM)

Description of Covered Property:

**SCHEDULE**

| LOCATION No. | BUILDING No. | ADDRESS | PROPERTY DAMAGE DEDUCTIBLE *# | |
|---|---|---|---|---|
| 1 | 1 | 210-220 E 46th St aka 733 Third Avenue, New York, NY 10017-2903 | $ | 25,000 |

\*   *IF ONE "OCCURRENCE" RESULTS IN LOSS OR DAMAGE AT MORE THAN ONE LOCATION, THE APPLICABLE DEDUCTIBLE WILL APPLY SEPARATELY TO LOSS OR DAMAGE AT EACH LOCATION THAT HAS SUSTAINED LOSS OR DAMAGE.*

\#   *EARTHQUAKE DEDUCTIBLES APPLY SEPARATELY TO EACH BUILDING AND TO PERSONAL PROPERTY IN EACH BUILDING.*

Earthquake - Sprinkler Leakage Only ☐

Increased Annual Aggregate Limit Option:   ☐ YES   ☒ NO

**Earthquake - Volcanic Eruption Limit(s) of Insurance**
The Limit(s) of Insurance shown in Section **A** and/or **B** of this Schedule is an annual aggregate limit(s). Refer to the Limit Of Insurance Provisions in the Earthquake And Volcanic Eruption Endorsement (Sub-Limit Form) for an explanation.

**A.  Blanket Limit**   $   250,000

The above Blanket Limit applies to all Locations and Buildings listed in the Schedule above. If a separate Blanket Limit(s) applies at other Locations or Buildings, then a separate page(s) of this Schedule will be used to enter the Blanket Limit(s) for such Locations or Buildings.

Check applicable Covered Property/Coverage(s) for Blanket Limit:

☐   Building
☐   Business Personal Property
☐   Business Income (and Extra Expense) Coverage Form (CP 00 30)
☐   Business Income (without Extra Expense) Coverage Form (CP 00 32)
☐   Extra Expense Coverage Form (CP 00 50)
☐   Other _____

The Blanket Limit shown above does not apply separately to the Locations, Buildings, Covered Property or Coverages listed. The Blanket Limit is the most we will pay for all loss or damage to the indicated Covered

**Policy No.:**      21-31120731 - 36

Property/Coverages at the Locations and Buildings listed, subject to all other applicable provisions of the Limit of Insurance section in the Earthquake And Volcanic Eruption Endorsement (Sub-Limit Form).

**B.  Separate Limits**

If a separate Limit of Insurance is entered in this section of the Schedule, **B.**, for a particular Covered Property/Coverage, that Covered Property/Coverage should NOT be included under a Blanket Limit.

| LOCATION NO. | | BUILDING NO. | |
|---|---|---|---|
| COVERAGE | | LIMIT OF INSURANCE | DEDUCTIBLE |
| Building | | | |
| Business Personal Property | | | |
| Business Income (and Extra Expense) Coverage Form (CP 00 30) | | | |
| Business Income (without Extra Expense) Coverage Form (CP 00 32) | | | |
| Extra Expense Coverage Form (CP 00 50) | | | |
| Other _____ | | | |

| LOCATION NO. | | BUILDING NO. | |
|---|---|---|---|
| COVERAGE | | LIMIT OF INSURANCE | DEDUCTIBLE |
| Building | | | |
| Business Personal Property | | | |
| Business Income (and Extra Expense) Coverage Form (CP 00 30) | | | |
| Business Income (without Extra Expense) Coverage Form (CP 00 32) | | | |
| Extra Expense Coverage Form (CP 00 50) | | | |
| Other _____ | | | |

**COMMERCIAL PROPERTY**
SP 320 01 14

**POLICY NUMBER:** 21-31120731-36                    **ENDORSEMENT NUMBER:**

**ISSUED TO:**  Michael Cetta, Inc.  Sparks Steak House

**BY:**  Admiral Indemnity Company

**EFFECTIVE DATE OF COVERAGE:**  06/26/2019
(12:01 A.M. Standard time at your mailing address
shown in the Declarations)

**THIS ENDORSEMENT CHANGES THIS POLICY.  PLEASE READ IT CAREFULLY.**

# PERIOD OF RESTORATION CHANGES ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Paragraph. **3.** of Section **F. Definitions** is deleted in its entirety and replaced by the following:

**3.** "Period of restoration" means the period of time that:

  **a.** Begins:

   **(1)** 24 hours after the time of direct physical loss or damage for Business Income Coverage; or

   **(2)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

   caused by or resulting from any Covered Cause of Loss at the described premises; and

  **b.** Ends on the earlier of:

   **(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality;

   **(2)** The date when business is resumed at a new permanent location; or

   **(3)** The date at the end of ALS-12 Months consecutive months after the direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises.

  "Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

   **(1)** Regulates the construction, use or repair, or requires the tearing down, of any property; or

   **(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

  The expiration date of this policy will not cut short the "period of restoration".

COMMERCIAL PROPERTY
SP 336 01 18

**POLICY NUMBER:**  21-31120731-36                    **ENDORSEMENT NUMBER:**

**ISSUED TO:**  Michael Cetta, Inc.  Sparks Steak House

**BY:**  Admiral Indemnity Company

**EFFECTIVE DATE OF COVERAGE:**  06/26/2019
(12:01 A.M. Standard time at your mailing
address shown in the Declarations)

### THIS ENDORSEMENT CHANGES THIS POLICY.  PLEASE READ IT CAREFULLY.

# RESTAURANT COVERAGE CHANGES ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CAUSES OF LOSS – SPECIAL FORM

**A.  CHANGES TO THE CAUSES OF LOSS – SPECIAL FORM**

**1.**  Paragraph **1.c.** of section **C. Limitations** is deleted in its entirety and replaced by the following:

**c.**  The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from sand or dust, whether driven by wind or not, unless the building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the sand or dust enters.

**B.  CHANGES TO THE BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

**1.**  Paragraph **5. Coverage Extensions** of section **A. Coverage** is amended as follows:

**a.**  Paragraph **d. Property Off-Premises** is deleted in its entirety and replaced by the following:

**d.  Property Off-premises**

We will pay for direct physical loss or damage to your Business Personal Property at unspecified premises, caused by or resulting from a Covered Cause of Loss, not to exceed $25,000, subject to the following:

**(1)**  This Additional Coverage does not apply to:

**(a)**  Salesperson's samples;

**(b)**  Personal Property while at any exhibition, fair or trade show;

**(c)**  Personal Property at a newly acquired premises;

**(d)**  Personal Property while in transit; or

**(e)**  Personal Property that is covered under another coverage form of this or any other policy in which it is more specifically described.

**(2)**  Personal Property at a job site or temporarily warehoused elsewhere awaiting installation at the job site is subject to a sublimit of $10,000.

**b.**  The following is added at the end thereof:

**j.  Interior of Building**

**a.**  We will pay for loss to the interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet or ice, whether driven by wind or not, whether or not the building or structure first sustains damage by a Covered Cause of Loss through which the rain, snow, sleet or ice enters.

**b.**  In the event of a loss covered under **a.** above:

**(1)**  When the building or structure has NOT first sustained damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet or ice enters, we will subtract

from the amount of loss or damage in any one "occurrence" the specific deductible applicable to this coverage and shown as the "Water Damage – Interior Water Damage" deductible on the Multiple Deductible Form (SP 110); or

**(2)** When the building or structure has first sustained damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet or ice enters, we will subtract from the amount of loss or damage in any one "occurrence" the specific deductible applicable to this coverage and shown as the "All Other Perils" deductible on the Multiple Deductible Form (SP 110).

All other terms and conditions of this policy remain unchanged.

COMMERCIAL PROPERTY
SP 337R 08 17

**POLICY NUMBER:**  21-31120731-36                **ENDORSEMENT NUMBER:**

**ISSUED TO:**  Michael Cetta, Inc.  Sparks Steak House

**BY:**  Admiral Indemnity Company

**EFFECTIVE DATE OF COVERAGE:**  06/26/2019
(12:01 A.M. Standard time at your mailing
address shown in the Declarations)

### THIS ENDORSEMENT CHANGES THIS POLICY.  PLEASE READ IT CAREFULLY.

# COMPUTER COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CAUSES OF LOSS - SPECIAL FORM

We will pay for direct physical loss of or damage to Electronic Data Processing Equipment (Hardware) and Electronic Media and Records (including Software) caused by or resulting from any Covered Cause of Loss, not to exceed $500,000 blanket over both items.

**A.** As it relates solely to the coverage provided by this endorsement, the BUILDING AND PERSONAL PROPERTY COVERAGE FORM is amended as follows:

 **1.** Paragraph **A.1.b.** is deleted in its entirety and replaced by the following:

 **b. Business Personal Property**

 Covered Property as used in this endorsement includes the following types of property that you own that are used in your business; and property of others as defined below, that is in your care, custody or control, but such property is not covered for more than the amount for which you are legally liable:

 **(1)** Electronic Data Processing Equipment (Hardware):

 As used in this endorsement, Electronic Data Processing Equipment means:

 **(a)** Programmable electronic equipment that is used to store, retrieve and process data; and

 **(b)** Associated peripheral equipment that provides communication including input and output functions such as printing, or auxiliary functions such as data transmission;

 except as described in **(2)** below.

 **(2)** Electronic Media and Records (including Software):

 As used in this endorsement, Electronic Media and Records means:

 **(a)** Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells; and

 **(b)** Programming records used for electronic data processing or electronically controlled equipment.

 **2.** Paragraph **A.2. Property Not Covered** is amended to include the following at the end thereof:

 **q.** Property held as samples, held for rental or sale or that you rent to others;

 **r.** Property in storage away from the premises shown in the Schedule, except as provided in the Coverage Extensions of this endorsement;

 **s.** Electronic data processing equipment which is permanently installed or designed to be permanently installed in any aircraft, watercraft, motor truck or other vehicle subject to motor vehicle registration; or

 **t.** Accounts, bills, evidences of debt and valuable papers and records.  However, such property is Covered Property in its "converted data" form.

SP 337R 08 17                                                                        Page 1 of 3

3. Paragraph **A.5.a.(3)** is deleted in its entirety and replaced by the following:

    **(3) Period Of Coverage**

        With respect to insurance on or at each newly acquired or constructed property, coverage will end when any of the following first occurs:

        **(a)** This policy expires;

        **(b)** 180 days expire after you acquire or begin construction on that part of the building that would qualify as Covered Property;

        **(c)** Specific insurance for Covered Property at the newly acquired or constructed premises is obtained; or

        **(d)** You report values to us.

        We will charge you additional premium for values reported from the date construction begins or you acquire the property. The most we will pay for loss or damage under this Extension is $25,000.

4. Paragraph **A.5.d.** is deleted in its entirety and replaced by the following:

    **d. Property Off-Premises**

        **(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property at a location you do not own,

        **(a)** While such property is in the course of transit or is located at a premises you do not own, lease or operate for not more than 180 days.

        **(b)** Including duplicate or back-up electronic media and records that are stored at a separate location which is at least 100 feet from the premises described in the Schedule as applying to electronic media and records.

        **(2)** The most we will pay for loss or damage under this Extension is $25,000.

5. Section **H.** is amended to include the following at the end thereof:

    **5.** "Converted data" means information that is stored on electronic media that is capable of being communicated, processed or interpreted by electronic data processing equipment.

**B.** As it relates solely to any coverage provided by this endorsement, the CAUSES OF LOSS - SPECIAL FORM is amended as follows:

1. Only the following Exclusions of section **B. Exclusions** of the Causes of Loss - Special Form apply to the coverage provided by this endorsement:

    **1. a** Ordinance Or Law, unless coverage is added by a separate endorsement;

    **1. b.** Earth Movement, unless coverage is added by a separate endorsement;

    **1. c.** Governmental Action

    **1. d.** Nuclear Hazard

    **1. f.** War and Military Action

    **1. g.** Water, unless coverage is added by a separate endorsement;

    **2. c. (1)** Wear and Tear;

    **2. c. (2)** Rust, Corrosion, etc.

    **2. f.** Dishonest or Criminal Act, etc.

    **3. b.** Acts or Decisions

    **3. c. (1)** Planning, etc.

    **3. c. (2)** Design, etc.

    **3. c. (3)** Materials, etc., and

    **3. c. (4)** Maintenance

2. Paragraph **B.2.** is amended to include the following at the end thereof:

    **k.** Human errors or omissions in processing, recording or storing information on electronic media and records and electronic data processing equipment.

    But we will pay for direct loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this endorsement.

    **l.** Failure, breakdown or malfunction of electronic media and records and electronic data processing equipment, including parts, while the media is being run through the equipment.

But, we will pay for direct loss or damage caused by resulting fire or explosion if these causes of loss are covered by this endorsement.

**m.**  Installation, testing, repair or other similar service performed upon the electronic data processing media and records or electronic data processing equipment, including parts.

**n.**  Loss or damage to Covered Property or expense caused by or resulting from a virus, harmful programming code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected that has been designed to damage or destroy any part of the system or disrupt its normal operation.

All other terms and conditions of this policy remain unchanged.

**COMMERCIAL PROPERTY**
**SP 640 01 16**

**POLICY NUMBER:**  21-31120731-36                     **ENDORSEMENT NUMBER:**

**ISSUED TO:**  Michael Cetta, Inc.

**BY:**  Admiral Indemnity Company

**EFFECTIVE DATE OF COVERAGE:**  06/26/2019
                                    (12:01 A.M. Standard time at your mailing
                                    address shown in the Declarations)


**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ELECTRONIC DATA - CHANGES ENDORSEMENT


This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM


**A.**  Under section **A. Coverage**, **4. Additional Coverages**, **f. Electronic Data**, paragraph **(3)(d)** is deleted in its entirety.


All other provisions remain unchanged.

COMMERCIAL PROPERTY
SP 641 01 16

**POLICY NUMBER:** 21-31120731-36                     **ENDORSEMENT NUMBER:**

**ISSUED TO:** Michael Cetta, Inc.

**BY:** Admiral Indemnity Company

**EFFECTIVE DATE OF COVERAGE:** 06/26/2019
(12:01 A.M. Standard time at your mailing
address shown in the Declarations)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# INTERRUPTION OF COMPUTER OPERATIONS - CHANGES ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

**A.**   Under section **A. Coverage, 5. Additional Coverages, d. Interruption of Computer Operations**, paragraph **(3)(d)** is deleted in its entirety.

All other provisions remain unchanged.

**COMMERCIAL GENERAL LIABILITY**
**CG DS 03 07 98**

# LIQUOR LIABILITY DECLARATIONS

**Policy No.:** 21-31120731 - 36
Previous Policy No.:  21-31120731-35

| ISSUING COMPANY NAME AND ADDRESS | AGENCY NAME AND ADDRESS   8414 |
|---|---|
| Admiral Indemnity Company<br>301 Route 17 North<br>Suite 900<br>Rutherford, NJ 07070 | JLNY Group LLC<br>80 Crossways Park Dr, Suite 210<br>Woodbury, NY 11797-2047<br>(631) 421-9355 |

**NAMED INSURED**  Michael Cetta, Inc.
Sparks Steak House

**MAILING ADDRESS**  210-220 E 46th St
aka 733 Third Avenue
New York, NY 10017-2903

**POLICY PERIOD**  From  06/26/2019  To  06/26/2020  AT 12:01 A.M. TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

| LIMITS OF INSURANCE | |
|---|---|
| EACH COMMON CAUSE LIMIT | $  1,000,000 |
| AGGREGATE LIMIT | $  1,000,000 |

| RETROACTIVE DATE (CG 00 34 ONLY) |
|---|
| THIS INSURANCE DOES NOT APPLY TO "INJURY" WHICH OCCURS BEFORE THE RETROACTIVE DATE, IF ANY, SHOWN BELOW.<br>RETROACTIVE DATE:  None<br>(ENTER DATE OR "NONE" IF NO RETROACTIVE DATE APPLIES) |

| DESCRIPTION OF BUSINESS |
|---|

FORM OF BUSINESS:
☐ INDIVIDUAL          ☐ PARTNERSHIP          ☐ JOINT VENTURE
☐ LIMITED LIABILITY COMPANY    ☒ ORGANIZATION, INCLUDING A CORPORATION (BUT NOT INCLUDING A PARTNERSHIP, JOINT VENTURE OR LIMITED LIABILITY COMPANY)

BUSINESS DESCRIPTION:  Restaurant

Policy No.:     21-31120731 - 36

| ALL PREMISES YOU OWN, RENT OR OCCUPY | |
|---|---|
| LOCATION NUMBER<br>1 | ADDRESS OF ALL PREMISES YOU OWN, RENT OR OCCUPY<br><br>210-220 E 46th St<br>aka 733 Third Avenue<br>New York, NY 10017-2903 |

| CLASSIFICATION AND PREMIUM | | | | |
|---|---|---|---|---|
| CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE | ADVANCE PREMIUM |
| Restaurants, Taverns, Hotels, Motels, including package sales | 58161 - 1 | $4,565,596 Gross Sales | | Included |

| | |
|---|---|
| | STATE TAX OR OTHER (if applicable)     $ _____ |
| | TOTAL PREMIUM (SUBJECT TO AUDIT)     $   Included |
| PREMIUM SHOWN IS PAYABLE: | AT INCEPTION     $ _____ |
| | AT EACH ANNIVERSARY     $ _____ |
| | (IF POLICY PERIOD IS MORE THAN ONE YEAR AND PREMIUM IS PAID IN ANNUAL INSTALLMENTS) |
| AUDIT PERIOD (IF APPLICABLE) | ☒ ANNUALLY     ☐ SEMI-ANNUALLY     ☐ QUARTERLY     ☐ MONTHLY |

| ENDORSEMENTS |
|---|
| ENDORSEMENTS ATTACHED TO THIS POLICY:<br>     *See attached "Schedule of Forms and Endorsements"* |

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.**

Countersigned: _____     By: _____

_____
Authorized Representative

COMMERCIAL GENERAL LIABILITY
CG DS 83 00 04 10

**Issuing Company:  Admiral Indemnity Company**

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

**Policy No.:**  21-31120731 - 36
Previous Policy No.:  21-31120731-35

| **NAMED INSURED AND ADDRESS** | **AGENCY NAME AND ADDRESS** | 8414 |
|---|---|---|
| Michael Cetta, Inc. | (631) 421-9355 | |
| Sparks Steak House | JLNY Group LLC | |
| 210-220 E 46th St | 80 Crossways Park Dr, Suite 210 | |
| aka 733 Third Avenue | Woodbury, NY 11797-2047 | |
| New York, NY 10017-2903 | | |

| **POLICY PERIOD** |
|---|

Policy Period:  From 06/26/2019 to 06/26/2020 at 12:01 A.M. Standard Time at your mailing address shown above.

| **TOTAL ADVANCE PREMIUM** | **Included** |
|---|---|

| **LIMITS OF INSURANCE** |
|---|

| | | |
|---|---|---|
| Each Occurrence Limit | $   1,000,000 | |
|    Damage to Premises Rented to You Limit | $      500,000 | Any One Premises |
|    Medical Expense Limit | $          5,000 | Any One Person |
| Personal & Advertising Injury Limit | $   1,000,000 | Any One Person or Organization |
| General Aggregate Limit | $   2,000,000 | |
|    (Other Than Products-Completed Operations) | | |
| Products-Completed Operations Aggregate Limit | $   2,000,000 | |

**Location of All Premises You Own, Rent or Occupy:**

*See attached "Schedule of Locations"*

Policy No.:       21-31120731 - 36

| CLASSIFICATION & PREMIUM |
| --- |

The Premium & Classifications are subject to change by audit.  Audit period:  ANNUALLY

| Classification | Code No. | Premium Base | Rate | | Advance Premium | | Other |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | Prem/ Ops | Prod/ Comp Ops | Prem/ Ops | Prod/ Comp Ops | |
| **New York** | | | | | | | |
| **Location #1** | | | | | | | |
| Restaurants - with sale of alcoholic beverages that are 30% or more of but less than 75% of the total annual receipts of the restaurants - without dance floor | 16916 | $12,867,914 Gross Sales | | | Included | Included | |
| Premium for Endorsements | | | | | | | **Included** |
| | | **Total Advance Premium** | | | | **Included** | |

| FORMS ATTACHED TO THIS POLICY |
| --- |

*See attached "Schedule of Forms and Endorsements"*

SP 27 07 12

**POLICY NUMBER:**    21-31120731 36        **ENDORSEMENT NUMBER:**

**ISSUED TO:**        Michael Cetta, Inc. Sparks Steak House

**BY:**        Admiral Indemnity Company

**EFFECTIVE DATE OF COVERAGE:**    06/26/2019
    (12:01 A.M. Standard time at your mailing address shown below.)

# EMPLOYEE BENEFIT LIABILITY COVERAGE PART DECLARATIONS

1. **NAMED INSURED:**    Michael Cetta, Inc. Sparks Steak House

2. **MAILING ADDRESS:**    210-220 E 46th St
    aka 733 Third Avenue
    New York NY 10017-2903

3. **COVERAGE PERIOD:  FROM:**    06/26/2019    **TO:**    06/26/2020
    12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

4. **RETROACTIVE DATE:**    06/26/2009
    THIS COVERAGE PART DOES NOT APPLY TO A CLAIM, WHICH OCCURS BEFORE THE RETROACTIVE DATE, IF ANY, SHOWN ABOVE.

5. **LIMITS OF INSURANCE:**
    **EACH CLAIM:**    $1,000,000

    **AGGREGATE LIMIT:**    $2,000,000

6. **DEDUCTIBLE:**    $1,000

7. **PREMIUM:**    Included

8. **EXTENDED REPORTING PERIOD:**
    **ADDITIONAL PERIOD:**    n/a

    **ADDITIONAL PREMIUM:**    n/a

9. **FORMS APPLICABLE TO THIS COVERAGE PART:**    *See attached "Schedule of Forms and Endorsements"*

# NEW YORK EMPLOYEE BENEFITS LIABILITY COVERAGE - DISCLOSURE FORM
# CLAIMS-MADE COVERAGE

### IMPORTANT NOTICE TO POLICYHOLDERS

**THIS DISCLOSURE FORM IS NOT YOUR POLICY. IT MERELY DESCRIBES SOME OF THE MAJOR FEATURES OF OUR CLAIMS-MADE COVERAGE FORM. READ YOUR POLICY CAREFULLY TO DETERMINE RIGHTS, DUTIES, AND WHAT IS AND IS NOT COVERED. ONLY THE PROVISIONS OF YOUR POLICY DETERMINE THE SCOPE OF YOUR INSURANCE PROTECTION.**

1. The coverage form which provides Employee Benefits Liability Coverage applies on a claims-made basis.

2. The coverage form will not apply to claims arising out of incidents, occurrences or alleged wrongful acts which took place prior to the retroactive stated in the policy.

3. The coverage form applies only to claims made against you while the policy remains in effect and all coverage under the policy ceases upon the termination of the policy, except for the automatic extended reporting period coverage, unless you have purchased an additional extended reporting period.

4. The coverage form provides an automatic extended reporting period of sixty (60) days.  Additionally, you may purchase an optional extended reporting period of three (3) years at a premium of 125% of your terminated policy premium. If a claim is made after the termination of your claims-made policy, you may not have coverage for that claim unless you have purchased an extended reporting period.

5. Please be advised that during the first several years of the claims-made relationship, premium rates for claims-made policies are comparatively lower than rates for occurrence policies. You can, however, expect substantial annual premium increases, independent of overall rate level increases, until the claims-made relationship reaches maturity.

**COMMERCIAL GENERAL LIABILITY**
**CL CG FS 01 09 08**

Policy Number: **21-31120731 - 36**

# SCHEDULE OF FORMS AND ENDORSEMENTS

The following Declarations, Coverage Forms, Conditions, and Endorsements are applicable to:

## Commercial General Liability

| State | Number | Edition | Description |
|---|---|---|---|
| ALL | CG DS 03 | 07-1998 | Liquor Liability Declarations |
| ALL | CG DS 83 00 | 04-2010 | Commercial General Liability Declarations |
| ALL | SP 27 | 07-2012 | Employee Benefit Liability Coverage Part Declarations |
| ALL | CL CG FS 01 | 09-2008 | Schedule of Forms and Endorsements |
| ALL | CG 00 01 | 04-2013 | Commercial General Liability Coverage Form |
| ALL | CG 00 33 | 04-2013 | Liquor Liability Coverage Form |
| ALL | CG 01 04 | 12-2004 | New York Changes - Prem Audit - CGL, Liq, Prods |
| ALL | CG 01 63 | 07-2011 | New York Changes - Commercial General Liability Coverage Form |
| ALL | CG 20 13 | 04-2013 | Additional Insured - State Or Political Subdivisions - Permits Relating To Premises |
| ALL | CG 20 26 | 04-2013 | Additional Insured - Designated Person Or Organization |
| ALL* | CG 20 26 | 04-2013 | Additional Insured - Designated Person Or Organization |
| ALL | CG 20 28 | 04-2013 | Additional Insured - Lessor Of Leased Equipment |
| ALL | CG 21 00 | 07-1998 | Exclusion - All Hazards In Connection With Designated Premises |
| ALL | CG 21 06 | 05-2014 | Exclusion-Access Or Disclosure Of Confidential Or Personal Information And Data-Related Liability-With Limited Bodily Injury Exception |
| ALL | CG 21 09 | 06-2015 | Exclusion - Unmanned Aircraft |
| ALL | CG 21 47 | 12-2007 | Employment Related Practices Exclusion |
| ALL | CG 21 70 | 01-2015 | Cap On Losses From Certified Acts Of Terrorism |
| ALL | CG 24 07 | 01-1996 | Products/Completed Operations Hazard Redefined |
| ALL | CG 26 03 | 04-2009 | New York Changes Liquor Liability Coverage Form |
| ALL | CG 26 21 | 10-1991 | New York Changes - Transfer of Duties |
| ALL | CG 26 35 | 12-1993 | New York - Transfer of Duties (Liquor Liability Coverage Part) |
| ALL | SP 03 | 01-2014 | Duties In The Event Of Occurrence Claim Or Suit Representations |
| ALL | SP 158 | 01-2014 | Exclusion Asbestos Hazard |
| ALL | SP 161 | 01-2014 | Other Insurance |
| ALL | SP 27 NY | 01-2009 | Employee Benefit Liability Coverage Part Form |
| ALL | SP 600 NY | 01-2016 | New York Data Compromise Coverage |
| ALL | SP 601 NY | 01-2016 | New York Cyberone Coverage |
| ALL | SP 92 | 01-2014 | Restaurant Extension Endorsement |

ALL = ALL states on the policy
ALL* = Applies to all states on the policy unless a specific state form is designated

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

   **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

   **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

   **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

   **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

   **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

© Insurance Services Office, Inc., 2012

## 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

 © Insurance Services Office, Inc., 2012

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**COVERAGE C – MEDICAL PAYMENTS**

**1. Insuring Agreement**

   **a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

   **(1)** On premises you own or rent;

   **(2)** On ways next to premises you own or rent; or

   **(3)** Because of your operations;

   provided that:

   **(a)** The accident takes place in the "coverage territory" and during the policy period;

   **(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

   **(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

   **b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

   **(1)** First aid administered at the time of an accident;

   **(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

   **(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

   We will not pay expenses for "bodily injury":

   **a. Any Insured**

   To any insured, except "volunteer workers".

   **b. Hired Person**

   To a person hired to do work for or on behalf of any insured or a tenant of any insured.

   **c. Injury On Normally Occupied Premises**

   To a person injured on that part of premises you own or rent that the person normally occupies.

   **d. Workers' Compensation And Similar Laws**

   To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

   **e. Athletics Activities**

   To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

   **f. Products-Completed Operations Hazard**

   Included within the "products-completed operations hazard".

   **g. Coverage A Exclusions**

   Excluded under Coverage **A**.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   **a.** All expenses we incur.

   **b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   **c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   **d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   **e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

   **f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

© Insurance Services Office, Inc., 2012

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   b. This insurance applies to such liability assumed by the insured;

   c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   f. The indemnitee:

      (1) Agrees in writing to:

         (a) Cooperate with us in the investigation, settlement or defense of the "suit";

         (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

         (c) Notify any other insurer whose coverage is available to the indemnitee; and

         (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

      (2) Provides us with written authorization to:

         (a) Obtain records and other information related to the "suit"; and

         (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

© Insurance Services Office, Inc., 2012

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by;

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage **C;**

b. Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage **B.**

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage **A;** and

   **b.** Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   **b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   **c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

## 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

### a. Primary Insurance

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

### b. Excess Insurance

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(2) When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

### c. Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

## 5. Premium Audit

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

## 6. Representations

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

    © Insurance Services Office, Inc., 2012

**9.** "Insured contract" means:

    **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    **b.** A sidetrack agreement;

    **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    **e.** An elevator maintenance agreement;

    **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

    Paragraph **f.** does not include that part of any contract or agreement:

    **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

    **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

    **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    **b.** While it is in or on an aircraft, watercraft or "auto"; or

    **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

    but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **b.** Vehicles maintained for use solely on or next to premises you own or rent;

    **c.** Vehicles that travel on crawler treads;

    **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    **(1)** Power cranes, shovels, loaders, diggers or drills; or

    **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    **(2)** Cherry pickers and similar devices used to raise or lower workers;

    **f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

© Insurance Services Office, Inc., 2012

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

  **(a)** Snow removal;

  **(b)** Road maintenance, but not construction or resurfacing; or

  **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

  **(1)** Products that are still in your physical possession; or

  **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

    **(a)** When all of the work called for in your contract has been completed.

    **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

  Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

  **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

  **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

  **(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

   **a.** Means:

      **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         **(a)** You;

         **(b)** Others trading under your name; or

         **(c)** A person or organization whose business or assets you have acquired; and

      **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

   **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

   **(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

   **a.** Means:

      **(1)** Work or operations performed by you or on your behalf; and

      **(2)** Materials, parts or equipment furnished in connection with such work or operations.

   **b.** Includes:

      **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

      **(2)** The providing of or failure to provide warnings or instructions.

© Insurance Services Office, Inc., 2012

COMMERCIAL GENERAL LIABILITY
CG 00 33 04 13

# LIQUOR LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – LIQUOR LIABILITY COVERAGE

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance does not apply. We may, at our discretion, investigate any "injury" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

**b.** This insurance applies to "injury" only if:

**(1)** The "injury" occurs during the policy period in the "coverage territory"; and

**(2)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "injury" or claim, knew that the "injury" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "injury" occurred, then any continuation, change or resumption of such "injury" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Injury" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "injury" or claim, includes any continuation, change or resumption of that "injury" after the end of the policy period.

**d.** "Injury" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "injury" or claim:

**(1)** Reports all, or any part, of the "injury" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "injury"; or

**(3)** Becomes aware by any other means that "injury" has occurred or has begun to occur.

### 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Injury" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**c. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

    **(a)** Employment by the insured; or

    **(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the "injury".

**d. Liquor License Not In Effect**

"Injury" arising out of any alcoholic beverage sold, served or furnished while any required license is not in effect.

**e. Your Product**

"Injury" arising out of "your product". This exclusion does not apply to "injury" for which the insured or the insured's indemnitees may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

**f. Other Insurance**

Any "injury" with respect to which other insurance is afforded, or would be afforded but for the exhaustion of the limits of insurance.

This exclusion does not apply if the other insurance responds to liability for "injury" imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage.

**g. War**

"Injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**SUPPLEMENTARY PAYMENTS**

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**1.** All expenses we incur.

**2.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**3.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**4.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**5.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**6.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

**7.** Expenses incurred by the insured for first aid administered to others at the time of an event to which this insurance applies.

These payments will not reduce the limits of insurance.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

    **a.** An individual, you and your spouse are insureds.

    **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

 © Insurance Services Office, Inc., 2012

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

   **a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

     **(1)** "Injury":

       **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

       **(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(a)** above; or

       **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(a)** or **(b)** above.

     **(2)** "Property damage" to property:

       **(a)** Owned or occupied by; or

       **(b)** Rented or loaned;

       to that "employee", any of your other "employees", by any of your partners or members (if you are a partnership or joint venture), or by any of your members (if you are a limited liability company).

   **b.** Any person or organization having proper temporary custody of your property if you die, but only:

     **(1)** With respect to liability arising out of the maintenance or use of that property; and

     **(2)** Until your legal representative has been appointed.

   **c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

   **b.** Coverage does not apply to "injury" that occurred before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   **a.** Insureds;

   **b.** Claims made or "suits" brought; or

   **c.** Persons or organizations making claims or bringing "suits".

**2.** The Aggregate Limit is the most we will pay for all "injury" as the result of the selling, serving or furnishing of alcoholic beverages.

**3.** Subject to the Aggregate Limit, the Each Common Cause Limit is the most we will pay for all "injury" sustained by one or more persons or organizations as the result of the selling, serving or furnishing of any alcoholic beverage to any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – LIQUOR LIABILITY CONDITIONS

**1. Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

 © Insurance Services Office, Inc., 2012

**2. Duties In The Event Of Injury, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "injury" which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "injury" took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any "injury".

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "injury" to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary. Our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **b.** below.

**b. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

© Insurance Services Office, Inc., 2012

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**2.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the "injury" occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the "injury" arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above; or

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**3.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**4.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**5.** "Injury" means damages because of "bodily injury" and "property damage", including damages for care, loss of services or loss of support.

**6.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**7.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

**8.** "Suit" means a civil proceeding in which damages because of "injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**9.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**10.** "Your product":

   **a.** Means:

      **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         **(a)** You;

         **(b)** Others trading under your name; or

         **(c)** A person or organization whose business or assets you have acquired; and

      **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   **b.** Includes:

      **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      **(2)** The providing of or failure to provide warnings or instructions.

   **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

 © Insurance Services Office, Inc., 2012 **CG 00 33 04 13**

COMMERCIAL GENERAL LIABILITY
CG 01 04 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – PREMIUM AUDIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **b.** of the **Premium Audit** Condition **Section IV** is replaced by the following:

**PREMIUM AUDIT**

   **b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. An audit to determine the final premium due or to be refunded will be completed within 180 days after the expiration date of the policy. But the audit may be waived if the total annual premium attributable to the auditable exposure base is not reasonably expected to exceed $1500. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

**B.** Except as provided in Paragraph **A.** above, the **Examination Of Your Books And Records** Common Policy Condition continues to apply.

© ISO Properties, Inc., 2003

□

COMMERCIAL GENERAL LIABILITY
CG 01 63 07 11

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Paragraph **1. Insuring Agreement** of Section **I – Coverage A Bodily Injury And Property Damage Liability** is replaced by the following:

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III – Limits Of Insurance**; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II – Who Is An Insured** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**B.** Paragraph **1.a.** of Section **I – Coverage B Personal And Advertising Injury Liability** is replaced by the following:

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III – Limits Of Insurance;** and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** and **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**C.** The following is added as Paragraph **e.** to the **Duties In The Event Of Occurrence, Offense, Claim Or Suit** Condition (Paragraph **2.** of **Section IV – Commercial General Liability Conditions**):

**e.** Notice given by or on behalf of the insured, or written notice by or on behalf of the injured person or any other claimant, to any agent of ours in New York State, with particulars sufficient to identify the insured, shall be considered to be notice to us.

**D.** Paragraph **3.** of **Section IV – Commercial General Liability Conditions** is replaced by the following:

**3. Legal Action Against Us**

**a.** Except as provided in Paragraph **b.,** no person or organization has a right under this Coverage Part:

**(1)** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**(2)** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**b.** With respect to "bodily injury" and "personal and advertising injury" claims, if you deny coverage or do not admit liability because an insured or the injured person, someone acting for the injured person or other claimant fails to give us written notice as soon as practicable, then the injured person, someone acting for the injured person or other claimant may bring an action against us, provided the sole question is whether the denial of coverage or nonadmission of liability is based on the failure to provide timely notice.

However, the injured person, someone acting for the injured person or other claimant may not bring an action if within 60 days after we deny coverage or do not admit liability, we or an insured:

**(1)** Brings an action to declare the rights of the parties under the policy; and

**(2)** Names the injured person, someone acting for the injured person or other claimant as a party to the action.

**E.** The following provision is added and supersedes any provision to the contrary:

Failure to give notice to us as required under this Coverage Part shall not invalidate any claim made by the insured, injured person or any other claimant, unless the failure to provide such timely notice has prejudiced us. However, no claim made by the insured, injured person or other claimant will be invalidated if it shall be shown not to have been reasonably possible to give such timely notice and that notice was given as soon as was reasonably possible thereafter.

**F.** The definition of "loading or unloading" in the **Definitions** Section does not apply.

**POLICY NUMBER:** 21-31120731-36

COMMERCIAL GENERAL LIABILITY
CG 20 13 04 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - STATE OR GOVERNMENTAL AGENCY OR SUBDIVISION OR POLITICAL SUBDIVISION - PERMITS OR AUTHORIZATIONS RELATING TO PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

**SCHEDULE**

| |
|---|
| **State Or Governmental Agency Or Subdivision Or Political Subdivision:** |
| NYC Dept of Transportation and the City of NY Its officials and employees 40 Worth Street New York, NY 10013 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Section II - Who Is An Insured** is amended to include as an additional insured any state or governmental agency or subdivision or political subdivision shown in the Schedule, subject to the following additional provision:

This insurance applies only with respect to the following hazards for which the state or governmental agency or subdivision or political subdivision has issued a permit or authorization in connection with premises you own, rent or control and to which this insurance applies:

1. The existence, maintenance, repair, construction, erection or removal of advertising signs, awnings, canopies, cellar entrances, coal holes, driveways, manholes, marquees, hoist away openings, sidewalk vaults, street banners or decorations and similar exposures; or

2. The construction, erection or removal of elevators; or

3. The ownership, maintenance or use of any elevators covered by this insurance.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III - Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012

**COMMERCIAL GENERAL LIABILITY**
**CG 20 26 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): |
|---|
| DOLP 733 Properties II LLC, Owner |
| |
| |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III - Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

COMMERCIAL GENERAL LIABILITY
CG 20 26 04 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): |
|---|
| Royal Realty Corp., Agent c/o The Durst Organization Inc. One Bryant Park, 49th Floor New York, NY 10036 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III - Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012

COMMERCIAL GENERAL LIABILITY
CG 20 26 04 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): |
|---|
| Wachovia Bank, National Association, as Servicer on behalf of, UBS Real Estate Investments, Inc., as Trustee for the benefit of the Certificate Holders of Its Successors and/or Assigns, Commercial Mortgage Pass-Through Certificates WBGENPART P.O. Box 563956 Charlotte, NY 28256-3956 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III - Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012

COMMERCIAL GENERAL LIABILITY
CG 20 26 04 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): |
|---|
| Any person or organization that you are required to add as an additional insured under a written contract or agreement, executed prior to loss, for specified events catered by the named insured. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III - Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

COMMERCIAL GENERAL LIABILITY
CG 20 28 04 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - LESSOR OF LEASED EQUIPMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| **Name Of Additional Insured Person(s) Or Organization(s):** |
|---|
| De Lage Landen, PO Box 41602, Philadelphia, PA 19101 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s).

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III - Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

COMMERCIAL GENERAL LIABILITY
CG 21 00 07 98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - ALL HAZARDS IN CONNECTION WITH DESIGNATED PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| **Description And Location Of Premises:** |
| --- |
| All locations other than those specifically referenced/listed on the Commercial General Liability Declarations. |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

**1.** The ownership, maintenance or use of the premises shown in the Schedule or any property located on these premises;

**2.** Operations on those premises or elsewhere which are necessary or incidental to the ownership, maintenance or use of those premises; or

**3.** Goods or products manufactured at or distributed from those premises.

COMMERCIAL GENERAL LIABILITY
CG 21 06 05 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – UNMANNED AIRCRAFT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.g. Aircraft, Auto Or Watercraft** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**g. Aircraft, Auto Or Watercraft**

**(1) Unmanned Aircraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This Paragraph **g.(1)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

**(2) Aircraft (Other Than Unmanned Aircraft), Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This Paragraph **g.(2)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This Paragraph **g.(2)** does not apply to:

**(a)** A watercraft while ashore on premises you own or rent;

**(b)** A watercraft you do not own that is:

**(i)** Less than 26 feet long; and

**(ii)** Not being used to carry persons or property for a charge;

**(c)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(d)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

 © Insurance Services Office, Inc., 2014

**(e)** "Bodily injury" or "property damage" arising out of:

   **(i)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

   **(ii)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Coverage B – Personal And Advertising Injury Liability:**

   **2. Exclusions**

   This insurance does not apply to:

   **Unmanned Aircraft**

   "Personal and advertising injury" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the offense which caused the "personal and advertising injury" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

This exclusion does not apply to:

   **a.** The use of another's advertising idea in your "advertisement"; or

   **b.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**C.** The following definition is added to the **Definitions** section:

   "Unmanned aircraft" means an aircraft that is not:

   **1.** Designed;

   **2.** Manufactured; or

   **3.** Modified after manufacture;

   to be controlled directly by a person from within or on the aircraft.

 © Insurance Services Office, Inc., 2014 **CG 21 09 06 15**

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**COMMERCIAL GENERAL LIABILITY**
**CG 21 70 01 15**

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

© Insurance Services Office, Inc., 2015

COMMERCIAL GENERAL LIABILITY
CG 24 07 01 96

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PRODUCTS/COMPLETED OPERATIONS HAZARD REDEFINED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

**Description of Premises and Operations:**

Restaurants - with sale of alcoholic beverages that are 30% or more of but less than 75% of the total annual receipts of the restaurants - without dance floor

210-220 E 46th Staka 733 Third Avenue, New York, NY  10017-2903

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to "bodily injury" or "property damage" arising out of "your products" manufactured, sold, handled or distributed:

**1.** On, from or in connection with the use of any premises described in the Schedule, or

**2.** In connection with the conduct of any operation described in the Schedule, when conducted by you or on your behalf,

Paragraph **a.** of the definition of "Products-completed operations hazard" in the DEFINITIONS Section is replaced by the following:

"Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" that arises out of "your products" if the "bodily injury" or "property damage" occurs after you have relinquished possession of those products.

Copyright, Insurance Services Office, Inc.,  1994

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES –
# LIQUOR LIABILITY COVERAGE FORM

This endorsement modifies insurance provided under the following:

LIQUOR LIABILITY COVERAGE PART

**A.** Paragraph **1. Insuring Agreement** of Section I is replaced by the following:

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance does not apply. We may, at our discretion, investigate any "injury" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

    **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

  **b.** This insurance applies to "injury" only if:

    **(1)** The "injury" occurs during the policy period in the "coverage territory"; and

    **(2)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "injury" or claim, knew that the "injury" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "injury" occurred, then any continuation, change or resumption of such "injury" during or after the policy period will be deemed to have been known prior to the policy period.

  **c.** "Injury" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "injury" or claim, includes any continuation, change or resumption of that "injury" after the end of the policy period.

  **d.** "Injury" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "injury" or claim:

    **(1)** Reports all, or any part, of the "injury" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "injury"; or

    **(3)** Becomes aware by any other means that "injury" has occurred or has begun to occur.

 © Insurance Services Office, Inc., 2008

**B.** The following is added as Paragraph **e.** to **Duties In The Event Of Injury, Claim Or Suit** under Paragraph **2.** of **Section IV – Liquor Liability Conditions:**

**2. Duties In The Event Of Injury, Claim Or Suit**

**e.** Notice given by or on behalf of the insured, or written notice by or on behalf of the injured person or any other claimant, to any agent of ours in New York State, with particulars sufficient to identify the insured, shall be considered to be notice to us.

**C.** Paragraph **3.** of **Section IV – Liquor Liability Conditions** is replaced by the following:

**3. Legal Action Against Us**

**a.** Except as provided in Paragraph **b.,** no person or organization has a right under this Coverage Part:

**(1)** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**(2)** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**b.** With respect to "injury" claims related to "bodily injury", if we deny coverage or do not admit liability because an insured or the injured person, someone acting for the injured person or other claimant fails to give us written notice as soon as practicable, then the injured person, someone acting for the injured person or other claimant may bring an action against us, provided the sole question is whether the denial of coverage or nonadmission of liability is based on the failure to provide timely notice.

However, the injured person, someone acting for the injured person or other claimant may not bring an action if within 60 days after we deny coverage or do not admit liability, we or an insured:

**(1)** Brings an action to declare the rights of the parties under the policy; and

**(2)** Names the injured person, someone acting for the injured person or other claimant as a party to the action.

**D.** The following provision is added and supersedes any provision to the contrary:

Failure to give notice to us as required under this Coverage Part shall not invalidate any claim made by the insured, injured person or any other claimant, unless the failure to provide such timely notice has prejudiced us. However, no claim made by the insured, injured person or other claimant will be invalidated if it shall be shown not to have been reasonably possible to give such timely notice and that notice was given as soon as was reasonably possible thereafter.

© Insurance Services Office, Inc., 2008
**CG 26 03 04 09**   ☐

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – TRANSFER OF DUTIES WHEN A LIMIT OF INSURANCE IS USED UP

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following Condition is added to COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV):

**Transfer of Duties When a Limit of Insurance Is Used Up.**

**a.** If we conclude that, based on "occurrences," offenses, claims or "suits" which have been reported to us and to which this insurance may apply, the:

**(1)** General Aggregate Limit (other than the Products/Completed Operations Aggregate Limit);

**(2)** Products/Completed Operations Aggregate Limit;

**(3)** Personal and Advertising Injury Limit;

**(4)** Each Occurrence Limit; or

**(5)** Fire Damage Limit

is likely to be used up in the payment of judgments or settlements, we will notify the first Named Insured, in writing, to that effect.

**b.** When a limit of insurance described in paragraph **a.** above has actually been used up in the payment of judgments or settlements:

**(1)** We will notify the first Named Insured, in writing, as soon as practicable, that:

**(a)** Such a limit has actually been used up; and

**(b)** Our duty to defend "suits" seeking damages subject to that limit has also ended.

**(2)** We will initiate, and cooperate in, the transfer of control, to any appropriate insured, of all claims and "suits" seeking damages which are subject to that limit and which are reported to us before that limit is used up. That insured must cooperate in the transfer of control of said claims and "suits".

We agree to take such steps, as we deem appropriate, to avoid a default in, or continue the defense of, such "suits" until such transfer is completed, provided the appropriate insured is cooperating in completing such transfer.

We will take no action whatsoever with respect to any claim or "suit" seeking damages that would have been subject to that limit, had it not been used up, if the claim or "suit" is reported to us after that limit of insurance has been used up.

**(3)** The first Named Insured, and any other insured involved in a "suit" seeking damages subject to that limit, must arrange for the defense of such "suit" within such time period as agreed to between the appropriate insured and us. Absent any such agreement, arrangements for the defense of such "suit" must be made as soon as practicable.

**c.** The first Named Insured will reimburse us for expenses we incur in taking those steps we deem appropriate in accordance with paragraph **b.(2)** above.

The duty of the first Named Insured to reimburse us will begin on:

**(1)** The date on which the applicable limit of insurance is used up, if we sent notice in accordance with paragraph **a.** above; or

**(2)** The date on which we sent notice in accordance with paragraph **b.(1)** above, if we did not send notice in accordance with paragraph a. above.

**d.** The exhaustion of any limit of insurance by the payments of judgments or settlements, and the resulting end of our duty to defend, will not be affected by our failure to comply with any of the provisions of this Condition.

COMMERCIAL GENERAL LIABILITY
CG 26 35 12 93

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – TRANSFER OF DUTIES WHEN A LIMIT OF INSURANCE IS USED UP

This endorsement modifies insurance under the following:

LIQUOR LIABILITY COVERAGE PART

The following Condition is added to LIQUOR LIABIL-ITY CONDITIONS (Section **IV**):

**Transfer of Duties When a Limit of Insurance Is Used Up.**

**a.** If we conclude that, based on "injuries", claims or "suits" which have been reported to us and to which this insurance may apply, the Aggregate Limit or the Each Common Cause Limit is likely to be used up in the payment of judgments or set-tlements, we will notify the first Named Insured, in writing, to that effect.

**b.** When a limit of insurance described in paragraph **a.** above has actually been used up in the pay-ment of judgments or settlements:

   **(1)** We will notify the first Named Insured, in writ-ing, as soon as practicable, that:

      **(a)** Such a limit has actually been used up; and

      **(b)** Our duty to defend "suits" seeking dam-ages subject to that limit has also ended.

   **(2)** We will initiate, and cooperate in, the transfer of control, to any appropriate insured, of all claims and "suits" seeking damages which are subject to that limit and which are reported to us before that limit is used up. That insured must cooperate in the transfer of control of said claims and "suits".

   We agree to take such steps, as we deem ap-propriate, to avoid a default in, or continue the defense of, such "suits" until such transfer is completed, provided the appropriate insured is cooperating in completing such transfer.

We will take no action whatsoever with respect to any claim or "suit" seeking damages that would have been subject to that limit, had it not been used up, if the claim or "suit" is re-ported to us after that limit of insurance has been used up.

   **(3)** The first Named Insured, and any other in-sured involved in a "suit" seeking damages subject to that limit, must arrange for the de-fense of such "suit" within such time period as agreed to between the appropriate insured and us. Absent any such agreement, arrangements for the defense of such "suit" must be made as soon as practicable.

**c.** The first Named Insured will reimburse us for expenses we incur in taking those steps we deem appropriate in accordance with paragraph **b.(2)** above.

The duty of the first Named Insured to reimburse us will begin on:

   **(1)** The date on which the applicable limit of insur-ance is used up, if we sent notice in accor-dance with paragraph **a.** above; or

   **(2)** The date on which we sent notice in accor-dance with paragraph **b.(1)** above, if we did not send notice in accordance with paragraph **a.** above.

**d.** The exhaustion of any limit of insurance by the payments of judgments or settlements, and the resulting end of our duty to defend, will not be af-fected by our failure to comply with any of the provisions of this Condition.

COMMERCIAL GENERAL LIABILITY
SP 03 01 14

**POLICY NUMBER:**  21-31120731-36                    **ENDORSEMENT NUMBER:**

**ISSUED TO:**      Michael Cetta, Inc.  Sparks Steak House

**BY:**  Admiral Indemnity Company

**EFFECTIVE DATE OF COVERAGE:**  06/26/2019
(12:01 A.M. Standard time at your mailing address
shown in the Declarations)

**THIS ENDORSEMENT CHANGES THIS POLICY.  PLEASE READ IT CAREFULLY.**

# DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT- REPRESENTATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**A.**   Section **IV - Commercial General Liability Conditions** is amended as follows:

    **1.**   Paragraph **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** is amended as follows:

        **a.**   Paragraph **b.** is deleted in its entirety and replaced by the following:

        **b.**   If a claim is made or "suit" is brought against any insured, you must:

            **(1)**   Immediately record the specifics of the claim or "suit" and the date received;

            **(2)**   Notify us as soon as practicable; and

            **(3)**   Promptly tender the defense of any claim made or "suit" to any other insurer that may have available insurance for an "occurrence" or an offense resulting in the claim or "suit."

        You must see to it that we and any other insurer receive written notice of the claim or "suit" as soon as practicable.

        **b.**   The following is added at the end thereof:

            **e.**   **Notice to Workers Compensation Insurer**

            Notice to the Named Insured's Workers Compensation insurer of an occurrence, offense, claim or suit, which is determined later to be covered by our insuring agreement, will not void our insuring agreement with you.  However, you must then notify us as soon as practical.

    **2.**   Paragraph **c.** of paragraph **6. Representations** is deleted in its entirety and replaced by the following:

        **c.**   We have issued this policy in reliance upon your representations.  However, your unintentional errors or omissions will not void our insuring agreement with you.

**COMMERCIAL GENERAL LIABILITY**
**SP 158 01 14**

**POLICY NUMBER:** 21-31120731-36                    **ENDORSEMENT NUMBER:**

**ISSUED TO:**   Michael Cetta, Inc.  Sparks Steak House

**BY:**  Admiral Indemnity Company

**EFFECTIVE DATE OF COVERAGE:**  06/26/2019
                                (12:01 A.M. Standard time at your mailing
                                address shown in the Declarations)

**THIS ENDORSEMENT CHANGES THIS POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - ASBESTOS HAZARD

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability**:

    **2.   Exclusions**

    This insurance does not apply to:

    **ASBESTOS HAZARD**

    **a.** "Bodily injury," "property damage," "personal and advertising injury" or medical payments which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "asbestos hazard" on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

    **b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, any "asbestos hazard," by any insured or by any other person or entity.

**B.** The following definition is added to **SECTION V - Definitions**:

    "Asbestos hazard" means an exposure or threat of exposure to the actual or alleged properties of asbestos and includes the mere presence of asbestos in any form.

COMMERCIAL GENERAL LIABILITY
SP 161 01 14

**POLICY NUMBER:** 21-31120731-36                **ENDORSEMENT NUMBER:**

**ISSUED TO:**    Michael Cetta, Inc.  Sparks Steak House

**BY:** Admiral Indemnity Company

**EFFECTIVE DATE OF COVERAGE:** 06/26/2019
(12:01 A.M. Standard time at your mailing
address shown in the Declarations)

### THIS ENDORSEMENT CHANGES THIS POLICY. PLEASE READ IT CAREFULLY.

# OTHER INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Paragraph **4. Other Insurance** of **Section IV - Commercial General Liability Conditions** is deleted in its entirety and replaced by the following:

**4.   Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a.   Excess Insurance**

**(1)** This insurance is in excess over:

**(a)** Any of the other insurance; whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk, or similar coverage for "your work";

**(ii)** That is Fire Insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos", or watercraft to the extent not subject to Exclusion **g.** of **Section I - Coverage A - Bodily Injury And Property Damage Liability**.

**(b)** Any other insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

**(c)** Any other valid and collectible insurance, including its defense cost provisions.  This insurance shall be specifically excess of any other policy by which another insurer has a duty to defend a "suit" for which this insurance may also apply.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit".  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

    **(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not brought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**b.  Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

Includes copyrighted material of ISO Properties, Inc., with its permission
**SP 161 01 14**

COMMERCIAL GENERAL LIABILITY
SP 27 NY 01 09

# EMPLOYEE BENEFIT LIABILITY COVERAGE PART FORM

## THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE.
## PLEASE READ THE ENTIRE FORM CAREFULLY.

Various provisions in this coverage part restrict coverage.  Read the entire coverage part carefully to determine rights, duties and what is and is not covered.

Throughout this coverage part the words "you" and "your" refer to the Named Insured in the Declarations.  The words "we," "us," and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under SECTION II - WHO IS AN INSURED.

Other words and phrases that appear in quotation marks have special meaning.  Refer to SECTION VI - DEFINITIONS.

**SECTION I - COVERAGE**

**EMPLOYEE BENEFIT LIABILITY**

1. **Insuring agreement.**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as "damages" because of any claim made against the insured by any employee, former employee, or employee's beneficiaries or legal representatives for injury caused by any negligent act, error or omission of the insured or of any other person for whose acts, errors, or omissions the insured is legally liable, in the administration of the insured's "employee benefit program."

   We will have the right and duty to defend any "suit" seeking these damages. But:

   **(1)** The amount we will pay for such "loss" is limited as described in SECTION III - LIMITS OF INSURANCE AND DEDUCTIBLE;

   **(2)** We may, at our discretion, investigate any "wrongful act" and claims or "suit" that may result; and

   **(3)** Our right and duty to defend end when we have used up the applicable limits of insurance in payment of judgments or settlements.

   **b.** This insurance applies to claims for damages first made, in writing, against any insured, during the coverage part period.

   **(1)** A claim will be deemed to have been made when written notice of such claim is received by any insured, by you or by us, whichever comes first.

   **(2)** All claims as a result of the same negligent act, error or omission will be deemed to have been made at the time of the first of these claims is made against any insured.

2. **Exclusions.**

   This insurance does not apply to:

   **a.** Any dishonest, fraudulent, criminal or malicious act.

   **b.** Libel, slander, discrimination or humiliation.

   **c.** Bodily injury, property damage, personal injury, or advertising injury.

   **d.** Any claim for failure of performance of contract by any insurer.

**e.** Any claim based upon the insured's failure to comply with any law concerning worker's compensation, unemployment insurance, social security, disability benefits or any similar law.

**f.** Any claim based upon:

    **(1)** Failure of stock shares to perform as represented by the insured;

    **(2)** Advice given by an insured to an employee to participate or not to participate in stock subscription plans.

**g.** Fines, civil penalties or taxes.

**h.** Any claim arising out of the insured's failure to procure or maintain adequate bonds or insurance on assets of any "employee benefit program."

**i.** For anything other than money damages.

## SUPPLEMENTARY PAYMENTS

We will pay with respect to any claim or suit we defend expenses we incur, even if any allegations of the suit are groundless, false or fraudulent.  Our expenses will not be deducted from the limits of insurance available to you.

## SECTION II - WHO IS AN INSURED

If you are designated in the Declarations as:

**1.** An individual, you and your spouse are insured, but only with respect to the conduct of a business of which you are the sole owner.

**2.** A partnership or joint venture, you are an insured.  Your members and your partners are also insured, but only with respect to the conduct of your business.

**3.** An organization other than a partnership or joint venture, you are an insured.  Your executive officers and directors are insured, but only with respect to their duties as your officers or directors.  Your stockholders are also insured, but only with respect to their liability as stockholders.

**4.** Your employees authorized to act in the administration of your "employee benefit program" are insureds, but only for acts within the scope of their employment with you.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured on the Declarations of this Coverage Form.

## SECTION III - LIMITS OF INSURANCE AND DEDUCTIBLE

**1.** The Limit of Insurance shown in the Declarations of this coverage and the rules below fix the most we will pay regardless of the number of:

    **a.** Insureds;

    **b.** Claims or "suits" brought; or

    **c.** Persons or organizations making claims or bringing "suits."

**2.** Our obligation to pay "damages" on your behalf applies to the amount of "damages" in excess of a deductible amount of $1,000 applicable to each claim.

The terms of this insurance, including those with respect to:

    **a.** Our right and duty to defend any "suits" seeking those damages; and

    **b.** Your duties in the event of an act, error or omission apply irrespective of the application of the deductible amount.

We will pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

The limits of this coverage part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the coverage part period shown in the declarations, unless the coverage part period is extended after the issuance for an additional period of less than 12 months.  In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - EXTENDED REPORTING PERIODS

**1.**  Refer to the Addenda to the Declarations for further provisions regarding Extended Reporting Periods.

**2.**  Extended Reporting Periods do not extend this coverage part's period.  They provide coverage for that period of time specified in the Addenda to the Declarations, during which claims first made after termination of coverage for wrongful acts that occur during the coverage period, or on or after the retroactive date (if any), will be considered made during the coverage part period.

Claims or suits for loss which we first received and recorded during the Automatic Extended Reporting Periods, if they are in effect, will be deemed to have been made on the last day of the coverage part period.

## SECTION V - EMPLOYEE BENEFIT LIABILITY CONDITIONS

**1.**  **Other Duties In The Event Of Incident, Wrongful Act, Claim or Suit.**

   **a.**  You must see to it that we are given written notice as soon as practicable of an incident or negligent act, error, or omission which may result in a claim.  Notice should include how, when and where the incident or negligent act took place.

   **b.**  When you first learn of a claim made or suit brought against any insured, you must see to it that we receive written notice of the claim or suit as soon as practicable.

   **c.**  You and any insured must:

   **(1)**  Immediately send us copies of any demands, notices, or legal papers received in connection with the claim or suit;

   **(2)**  Authorize us to obtain records and other information;

   **(3)**  Cooperate with us in the investigation, settlement or defense of the claim or suit; and

   **(4)**  Assist us, upon our request, in the enforcement of any right against any person or organization who may be liable to an insured because of a negligent act to which this insurance may also apply.

   **d.**  No person or organization will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

   **e.**  Notice given by or on behalf or you, or any other insured, or written notice by or on behalf of an injured person or any other claimant, to any agent of ours in New York State, with particulars sufficient to identify you, shall be considered notice to us.

**2.   Legal Action Against Us.**

   **a.**   Except as provided in Paragraph **b.**, no person or organization has a right under this coverage part:

      **(1)**   To join us as party or otherwise bring us into a "suit" asking for damages from an insured; or

      **(2)**   To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance.  An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

   **b.**   With respect to "wrongful act" claims, if we deny coverage or do not admit liability because an insured or the offended person, or someone acting for the offended person or other claimant fails to give us written notice as soon as practicable, then the offended person, someone acting for the offended person or other claimant may bring an action against us, provided the sole question is whether the denial of coverage or nonadmission of liability is based on the failure to provide timely notice.

   However, the offended person, someone acting for the offended person or other claimant may not bring an action if within 60 days after we deny coverage or do not admit liability, we or an insured:

      **(1)**   Brings an action to declare the rights of the parties under the policy; and

      **(2)**   Names the offended person, someone acting for the offended person or other claimant as a party to the action.

   **c.**   Subparagraph **a.** and **b.** above:

      **(1)**   Do not permit duplicate claims under multiple policy periods;

      **(2)**   Do not permit a late claim under a prior policy period, for example, when a subsequent policy's limits have been exhausted; or

      **(3)**   Do not apply to late notice when notice is given after the expiration of the policy period governing:

         **(a)**   The time during which the event occurred;

         **(b)**   The renewal of such policy; or

         **(c)**   Any extended reporting period under such policy.

**3.   Other Insurance.**

We will not cover a "loss" to the extent that payment for the loss is actually made under other insurance including other insurance under this policy.  Also, we will not cover a "loss" for which an insured can receive payment of indemnity under any policy that was in effect before this one.

If other valid and collectible insurance is available to the insured for a loss we cover, our obligations are limited as follows:

   **a.**   Primary Insurance

   This insurance is primary except when **b.** below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in **c.** below.

**b.** Excess Insurance

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c.** Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**4.   Representations.**

By accepting this policy you agree:

**a.** The statement in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon those representations.

**5.   Transfer Of Rights Of Recovery Against Other To Us.**

If you or an insured have rights to recover all or part of any payment we have made under this coverage part, those rights are transferred to us.  The insured must do nothing after loss to impair them.  At our request, the insured will bring suit or transfer those rights to us and help us enforce them.

**6.   Bankruptcy and Insolvency.**

Bankruptcy and Insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**7.   Transfer Of Duties When A Limit Of Insurance Is Used Up.**

**a.** If we conclude that, based on claims or "suits" which have been reported to us and to which this insurance may apply, the Aggregate Limit is likely to be used up in the payment of judgments or settlements, we will notify the first Named Insured, in writing, to that effect.

**b.** When a limit of insurance described in paragraph **a.** above has actually been used up in the payment of judgments or settlements:

**(1)** We will notify the first Named Insured, in writing, as soon as practicable, that:

**(a)** Such a limit has actually been used up; and

**(b)** Our duty to defend "suits" seeking damages subject to that limit has also ended.

**(2)** We will initiate, and cooperate in, the transfer of control, to any appropriate insured, of all claims and "suits" seeking damages which are subject to that limit and which are reported to us before that limit is used up.  That insured must cooperate in the transfer of control of said claims and "suits".

We agree to take such steps, as we deem appropriate, to avoid a default in, or continue the defense of, such "suits" until such transfer is completed, provided the appropriate insured is cooperating in completing such transfer.

We will take no action whatsoever with respect to any claim or "suit" seeking damages that would have been subject to that limit, had it not been used up, if the claim or "suit" is reported to us after that limit of insurance has been used up.

**(3)**    The first Named Insured, and any other insured involved in a "suit" seeking damages subject to that limit, must arrange for the defense of such "suit" within such time period as agreed to between the appropriate insured and us.  Absent any such agreement, arrangements for the defense of such "suit" must be made as soon as practicable.

**c.**    The first Named Insured will reimburse us for expenses we incur in taking those steps we deem appropriate in accordance with paragraph **b.(2)** above.

The duty of the first Named Insured to reimburse us will begin on:

**(1)**    The date on which the applicable limit of insurance is used up, if we sent notice in accordance with paragraph **a.** above; or

**(2)**    The date on which we sent notice in accordance with paragraph **b.(1)** above, if we did not send notice in accordance with paragraph **a.** above.

**d.**    The exhaustion of any limit of insurance by the payments of judgments or settlements, and the resulting end of our duty to defend, will not be affected by our failure to comply with any of the provisions of this Condition.

**8.    Failure To Give Notice**

The following provision is added and supersedes any provision to the contrary.

Failure to give notice to us as required under this Coverage Part shall not invalidate any claims made by the insured, offended person or any other claimant, unless the failure to provide such timely notice has prejudiced us.  However, no claim made by the insured, offended person or other claimant will be invalidated if it shall be shown not to have been reasonably possible to give such timely notice and that notice was given as soon as was reasonably possible thereafter.

**SECTION VI - DEFINITIONS**

**1.**    **"Damages"** means only those damages which are payable because of a claim to which this insurance applies.

**2.**    **"Employee Benefit Programs"** mean group life insurance, group accident or health insurance, profit sharing plans, pension, compensation insurance, unemployment compensation, social security and death benefits insurance.

**3.**    **"Administration"** means:

**a.**    Giving counsel, other than legal advice, to employees with respect to the employee benefit program;

**b.**    Interpreting the "employee benefit programs";

**c.**    The handling of records in connection with the employee benefit programs; and

    **d.**    Effecting enrollment, termination or cancellation of employees under the "employee benefit programs"

provided all such acts are authorized by you, but

**Administration** does **not** mean:

    **a.**    The exercise of or failure to exercise any authority or control respecting:

        **(1)**  The management of any "employee benefit program"; or

        **(2)**  The investment or disposition of any "employee benefit program" or its assets; or

    **b.** The rendering of any advice with respect to the investment of any "employee benefits program."

**4.**    **"Loss"** shall mean any amount which an insured is legally obligated to pay for any claims made against them by any employee, former employee, or employee's beneficiaries or legal representatives for injury caused by any negligent act, error or omission of the insured or of any other person for whose acts, errors or omissions the insured is legally liable in the administration of the insured's "employee benefit program." "Loss" shall include but not be limited to judgments and settlements; provided always, however, such "loss" shall not include fines or penalties imposed by law, nor matter which may be deemed uninsurable under the law pursuant to which this coverage part may be construed.

**5.**    **"Suit"** means a civil proceeding in which damages to which this insurance applies are alleged.  "Suit" includes:

    **a.**    An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

    **b.**    Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK DATA COMPROMISE COVERAGE
## RESPONSE EXPENSES AND DEFENSE AND LIABILITY

PLEASE NOTE THAT DEFENSE COSTS ARE CONTAINED WITHIN THE LIMIT OF LIABILITY AND SUBJECT TO THE DEDUCTIBLE.  THIS MEANS THAT THE LIMIT OF LIABILITY SPECIFIED IN THIS DATA COMPROMISE COVERAGE SHALL BE REDUCED, AND MAY BE COMPLETELY EXHAUSTED, BY DEFENSE COSTS.  IN THE EVENT THAT THE LIMIT OF LIABILITY IS EXHAUSTED, THE INSURER SHALL NOT BE LIABLE FOR FURTHER DEFENSE COSTS OR FOR ANY DAMAGES OR JUDGMENTS.  THIS DATA COMPROMISE COVERAGE IS WRITTEN ON A CLAIMS-MADE BASIS AND PROVIDES NO COVERAGE FOR CLAIMS ARISING OUT OF INCIDENTS, OCCURRENCES OR ALLEGED WRONGFUL ACTS WHICH TOOK PLACE PRIOR TO THE FIRST INCEPTION OF THIS COVERAGE.  THIS COVERAGE COVERS ONLY CLAIMS ACTUALLY MADE AGAINST THE INSURED WHILE THE COVERAGE REMAINS IN EFFECT, AND ALL COVERAGE UNDER THIS ENDORSEMENT CEASES UPON THE TERMINATION OF THE COVERAGE, EXCEPT FOR THE AUTOMATIC EXTENDED REPORTING PERIOD COVERAGE, UNLESS THE INSURED PURCHASES ADDITIONAL EXTENDED REPORTING PERIOD COVERAGE.  THIS COVERAGE PROVIDES AN AUTOMATIC EXTENDED REPORTING PERIOD OF SIXTY (60) DAYS.  A SUPPLEMENTAL EXTENDED REPORTING PERIOD OF ONE (1) YEAR MAY BE PURCHASED BY YOU FOR AN ADDITIONAL PREMIUM OF 98% OF THE FULL ANNUAL PREMIUM APPLICABLE TO THIS DATA COMPROMISE COVERAGE.  BECAUSE THE EXTENDED REPORTING PERIOD IS NOT UNLIMITED, POTENTIAL COVERAGE GAPS MAY ARISE UPON ITS EXPIRATION.  AS THIS DATA COMPROMISE COVERAGE IS WRITTEN ON A CLAIMS-MADE BASIS RATES ARE LOWER IN THE EARLIER YEARS THAN FOR AN OCCURRENCE POLICY, AND YOU SHOULD EXPECT SUBSTANTIAL ANNUAL PREMIUM INCREASES, INDEPENDENT OF OVERALL RATE INCREASES, UNTIL THE CLAIMS-MADE RELATIONSHIP REACHES MATURITY.

Coverage under this endorsement is subject to the following SCHEDULE:

## SECTION I - RESPONSE EXPENSES

**Data Compromise**
**Response Expenses Limit:**          $      100,000   Annual Aggregate

**Sublimits**
    **Named Malware (Sec. I)**     $      100,000
    **Forensic IT Review:**           $       10,000
    **Legal Review:**                 $       10,000
    **PR Services:**                  $        5,000   Any one "Personal Data Compromise

**Response Expenses Deductible:**      $        2,500   Any one "Personal Data Compromise"

## SECTION II - DEFENSE AND LIABILITY

**Data Compromise**
**Defense and Liability Limit:**       $      100,000   Each "Data Compromise Suit", subject to a
                                                  $100,000 Annual Aggregate Limit

**Sublimits**
    **Named Malware (Sec. II)**      $      100,000   Any one "Personal Data Compromise"

**Defense and Liability Deductible:**  $        2,500   Each "Data Compromise Suit"


Throughout this Coverage Endorsement (hereinafter referred to as Data Compromise Coverage), the words you and your refer to the Named Insured(s) shown in the Supplemental Declarations of this Data Compromise Coverage and any other person(s) or organization(s) qualifying as a Named Insured under this Data Compromise Coverage. The words we, us and our refer to the company providing this insurance

Other words and phrases that appear in quotations have special meaning.  Refer to paragraph **C. DEFINTIONS** of **SECTION III - EXCLUSIONS, ADDITIONAL CONDITIONS AND DEFINITIONS APPLICABLE TO ALL SECTIONS**.

The terms and conditions of the Cancellation Clause of the Common Policy Conditions and any amendment to such terms incorporated by endorsement are hereby incorporated herein and shall apply to coverage as is afforded by this Data Compromise Coverage, unless specifically stated otherwise in an endorsement(s) attached hereto.


# SECTION I - RESPONSE EXPENSES

## A.  DATA COMPROMISE COVERED CAUSE OF LOSS - SECTION I

Coverage under this **Data Compromise Coverage** endorsement applies only if all of the following conditions are met:

**1.**  There has been a "personal data compromise";

**2.**  Such "personal data compromise" is first discovered by you during the policy period for which this **Data Compromise Coverage** endorsement is applicable; and

**3.**  Such "personal data compromise" is reported to us within sixty (60) days after the date it is first discovered by you.

## B.  COVERAGE - SECTION I

If the three conditions listed above in **A. DATA COMPROMISE COVERED CAUSE OF LOSS** - **SECTION I** have been met, then we will provide coverage for the following expenses when they arise directly from the covered cause of loss and are necessary and reasonable. Coverages **4. Services to Affected Individuals** and **5. Public Relations (PR) Services** apply only if there has been a notification of the "personal data compromise" to "affected individuals" as covered under coverage **3. Notification to Affected Individuals**.

### 1.  Forensic IT Review

Professional information technologies review if needed to determine, within the constraints of what is possible and reasonable, the nature and extent of the "personal data compromise" and the number and identities of the "affected individuals".

This does not include costs to analyze, research or determine any of the following:

**a.** Vulnerabilities in systems, procedures or physical security;

**b.** Compliance with Payment Card Industry (PCI) or other industry security standards; or

**c.** The nature or extent of loss or damage to data that is not "personally identifying information" or "personally sensitive information".

If there is reasonable cause to suspect that a covered "personal data compromise" may have occurred, we will pay for costs covered under **Forensic IT Review**, even if it is eventually determined that there was no covered "personal data compromise". However, once it is determined that there was no covered "personal data compromise", we will not pay for any further costs.

**2. Legal Review**

Professional legal counsel review of the "personal data compromise" and how you should best respond to it.

If there is reasonable cause to suspect that a covered "personal data compromise" may have occurred, we will pay for costs covered under this **Legal Review** coverage, even if it is eventually determined that there was no covered "personal data compromise". However, once it is determined that there was no covered "personal data compromise", we will not pay for any further costs.

**3. Notification to Affected Individuals**

We will pay your necessary and reasonable costs to provide notification of the "personal data compromise" to "affected individuals".

**4. Services to Affected Individuals**

We will pay your necessary and reasonable costs to provide the following services to "affected individuals".

**a.** The following services apply to any "personal data compromise".

**(1) Informational Materials**

A packet of loss prevention and customer support information.

**(2) Help Line**

A toll-free telephone line for "affected individuals" with questions about the "personal data compromise". Where applicable, the line can also be used to request additional services as listed in **b.(1)** and **b.(2)**.

**b.** The following additional services apply to "personal data compromise" events involving "personally identifying information".

**(1) Credit Report and Monitoring**

A credit report and an electronic service automatically monitoring for activities affecting an individual's credit records. This service is subject to the "affected individual" enrolling for this service with the designated service provider.

**(2) Identity Restoration Case Management**

As respects any "affected individual" who is or appears to be a victim of "identity theft" that may reasonably have arisen from the "personal data compromise", the services of an identity restoration professional who will assist that "affected individual" through the process of correcting credit and other records and, within the constraints of what is possible and reasonable, restoring control over his or her personal identity.

**5. Public Relations (PR) Services**

Professional public relations firm review of and response to the potential impact of the "personal data compromise" on your business relationships.

This includes costs to implement public relations recommendations of such firm. This may include advertising and special promotions designed to retain your relationship with "affected individuals". However, we will not pay for promotions:

**a.** Provided to any of your directors or employees; or;

**b.** Costing more than $25 per "affected individual".

© 2006, 2009, 2012, 2014, 2016
includes material © ISO Services, Inc., with permission
as well as other copyrighted material

**C. LIMITS - SECTION I**

1. The most we will pay under **Section I - Response Expenses** coverage is the **Data Compromise Response Expenses Limit** indicated for this endorsement.

2. **The Data Compromise Response Expenses Limit** is an annual aggregate limit. This amount is the most we will pay for the total of all loss covered under **Section I - Response Expenses** arising out of all "personal data compromise" events which are first discovered by you during the present annual policy period. This limit applies regardless of the number of "personal data compromise" events discovered by you during that period.

3. A "personal data compromise" may be first discovered by you in one policy period but cause covered costs in one or more subsequent policy periods. If so, all covered costs arising from such "personal data compromise" will be subject to the **Data Compromise Response Expenses Limit** applicable to the policy period when the "personal data compromise" was first discovered by you.

4. The most we will pay under **Section I - Response Expenses** coverage for loss arising from any "malware-related compromise" is the **Named Malware (Sec. I)** sublimit indicated for this endorsement. For the purpose of the **Named Malware (Sec. I)** sublimit, all "malware-related compromises" that are caused, enabled or abetted by the same virus or other malicious code are considered to be a single "personal data compromise". This sublimit is part of, and not in addition to the **Data Compromise Response Expenses Limit**.

5. The most we will pay under **Forensic IT Review**, **Legal Review** and **Public Relations (PR) Services** coverages for loss arising from any one "personal data compromise" is the applicable sublimit for each of those coverages indicated for this endorsement. These sublimits are part of, and not in addition to, the **Data Compromise Response Expenses Limit**. **Public Relations (PR) Services** coverage is also subject to a limit per "affected individual" as described in **5. Public Relations (PR) Services**.

6. Coverage for **Services to Affected individuals** is limited to costs to provide such services for a period of up to one year from the date of the notification to the "affected individuals". Notwithstanding, coverage for **Identity Restoration Case Management** services initiated within such one year period may continue for a period of up to one year from the date such **Identity Restoration Case Management** services are initiated.

**D. DEDUCTIBLE - SECTION I**

Section I - **Response Expenses** coverage is subject to the **Response Expenses Deductible** indicated for this endorsement. You shall be responsible for such deductible amount as respects each "personal data compromise" covered under this endorsement.

# SECTION II - DEFENSE AND LIABILITY

**A. DEFENSE AND LIABILITY COVERED CAUSE OF LOSS - SECTION II**

Coverage under this **Data Compromise Coverage** endorsement applies only if all of the following conditions are met:

1. During the policy period or any **Extended Reporting Period** for which this **New York Data Compromise Coverage** endorsement is applicable, you receive notice of a data compromise suit which:

   a. arises from a personal data compromise that occurred after the first inception of this **New York Data Compromise Coverage** endorsement or another coverage substantially similar to that described in this endorsement and prior to the termination of coverage; and

   b. is brought by one or more affected individuals or by a governmental entity on behalf of one or more affected individuals.

2. Such "data compromise suit" is reported to us as soon as reasonably possible.

**B. COVERAGE - SECTION II**

If all of the conditions listed above in **A. DEFENSE AND LIABILITY COVERED CAUSE OF LOSS  SECTION II** have been met, then we will pay on your behalf for data compromise defense costs and data compromise liability directly arising from the covered cause of loss.

Any affected individual employed or otherwise affiliated with you and covered under this insurance during such employment or affiliation shall continue to be covered under this insurance, including any **Extended Reporting Period**, after such employment or affiliation has ceased for such person.

**C. LIMITS - SECTION II**

The most we will pay under **Section II - Defense and Liability** coverage (other than post-judgment interest) is the Data Compromise Defense and Liability Limit indicated for this endorsement.

© 2006, 2009, 2012, 2014, 2016
includes material © ISO Services, Inc., with permission
as well as other copyrighted material

The **Data Compromise Defense and Liability Limit** is an annual aggregate limit. This amount is the most we will pay for all loss covered under **Section II - Defense and Liability** (other than post-judgment interest) arising out of all "data compromise suits" of which you first receive notice during the present annual policy period or any Extended Reporting Periods. This limit applies regardless of the number of "data compromise suits" of which you first receive notice during that period.

You may first receive notice of a "data compromise suit" in one policy period but it may cause covered costs in one or more subsequent policy periods. If so, all covered costs arising from such "data compromise suit" (other than post-judgment interest) will be subject to the **Data Compromise Defense and Liability Limit** applicable to the policy period when notice of the "data compromise suit" was first received by you.

The most we will pay under **Section II - Defense and Liability** coverage for loss arising from any "malware-related compromise" is the **Named Malware (Sec. II)** sublimit indicated for this endorsement. For the purpose of the **Named Malware (Sec. II)** sublimit, all "malware-related compromises" that are caused, enabled or abetted by the same virus or other malicious code are considered to be a single "personal data compromise". This sublimit is part of, and not in addition to, the **Data Compromise Defense and Liability Limit**.

The **Data Compromise Defense and Liability Limit** for the **Extended Reporting Periods** (if applicable) shall be part of, and not in addition to, the **Data Compromise Defense and Liability Limit** for the immediately preceding policy period.

**D. DEDUCTIBLE - SECTION II**

**Section II  Defense and Liability** coverage is subject to the **Defense and Liability Deductible** indicated for this endorsement. You shall be responsible for such deductible amount as respects each data compromise suit covered under this endorsement. We may pay any part or all of the deductible to effect settlement of any data compromise suit or to defend any data compromise suit and, upon notification of the action taken, you shall promptly reimburse us for such part or all of the deductible we may have paid.


# SECTION III - EXCLUSIONS, ADDITIONAL CONDITIONS AND DEFINITIONS APPLICABLE TO BOTH SECTION I AND SECTION II

**A. EXCLUSIONS**

The following additional exclusions apply to this coverage:

We will not pay for costs arising from the following:

1. Your intentional or willful complicity in a "personal data compromise".

2. Any criminal, fraudulent or dishonest act, error or omission, or any intentional or knowing violation of the law by you.

3. Any "personal data compromise" first occurring prior to the first inception of this **Data Compromise Coverage** endorsement or the first inception of any coverage substantially similar to that described in this endorsement.

4. Costs to research or correct any deficiency. This includes, but is not limited to, any deficiency in your systems, procedures or physical security that may have contributed to a "personal data compromise".

5. Any fines or penalties. This includes, but is not limited to, fees or surcharges from affected financial institutions.

6. Any criminal investigations or proceedings.

7. Any extortion or blackmail. This includes, but is not limited to, ransom payments and private security assistance.

8. Any "personal data compromise" involving data that is being transmitted electronically, unless such data is encrypted to protect the security of the transmission.

9. Your reckless disregard for the security of "personally identifying information" or "personally sensitive information" in your care, custody or control.

10. That part of any "data compromise suit" seeking any non-monetary relief.

11. Any "data compromise suit" arising from a "personal data compromise" that first occurred prior to the first inception of this **Data Compromise Coverage** endorsement or the first inception of any coverage substantially similar to that described in this endorsement.

**B. ADDITIONAL CONDITIONS**

The following Additional Conditions apply to all coverages under this endorsement.

© 2006, 2009, 2012, 2014, 2016
includes material © ISO Services, Inc., with permission
as well as other copyrighted material

**1. Data Compromise Liability Defense**

**a.** We shall have the right and the duty to assume the defense of any applicable "data compromise suit" against you, even if the allegations in the "data compromise suit" are groundless, false or fraudulent. You shall give us such information and cooperation as we may reasonably require.

**b.** You shall not admit liability for or settle any "data compromise suit" or incur any defense costs without our prior written consent.

**c.** If you refuse to consent to any settlement recommended by us and acceptable to the claimant, we may then withdraw from your defense by tendering control of the defense to you. From that point forward, you shall, at your own expense, negotiate or defend such "data compromise suit" independently of us. Our liability shall not exceed the amount for which the claim or suit could have been settled if such recommendation was consented to, plus defense costs incurred by us, and defense costs incurred by you with our written consent, prior to the date of such refusal.

**d.** We shall not be obligated to pay any damages or defense costs, or to defend or continue to defend any "data compromise suit", after the **Data Compromise Defense and Liability Limit** has been exhausted.

**e.** We shall pay all interest on that amount of any judgment within the **Data Compromise Defense and Liability Limit** which accrues:

**(1)** after entry of judgment; and

**(2)** before we pay, offer to pay or deposit in court that part of the judgment within the **Data Compromise Defense and Liability Limit** or, in any case, before we pay or offer to pay the entire **Data Compromise Defense and Liability Limit**.

These interest payments shall be in addition to and not part of the **Data Compromise Defense and Liability Limit**.

**f.** You shall have the option to:

**(1)** Select a defense attorney;

**(2)** Consent to our choice of defense attorney, which consent shall not be unreasonably withheld;

**(3)** Participate in, and assist in the direction of and the defense of any claim; and

**(4)** Consent to a settlement, which consent shall not unreasonably be withheld.

**g.** We shall, upon your written request, provide an accounting of "data compromise defense costs" actually expended.

**h. Transfer of Control**

**(1)** If we conclude that, based on "data compromise suits" which have been reported to us and to which this insurance may apply, the **Data Compromise Liability Limit** is likely to be used up in the payment of judgments, settlements, or defense costs, we will notify you in writing, to that effect.

**(2)** When the **Data Compromise Liability Limit** has actually been used up in the payment of judgments, settlements, or defense costs:

**(a)** We will notify you in writing, as soon as practicable, that:

**(i)** Such **Data Compromise Liability Limit** has actually been used up; and

**(ii)** Our duty to defend "data compromise suits" seeking damages subject to the **Data Compromise Liability Limit** has also ended.

**(b)** We will initiate, and cooperate in, the transfer of control, to you, of all "data compromise suits" seeking damages which are subject to the **Data Compromise Liability Limit** and which are reported to us before the **Data Compromise Liability Limit** is used up. You must cooperate in the transfer of control of said "data compromise suits".

We agree to take such steps, as we deem appropriate, to avoid a default in, or continue the defense of, such "data compromise suits" until such transfer is completed, provided you are cooperating in completing such transfer.

We will take no action whatsoever with respect to any "data compromise suit" seeking damages that would have been subject to the **Data Compromise Liability Limit**, had it not been used up, if the "data compromise suit" is reported to us after the **Data Compromise Liability Limit** has been used up.

**(c)** You must arrange for the defense of such "data compromise suit" within such time period as agreed

© 2006, 2009, 2012, 2014, 2016
includes material © ISO Services, Inc., with permission
as well as other copyrighted material

to between you and us. Absent any such agreement, arrangements for the defense of such "data compromise suit" must be made as soon as practicable.

**2. Duties in the Event of a "Data Compromise Suit"**

   **a.** If a "data compromise suit" is brought against you, you must:

      **(1)** Immediately record the specifics of the "data compromise suit" and the date received;

      **(2)** Provide us with written notice, as soon as reasonably possible. Written notice given by or on behalf of the insured, or written notice by or on behalf of the injured person or any other claimant, to any licensed agent of the insurer in this state, with particulars sufficient to identify the insured, shall be deemed notice to the insurer.

      **(3)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "data compromise suit";

      **(4)** Authorize us to obtain records and other information;

      **(5)** Cooperate with us in the investigation, settlement or defense of the "data compromise suit";

      **(6)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to you because of loss to which this insurance may also apply; and

      **(7)** Not take any action, or fail to take any required action, that prejudices your rights or our rights with respect to such "data compromise suit".

   **b.** You may not, except at your own cost, voluntarily make a payment, assume any obligation, or incur any expense without our prior written consent.

   **c.** If you become aware of a claim or complaint that may become a "data compromise suit", you shall promptly inform us of such claim or complaint.

**3. Due Diligence**

You agree to use due diligence to prevent and mitigate costs covered under this endorsement. This includes, but is not limited to, complying with, and requiring your vendors to comply with, reasonable and industry-accepted protocols for:

   **a.** Providing and maintaining appropriate physical security for your premises, computer systems and hard copy files;

   **b.** Providing and maintaining appropriate computer and Internet security;

   **c.** Maintaining and updating at appropriate intervals backups of computer data;

   **d.** Protecting transactions, such as processing credit card, debit card and check payments; and

   **e.** Appropriate disposal of files containing "personally identifying information" or "personally sensitive information", including shredding hard copy files and destroying physical media used to store electronic data.

**4. Data Compromise Defense and Liability - Extended Reporting Periods**

   **a.** You shall have the right to the **Extended Reporting Periods** described in this section, in the event of a "termination of coverage".

   **b.** Within thirty (30) days after termination of coverage, we will advise you in writing of the **Automatic Extended Reporting Period** coverage and the availability of, the premium for, and the importance of purchasing additional extended reporting period coverage.

   **c.** If a "termination of coverage" has occurred, you shall have the right to the following:

      **(1) Automatic Extended Reporting Period**

      An **Automatic Extended Reporting Period** of sixty (60) days after the effective date of the "termination of coverage" at no additional premium in which to give to us written notice of a "data compromise suit" for any "personal data compromise" occurring prior to "termination of coverage" for this **Data Compromise Coverage** and which is otherwise covered by this **Data Compromise Coverage**; and

      **(2) Supplemental Extended Reporting Period**

      **(a)** Upon payment of an additional premium of 98% of the full annual premium applicable to this **Data Compromise Coverage** based on the rates in effect at the beginning of the policy period, a **Supplemental Extended Reporting Period** of one (1) year immediately following the effective date of the "termination of coverage" in which to give to us written notice of a "data compromise liability

© 2006, 2009, 2012, 2014, 2016
includes material © ISO Services, Inc., with permission
as well as other copyrighted material

suit" for any "personal data compromise" occurring prior to "termination of coverage" of this **Data Compromise Coverage** and which is otherwise covered by this **Data Compromise Coverage.**

**(b)** To obtain the **Supplemental Extended Reporting Period**, you must request it in writing and pay the additional premium due, before the later of sixty (60) days after the effective date of the "termination of coverage" or thirty (30) days after we have advised you in writing of the automatic extended reporting period and the availability of, the premium for and the importance of purchasing additional extended reporting period coverage. The additional premium for the **Supplemental Extended Reporting Period** shall be fully earned at the inception of the **Supplemental Extended Reporting Period**. If we do not receive the written request as required, you may not exercise this right at a later date.

**(c)** This insurance, provided during the **Supplemental Extended Reporting Period**, is excess over any other valid and collectible insurance that begins or continues in effect after the **Supplemental Extended Reporting Period** becomes effective, whether the other insurance applies on a primary, excess, contingent, or any other basis.

**(d)** The **Supplemental Extended Reporting Period** will be available upon "termination of coverage" if:

**(i)** You have been placed in liquidation or bankruptcy or permanently cease operations;

**(ii)** You or your designated trustee does not purchase extended reporting period coverage; or

**(iii)** You or your designated trustee requests the extended reporting period coverage within 120 days of the "termination of coverage". We will charge the person for whom extended reporting period coverage is provided a premium commensurate with such coverage.

**5. Legal Advice**

We are not your legal advisor. Our determination of what is or is not covered under this **Data Compromise Coverage** endorsement does not represent advice or counsel from us about what you should or should not do.

**6. Pre-Notification Consultation**

You agree to consult with us prior to the issuance of notification to "affected individuals". We assume no responsibility under this **Data Compromise Coverage** for any services promised to "affected individuals" without our prior agreement. If possible, this pre-notification consultation will also include the designated service provider(s) as agreed to under **B. Additional Conditions, 7. Service Providers**. You must provide the following at our pre-notification consultation with you:

**a.** The exact list of "affected individuals" to be notified, including contact information.

**b.** Information about the "personal data compromise" that may appropriately be communicated with "affected individuals".

**c.** The scope of services that you desire for the "affected individuals". For example, coverage may be structured to provide fewer services in order to make those services available to more "affected individuals" without exceeding the available **Data Compromise Response Expenses Limit**.

**7. Service Providers**

**a.** We will only pay under this **Data Compromise Coverage** for services that are provided by service providers approved by us. You must obtain our prior approval for any service provider whose expenses you want covered under this **Data Compromise Coverage**. We will not unreasonably withhold such approval.

**b.** Prior to the Pre-Notification Consultation described in **B. Additional Condition, 6. Pre-Notification Consultation** above, you must come to agreement with us regarding the service provider(s) to be used for the **Notification to Affected Individuals** and **Services to Affected Individuals**. We will suggest a service provider. If you prefer to use an alternate service provider, our coverage is subject to the following limitations:

**(1)** Such alternate service provider must be approved by us;

**(2)** Such alternate service provider must provide services that are reasonably equivalent or superior in both kind and quality to the services that would have been provided by the service provider we had suggested; and

**(3)** Our payment for services provided by any alternate service provider will not exceed the amount that we would have paid using the service provider we had suggested.

**8. Services**

The following conditions apply as respects any services provided to you or any "affected individual" by us, our designees or any service firm paid for in whole or in part under this **Data Compromise Coverage**:

© 2006, 2009, 2012, 2014, 2016
includes material © ISO Services, Inc., with permission
as well as other copyrighted material

    **a.**  The effectiveness of such services depends on your cooperation and assistance.

    **b.**  All services may not be available or applicable to all individuals. For example, "affected individuals" who are minors or foreign nationals may not have credit records that can be provided or monitored. Service in Canada will be different from service in the United States and Puerto Rico in accordance with local conditions.

    **c.**  We do not warrant or guarantee that the services will end or eliminate all problems associated with the covered events.

    **d.**  You will have a direct relationship with the professional service firms paid for in whole or in part under this coverage. Those firms work for you.

**9. Failure to Give Notice**

The failure to give any notice required to be given by this endorsement within the time prescribed herein shall not invalidate any claim made by you, an injured person or any other claimant, unless the failure to provide timely notice has prejudiced us. The failure to give any notice required to be given by this endorsement within the time prescribed herein shall not invalidate any claim made by you, an injured person or any other claimant if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible thereafter.

If the insurer disclaims liability or denies coverage based upon the failure to provide timely notice, then the injured person or other claimant may maintain an action directly against such insurer, in which the sole question is the insurers disclaimer or denial based on the failure to provide timely notice, unless within sixty (60) days following such disclaimer or denial, you or the insurer:

    **a.**  Initiates an action to declare the rights of the parties under the insurance policy; or

    **b.**  Names the injured person or other claimant as a party to the action.

**10. Bankruptcy or Insolvency of the Insured**

Your insolvency or bankruptcy, or, if you are a sole proprietor, the insolvency of your estate, shall not release us from the payment of damages for injury sustained or loss occasioned during the life of and within the coverage of this endorsement.

**C. DEFINITIONS**

With respect to the provisions of this endorsement only, the following definitions are added:

**1.** "Affected Individual" means any person who is your current, former or prospective customer, client, member, owner, director or employee and whose "personally identifying information" or "personally sensitive information" is lost, stolen, accidentally released or accidentally published by a "personal data compromise" covered under this endorsement. This definition is subject to the following provisions:

    **a.**  "Affected individual" does not include any business or organization. Only an individual person may be an "affected individual".

    **b.**  An "affected individual" must have a direct relationship with your interests as insured under this policy. The following are examples of individuals who would not meet this requirement:

        **(1)**  If you aggregate or sell information about individuals as part of your business, the individuals about whom you keep such information do not qualify as "affected individuals". However, specific individuals may qualify as "affected individuals" for another reason, such as being an employee of yours.

        **(2)**  If you store, process, transmit or transport records, the individuals whose "personally identifying information" or "personally sensitive information" you are storing, processing, transmitting or transporting for another entity do not qualify as "affected individuals". However, specific individuals may qualify as "affected individuals" for another reason, such as being an employee of yours.

        **(3)**  You may have operations, interests or properties that are not insured under this policy. Individuals who have a relationship with you through such other operations, interests or properties do not qualify as "affected individuals". However, specific individuals may qualify as "affected individuals" for another reason, such as being an employee of the operation insured under this policy.

**2.** "Data Compromise Defense Costs" means expenses resulting solely from the investigation, defense and appeal of any "data compromise suit" against you. Such expenses must be reasonable and necessary. They will be incurred by us or paid by us on your behalf. They do not include your salaries or your loss of earnings. They do include premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond.

© 2006, 2009, 2012, 2014, 2016
includes material © ISO Services, Inc., with permission
as well as other copyrighted material

3. "Data Compromise Liability"

   a. "Data compromise liability" means the following, when they arise from a "data compromise suit":

      (1) Damages, judgments or settlements to "affected individuals";

      (2) Defense costs added to that part of any judgment paid by us, when such defense costs are awarded by law or court order; and

      (3) Pre-judgment interest on that part of any judgment paid by us.

   b. "Data compromise liability" does not mean:

      (1) Damages, judgments or settlements to anyone who is not an "affected individual";

      (2) Civil or criminal fines or penalties imposed by law;

      (3) Punitive or exemplary damages;

      (4) The multiplied portion of multiplied damages;

      (5) Taxes; or

      (6) Matters which may be deemed uninsurable under the applicable law.

4. "Data Compromise Suit"

   a. "Data Compromise Suit" means a civil proceeding in which it is alleged that one or more "affected individuals" suffered damages arising from:

      (1) A personal data compromise of which affected individuals were notified in compliance with applicable laws or regulations; or

      (2) The violation of a governmental statute or regulation arising from a personal data compromise of which the affected individuals were notified in compliance with applicable laws and regulations.

   However, if you first discover that a personal data compromise has occurred following receipt of a claim or notice of suit, then notification to affected individuals in compliance with applicable laws and regulations is not required as a prerequisite of the **Data Compromise Defense and Liability** coverage.

   b. In order to qualify as a "data compromise suit", such proceeding must be brought in the United States of America, Puerto Rico or Canada.

   c. "Data compromise suit" includes:

      (1) An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent;

      (2) Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent; or

      (3) A written demand for money, when such demand could reasonably result in a civil proceeding as described in this definition.

   d. "Data compromise suit" does not mean any demand or action brought by or on behalf of someone who is:

      (1) Your director or officer;

      (2) Your owner or part-owner; or

      (3) A holder of your securities;

   in their capacity as such, whether directly, derivatively, or by class action. "Data compromise suit" will include proceedings brought by such individuals in their capacity as "affected individuals", but only to the extent that the damages claimed are the same as would apply to any other "affected individual".

   e. "Data compromise suit" does not mean any demand or action brought by an organization, business, institution, or any other party that is not an "affected individual" or governmental entity. "Data compromise suit" does not mean any demand or action brought on behalf of an organization, business, institution, governmental entity or any other party that is not an "affected individual".

5. "Identity Theft" means the fraudulent use of "personally identifying information". This includes fraudulently using such information to establish credit accounts, secure loans, enter into contracts or commit crimes.

"Identity theft" does not include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

6.  "Malware-Related Compromise" means a "personal data compromise" that is caused, enabled or abetted by a virus or other malicious code that, at the time of the "personal data compromise", is named and recognized by the CERT® Coordination Center, McAfee®, Secunia, Symantec or other comparable third party monitors of malicious code activity.

7.  "Personal Data Compromise" means the loss, theft, accidental release or accidental publication of "personally identifying information" or "personally sensitive information" as respects one or more "affected individuals". If the loss, theft, accidental release or accidental publication involves "personally identifying information", such loss, theft, accidental release or accidental publication must result in or have the reasonable possibility of resulting in the fraudulent use of such information. This definition is subject to the following provisions:

   a.  At the time of the loss, theft, accidental release or accidental publication, the "personally identifying information" or "personally sensitive information" need not be at the insured premises but must be in the direct care, custody or control of:

      (1)  You; or

      (2)  A professional entity with which you have a direct relationship and to which you (or an "affected individual" at your direction) have turned over (directly or via a professional transmission or transportation provider) such information for storage, processing, transmission or transportation of such information.

   b.  "Personal data compromise" includes disposal or abandonment of "personally identifying information" or "personally sensitive information" without appropriate safeguards such as shredding or destruction, subject to the following provisions:

      (1)  The failure to use appropriate safeguards must be accidental and not reckless or deliberate; and

      (2)  Such disposal or abandonment must take place during the time period for which this **Data Compromise Coverage** endorsement is effective.

   c.  "Personal data compromise" includes situations where there is a reasonable cause to suspect that such "personally identifying information" or "personally sensitive information" has been lost, stolen, accidentally released or accidentally published, even if there is no firm proof.

   d.  All incidents of "personal data compromise" that are discovered at the same time or arise from the same cause will be considered one "personal data compromise".

8.  "Personally Identifying Information" means information, including health information, that could be used to commit fraud or other illegal activity involving the credit, access to health care or identity of an "affected individual". This includes, but is not limited to, Social Security numbers or account numbers.

   "Personally identifying information" does not mean or include information that is otherwise available to the public, such as names and addresses.

9.  "Personally Sensitive Information" means private information specific to an individual the release of which requires notification of "affected individuals" under any applicable law.

   "Personally sensitive information" does not mean or include "personally identifying information".

10. "Termination of Coverage" means, whether made by the insurer or the insured at any time:

   a.  Cancellation or nonrenewal of a policy; or

   b.  Decrease in limits, reduction of coverage, increased deductible or self-insured retention, new exclusion, or any other change in coverage less favorable to the insured.


All other provisions of this policy apply.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK CYBERONE COVERAGE
## COMPUTER ATTACK AND NETWORK SECURITY LIABILITY

**PLEASE NOTE THAT DEFENSE COSTS ARE CONTAINED WITHIN THE LIMIT OF LIABILITY AND SUBJECT TO THE DEDUCTIBLE.  THIS MEANS THAT THE LIMIT OF LIABILITY SPECIFIED IN THIS CYBERONE COVERAGE SHALL BE REDUCED, AND MAY BE COMPLETELY EXHAUSTED, BY DEFENSE COSTS. IN THE EVENT THAT THE LIMIT OF LIABILITY IS EXHAUSTED, THE INSURER SHALL NOT BE LIABLE FOR FURTHER DEFENSE COSTS OR FOR ANY DAMAGES OR JUDGMENTS. THIS CYBERONE COVERAGE IS WRITTEN ON A CLAIMS-MADE BASIS AND PROVIDES NO COVERAGE FOR CLAIMS ARISING OUT OF INCIDENTS, OCCURRENCES OR ALLEGED WRONGFUL ACTS WHICH TOOK PLACE PRIOR TO THE FIRST INCEPTION OF THIS COVERAGE. THIS COVERAGE COVERS ONLY CLAIMS ACTUALLY MADE AGAINST THE INSURED WHILE THE COVERAGE REMAINS IN EFFECT, AND ALL COVERAGE UNDER THIS ENDORSEMENT CEASES UPON THE TERMINATION OF THE COVERAGE, EXCEPT FOR THE AUTOMATIC EXTENDED REPORTING PERIOD COVERAGE, UNLESS THE INSURED PURCHASES ADDITIONAL EXTENDED REPORTING PERIOD COVERAGE. THIS COVERAGE PROVIDES AN AUTOMATIC EXTENDED REPORTING PERIOD OF SIXTY (60) DAYS.  A SUPPLEMENTAL EXTENDED REPORTING PERIOD OF ONE (1) YEAR MAY BE PURCHASED BY YOU FOR AN ADDITIONAL PREMIUM OF 98% OF THE FULL ANNUAL PREMIUM APPLICABLE TO THIS CYBERONE COVERAGE. BECAUSE THE EXTENDED REPORTING PERIOD IS NOT UNLIMITED, POTENTIAL COVERAGE GAPS MAY ARISE UPON ITS EXPIRATION.  AS THIS CYBERONE COVERAGE IS WRITTEN ON A CLAIMS-MADE BASIS RATES ARE LOWER IN THE EARLIER YEARS THAN FOR AN OCCURRENCE POLICY, AND YOU SHOULD EXPECT SUBSTANTIAL ANNUAL PREMIUM INCREASES, INDEPENDENT OF OVERALL RATE INCREASES, UNTIL THE CLAIMS-MADE RELATIONSHIP REACHES MATURITY.**

Coverage under this endorsement is subject to the following SCHEDULE:

**SECTION I - COMPUTER ATTACK**

| | | |
|---|---|---|
| **Computer Attack Limit** | $ _____ 100,000 | Annual Aggregate |
| **Sublimits** | | |
| **Data Re-creation** | $ _____ 0 | |
| **Loss of Business** | $ _____ 0 | |
| **Public Relations** | $ _____ 0 | Per Occurrence |
| **Computer Attack Deductible** | $ _____ 5,000 | Per Occurrence |

**SECTION II - NETWORK SECURITY LIABILITY**

| | | |
|---|---|---|
| **Network Security Liability Limit** | $ _____ 100,000 | Per Occurrence, Subject to a $100,000 Annual Aggregate Limit |
| **Network Security Liability Deductible** | $ _____ 5,000 | Per Occurrence |

**Network Security Liability Optional Coverage**
    **3rd Party Business Information** _____ EXCLUDED

The following is added as an Additional Coverage. If this is being endorsed onto a multi-section form, it is added to the Property section. This form may also be endorsed onto a Commercial General Liability coverage form as a matter of convenience for policy issuance. In such a case, the coverage and service provided under this endorsement are separate from the Commercial General Liability coverage. This **CyberOne Coverage** form includes reimbursement of specified legal expenses as well as defense and liability against certain claims, but such coverage is subject to the **Network Security Liability Limit**. The limit and deductible applicable to this **CyberOne Coverage** form are separate from the limits and deductibles that apply to the coverage to which the endorsement attaches:

# SECTION I - COMPUTER ATTACK

**A.   COVERED CAUSE OF LOSS - SECTION I**

This **Computer Attack** coverage applies only if all of the following conditions are met:

**1.**   There has been a "computer attack";

**2.**   Such "computer attack" is first discovered by you during the policy period for which this endorsement is applicable; and

**3.**   Such "computer attack" is reported to us as soon as reasonably possible.

**B.   COVERAGE - SECTION I**

If all three of the conditions listed above in **A. COVERED CAUSE OF LOSS - SECTION I** have been met, then we will provide you the following coverages for loss directly arising from such "computer attack".

**1.   Data Restoration**

We will pay your necessary and reasonable "data restoration costs".

**2.   Data Re-creation**

We will pay your necessary and reasonable "data re-creation costs".

**3.   System Restoration**

We will pay your necessary and reasonable "system restoration costs".

**4.   Loss of Business**

We will pay your actual "business income loss" and your necessary and reasonable "extra expenses".

5. **Public Relations**

If you suffer a covered "business income loss", we will pay for the services of a professional public relations firm to assist you in communicating your response to the "computer attack" to the media, the public and your customers, clients or members.

**C.  LIMITS - SECTION I**

1.  The most we will pay under **Computer Attack** coverage is the **Computer Attack Limit** indicated for this endorsement.

2.  The most we will pay under **Data Re-creation** coverage for loss (including "business income loss" and "extra expense" related to data re-creation activities) arising from any one "computer attack" is the **Data Re-creation** sublimit indicated for this endorsement. This sublimit is part of, and not in addition to, the **Computer Attack Limit**. If no sublimit is shown or is shown as "Excluded" on the SCHEDULE at the top of this endorsement, then the **Data Re-creation** coverage will be considered to have a sublimit of $0.

3.  The most we will pay under **Loss of Business** coverage for loss arising from any one "computer attack" is the **Loss of Business** sublimit indicated for this endorsement. This sublimit is part of, and not in addition to, the **Computer Attack Limit**. If no sublimit is shown or is shown as "Excluded" on the SCHEDULE at the top of this endorsement, then the **Loss of Business** coverage will be considered to have a sublimit of $0.

4.  The most we will pay under **Public Relations** coverage for loss arising from any one "computer attack" is the **Public Relations** sublimit indicated for this endorsement. This sublimit is part of, and not in addition to, the **Computer Attack Limit**. If no sublimit is shown or is shown as "Excluded" on the SCHEDULE at the top of this endorsement, then the **Public Relations** coverage will be considered to have a sublimit of $0.

5.  The **Computer Attack Limit** is an annual aggregate limit. This amount is the most we will pay for the total of all loss covered under **Section I - Computer Attack** arising out of all "computer attack" events which are first discovered by you during the present annual policy period. This limit applies regardless of the number of "computer attack" events occurring during that period.

6.  A "computer attack" may be first discovered by you in one policy period but it may cause covered costs in one or more subsequent policy periods. If so, all covered costs arising from such "computer attack" will be subject to the **Computer Attack Limit** applicable to the policy period when the "computer attack" was first discovered by you.

**D.  DEDUCTIBLE - SECTION I**

The **Computer Attack** coverage is subject to the **Computer Attack Deductible** indicated in the SCHEDULE for this endorsement. You shall be responsible for the applicable deductible amount as respects loss arising from each "computer attack" covered under this endorsement.

# SECTION II - NETWORK SECURITY LIABILITY

**A.  COVERED CAUSE OF LOSS - SECTION II**

This **Section II - Network Security Liability** coverage applies only if all of the following conditions are met:

1.  You first receive notice of a "network security liability suit" during the policy period for which this endorsement is applicable or any **Extended Reporting Periods**;

2.  The "network security liability suit" arises from a propagation of malware, denial of service attack, or if applicable, loss, release or disclosure of business data that occurred after the first inception of this **CyberOne coverage** form or another coverage substantially similar to that described in this endorsement and prior to "termination of coverage"; and

3.  Such "network security liability suit" is reported to us as soon as reasonably possible..

**B.  COVERAGES PROVIDED - SECTION II**

If both of the conditions listed above in **A. COVERED CAUSE OF LOSS - SECTION II** have been met, then we will provide you the following coverages for loss directly arising from such "network security liability suit".

1.  **Defense**

We will pay on your behalf necessary and reasonable "network security liability defense costs".

**2. Settlement Costs**

We will pay on your behalf necessary and reasonable "network security liability settlement costs".

Any person employed or otherwise affiliated with you and covered under this insurance during such employment or affiliation shall continue to be covered under this insurance, including any extended reporting period, after such employment or affiliation has ceased for such person.

**C. LIMITS - SECTION II**

1. Except for post-judgment interest, the most we will pay under **Section II - Network Security Liability** coverage is the **Network Security Liability Limit** indicated for this endorsement.

2. The **Network Security Liability Limit** is a per occurrence limit applicable to a single "network security liability suit".  The **Section II - Network Security Liability** coverage is also subject to an annual aggregate limit. This amount is the most we will pay for the total of all loss covered under **Section II - Network Security Liability** (other than post-judgment interest) arising out of all "network security liability suits" of which you first receive notice during the present annual policy period or any **Extended Reporting Periods**. This limit applies regardless of the number of "network security liability suits" of which you first receive notice during that period.

3. You may first receive notice of a "network security liability suit" in one policy period but it may cause covered costs in one or more subsequent policy periods. If so, all covered costs arising from such "network security liability suit" (other than post-judgment interest) will be subject to the **Network Security Liability Limit** applicable to the policy period when notice of the "network security liability suit" was first received by you.

4. The **Network Security Liability Limit** for the **Extended Reporting Periods** (if applicable) shall be part of, and not in addition to, the **Network Security Liability Limit** for the immediately preceding policy period.

**D. DEDUCTIBLE - SECTION II**

The **Section II - Network Security Liability** coverage is subject to the **Network Security Liability Deductible** indicated in the SCHEDULE for this endorsement. You shall be responsible for the applicable deductible amount as respects loss arising from each "network security liability suit" covered under this endorsement.  We may pay any part or all of the deductible to effect settlement of any "network security liability suit" or to defend any "network security liability suit" and, upon notification of the action taken, you shall promptly reimburse us for such part or all of the deductible as we may have paid.

# SECTION III - EXCLUSIONS, ADDITIONAL CONDITIONS AND DEFINITIONS APPLICABLE TO ALL SECTIONS

**A. EXCLUSIONS**

The following additional exclusions apply to this coverage:

We will not pay for costs or loss arising from the following:

1. Loss to the internet, an internet service provider, or any computer or computer system that is not owned or leased by you and operated under your control.

2. Costs to research or correct any deficiency.

3. Any fines or penalties.

4. Any criminal investigations or proceedings.

5. Any threat, extortion or blackmail. This includes, but is not limited to, ransom payments and private security assistance.

6. Your intentional or willful complicity in a covered loss event or your reckless disregard for the security of your computer system or data.

7. Any criminal, fraudulent or dishonest act, error or omission, or any intentional or knowing violation of the law by you.

8. Any "computer attack" occurring prior to the first inception of this **CyberOne Coverage** form endorsement or any coverage substantially similar to that described in this endorsement.

9. That part of any "network security liability suit" seeking any non-monetary relief.

10. Any "network security liability suit" arising from a propagation of malware, denial of service attack, or if applicable, loss, release or disclosure of business data that occurred prior to the first inception of this **CyberOne Coverage** form or any coverage substantially similar to that described in this endorsement.

11. The propagation or forwarding of malware, including viruses, worms, Trojans, spyware and keyloggers in connection with hardware or software created, produced or modified by you for sale, lease or license to third parties.

## B. ADDITIONAL CONDITIONS

The following Additional Conditions apply to all coverages under this endorsement.

### 1. Due Diligence

You agree to use due diligence to prevent and mitigate costs covered under this endorsement. This includes, but is not limited to, complying with reasonable and industry-accepted protocols for:

**a.** Providing and maintaining appropriate computer and internet security; and

**b.** Maintaining and updating at appropriate intervals backups of computer data.

### 2. Duties in the Event of a "Network Security Liability Suit"

If a "network security liability suit" is brought against you, you must:

**a.** Immediately record the specifics of the "network security liability suit" and the date received;

**b.** Provide us with written notice, as soon as reasonably possible.  Written notice given by you or on your behalf, or written notice by or on behalf of the injured person or any other claimant, to any of our licensed agents in this state with particulars sufficient to identify you, shall be deem notice to us;

**c.** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "network security liability suit";

**d.** Authorize us to obtain records and other information;

**e.** Cooperate with us in the investigation, settlement or defense of the "network security liability suit";

**f.** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to you because of loss to which this insurance may also apply; and

**g.** Not take any action, or fail to take any required action, that prejudices your rights or our rights with respect to such "network security liability suit".

### 3. Network Security Liability - Extended Reporting Periods

**a.** In the event of a "termination of coverage", you shall have the right to the **Extended Reporting Periods** described in this section.

**b.** If a "termination of coverage" has occurred, you shall have the right to the following:

**(1) Automatic Extended Reporting Period**

An **Automatic Extended Reporting Period** of sixty (60) days after the effective date of "termination of coverage" at no additional premium in which to give us written notice of a "network security liability suit" for any propagation of malware, denial of service attack, or if applicable, loss, release or disclosure of business data occurring before the end of the coverage period for this **CyberOne Coverage** form and which is otherwise covered by this **CyberOne Coverage** form; and

**(2) Supplemental Extended Reporting Period**

**(a)** Upon payment of an additional premium of 98% of the full annual premium applicable to this **CyberOne Coverage** form, based on the rates in effect at the beginning of the policy period, a **Supplemental Extended Reporting Period** of one (1) year immediately following the effective date of "termination of coverage" in which to give to us written notice of a "network security liability suit" for any propagation of malware, denial of service attack, or if applicable, loss, release or disclosure of business data occurring before the end of the coverage period for this **CyberOne Coverage** form and which is otherwise covered by this **CyberOne Coverage** form.

**(b)** To obtain the **Supplemental Extended Reporting Period**, you must request it in writing and pay the additional premium due, before the later of sixty (60) days after the effective date of "termination of coverage" or thirty (30) days after we have advised you in writing of the **Automatic Extended Reporting Period** and the availability of, the premium for and the

importance of purchasing the **Supplemental Extended Reporting Period** coverage. The additional premium for the **Supplemental Extended Reporting Period** shall be fully earned at the inception of the **Supplemental Extended Reporting Period**. If we do not receive the written request as required, you may not exercise this right at a later date.

**(c)** Within 30 days after termination of coverage, we will advise you in writing of the **Automatic Extended Reporting Period** coverage and the availability of, the premium for, and the importance of purchasing additional extended reporting period coverage.

**(d)** This insurance, provided during the **Supplemental Extended Reporting Period**, is excess over any other valid and collectible insurance that begins or continues in effect after the **Supplemental Extended Reporting Period** becomes effective, whether the other insurance applies on a primary, excess, contingent, or any other basis.

**(e)** The **Supplemental Extended Reporting Period** will be available upon "termination of coverage" if:

**(i)** You have been placed in liquidation or bankruptcy or permanently cease operations;

**(ii)** You or your designated trustee does not purchase **Extended Reporting Period** coverage; or

**(iii)** You or your designated trustee requests the **Extended Reporting Period** coverage within 120 days of the "termination of coverage".  We will charge the person for whom the **Extended Reporting Period** coverage is provided a premium commensurate with such coverage.

**4. Network Security Liability Defense**

**a.** We shall have the right and the duty to assume the defense of any applicable "network security liability suit" against you, even if the allegations in the "network security liability suit" are groundless, false or fraudulent. You shall give us such information and cooperation as we may reasonably require.

**b.** You shall not admit liability for or settle any "network security liability suit" or incur any defense costs without our prior written consent.

**c.** If you refuse to consent to any settlement recommended by us and acceptable to the claimant, we may then withdraw from your defense by tendering control of the defense to you. From that point forward, you shall, at your own expense, negotiate or defend such "network security liability suit" independently of us. Our liability shall not exceed the amount for which the claim or suit could have been settled if such recommendation was consented to, plus defense costs incurred by us, and defense costs incurred by you with our written consent, prior to the date of such refusal.

**d.** We shall not be obligated to pay any damages or defense costs, or to defend or continue to defend any "network security liability suit", after the **Network Security Liability Limit** has been exhausted.

**e.** We shall pay all interest on that amount of any judgment within the **Network Security Liability Limit** which accrues:

**(1)** After entry of judgment; and

**(2)** Before we pay, offer to pay or deposit in court that part of the judgment within the **Network Security Liability Limit** or, in any case, before we pay or offer to pay the entire **Network Security Liability Limit**.

These interest payments shall be in addition to and not part of the **Network Security Liability Limit**.

**f.** You shall have the option to:

**(1)** Select the defense attorney or consent to our choice of defense attorney, which consent shall not be unreasonably withheld;

**(2)** Participate in and assist in the direction of any defense of any claim; and

**(3)** Consent to a settlement, which consent shall not be unreasonably withheld.

**g.** We shall, upon your written request, provide an accounting of "network security liability defense costs" actually expended.

**h.  Transfer of Control**

**(1)** If we conclude that, based on "network security liability suits" which have been reported to us and to which this insurance may apply, the **Network Security Liability Limit** is likely to be used up in the payment of judgments, settlements, or defense costs, we will notify you in writing, to that effect.

**(2)** When the **Network Security Liability Limit** has actually been used up in the payment of judgments, settlements, or defense costs:

**(a)** We will notify you in writing, as soon as practicable, that:

**(i)** Such **Network Security Liability Limit** has actually been used up; and

**(ii)** Our duty to defend "network security liability suits" seeking damages subject to the **Network Security Liability Limit** has also ended.

**(b)** We will initiate, and cooperate in, the transfer of control, to you, of all "network security liability suits" seeking damages which are subject to the **Network Security Liability Limit** and which are reported to us before the **Network Security Liability Limit** is used up. You must cooperate in the transfer of control of said "network security liability suits".

We agree to take such steps, as we deem appropriate, to avoid a default in, or continue the defense of, such "network security liability suits" until such transfer is completed, provided you are cooperating in completing such transfer.

We will take no action whatsoever with respect to any "network security liability suit" seeking damages that would have been subject to the Network Security Liability Limit, had it not been used up, if the "network security liability suit" is reported to us after the **Network Security Liability Limit** has been used up.

**(c)** You must arrange for the defense of such "network security liability suit" within such time period as agreed to between you and us. Absent any such agreement, arrangements for the defense of such "network security liability suit" must be made as soon as practicable.

**5.  Other Data Coverage in This Policy**

Some elements of this **CyberOne Coverage** form may also be covered under the policy to which this endorsement is attached. If so, this **CyberOne Coverage** form will apply as excess over other valid and collectible insurance. If loss payment has been made under the policy for the same event, the amount of such payment will count towards the deductible that applies to this **CyberOne Coverage** form.

**6.  Services**

The following conditions apply as respects any services provided to you by any service firm provided or paid for in whole or in part under this endorsement:

**a.** The effectiveness of such services depends on your cooperation and assistance.

**b.** We do not warrant or guarantee that the services will end or eliminate all problems associated with the covered events.

**7.  Failure to Give Notice**

The failure to give any notice required to be given by this endorsement within the time prescribed herein shall not invalidate any claim made by you, an injured person or any other claimant, unless the failure to provide timely notice has prejudiced us. The failure to give any notice required to be given by this endorsement within the time prescribed herein shall not invalidate any claim made by you, an injured person or any other claimant if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible thereafter.

If the insurer disclaims liability or denies coverage based upon the failure to provide timely notice, then the injured person or other claimant may maintain an action directly against such insurer, in which the sole question is the insurer's disclaimer or denial based on the failure to provide timely notice, unless within sixty (60) days following such disclaimer or denial, you or the insurer:

**a.** Initiates an action to declare the rights of the parties under the insurance policy; and

**b.** Names the injured person or other claimant as a party to the action.

**8. Bankruptcy or Insolvency of the Insured**

Your insolvency or bankruptcy, or, if you are a sole proprietor, the insolvency of your estate, shall not release us from the payment of damages for injury sustained or loss occasioned during the life of and within the coverage of this endorsement.

**C. DEFINITIONS**

With respect to the provisions of this endorsement only, the following definitions are added:

**1.** "Business Income Loss" means the sum of the:

**a.** Net income (net profit or loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal and necessary operating expenses incurred, including employee payroll,

actually lost by you during the "period of restoration".

**2.** "Computer Attack" means one of the following involving a computer or other electronic hardware that is owned or leased by you and operated under your control:

**a.** Unauthorized Access - meaning the gaining of access to your computer system by an unauthorized person or persons;

**b.** Malware Attack - meaning damage to your computer system or data arising from malicious code, including viruses, worms, Trojans, spyware and keyloggers. This does not mean damage from shortcomings or mistakes in legitimate electronic code or damage from code installed on your computer system during the manufacturing process; or

**c.** Denial of Service Attack - meaning a deliberate act to prevent third parties from gaining access to your computer system through the internet in a manner in which they are legally entitled.

**3.** "Data Re-creation Costs"

**a.** "Data re-creation costs" means the costs of an outside professional firm hired by you to research, re-create and replace data that has been lost or corrupted and for which there is no electronic source available or where the electronic source does not have the same or similar functionality to the data that has been lost or corrupted.

**b.** "Data re-creation costs" also means your actual "business income loss" and your necessary and reasonable "extra expenses" arising from the lack of the lost or corrupted data during the time required to research, re-create and replace such data.

**c.** "Data re-creation costs" does not mean costs to research, re-create or replace:

**(1)** Software programs or operating systems that are not commercially available; or

**(2)** Data that is obsolete, unnecessary or useless to you.

**4.** "Data Restoration Costs"

**a.** "Data restoration costs" means the costs of an outside professional firm hired by you to replace electronic data that has been lost or corrupted. In order to be considered "data restoration costs," such replacement must be from one or more electronic sources with the same or similar functionality to the data that has been lost or corrupted.

**b.** "Data restoration costs" does not mean costs to research, restore or replace:

**(1)** Software programs or operating systems that are not commercially available; or

**(2)** Data that is obsolete, unnecessary or useless to you.

**5.** "Extra Expense" means the additional cost you incur to operate your business during the "period of restoration" over and above the cost that you normally would have incurred to operate your business during the same period had no "computer attack" occurred.

**6.** "Network Security Liability Defense Costs"

**a.** "Network security liability defense costs" means reasonable and necessary expenses resulting solely from the investigation, defense and appeal of any "network security liability suit" against you. Such expenses may be incurred by us or paid by us on your behalf. Such expenses may include premiums for any appeal bond, attachment bond or similar bond. However, we have no obligation to apply for or furnish such bond.

**b.** "Network security liability defense costs" does not mean your salaries or your loss of earnings.

 © 2013 Includes copyrighted material of Insurance Services Office, Inc., with its permission

7. **"Network Security Liability Settlement Costs"**

   **a.** "Network security liability settlement costs" means the following, when they arise from a "network security liability suit":

      **(1)** Damages, judgments or settlements;

      **(2)** Defense costs added to that part of any judgment paid by us, when such defense costs are awarded by law or court order; and

      **(3)** Pre-judgment interest on that part of any judgment paid by us.

   **b.** "Network security liability settlement costs" does not mean:

      **(1)** Civil or criminal fines or penalties imposed by law;

      **(2)** Punitive or exemplary damages;

      **(3)** The multiplied portion of multiplied damages;

      **(4)** Taxes; or

      **(5)** Matters which may be deemed uninsurable under the applicable law.

8. **"Network Security Liability Suit"**

   **a.** "Network security liability suit" means a civil proceeding against you in which damages are alleged. Such proceeding must be brought in the United States of America, Puerto Rico or Canada. Such proceeding must be based on an allegation that a negligent security failure or weakness with respect to a computer or other electronic hardware that is owned or leased by you and operated under your control allowed one or more of the following to happen:

      **(1)** The unintended propagation or forwarding of malware, including viruses, worms, Trojans, spyware and keyloggers. Malware does not include shortcomings or mistakes in legitimate electronic code.

      **(2)** The unintended abetting of a denial of service attack against one or more other systems.

   **b.** If the **3rd Party Business Information** line under **Network Security Liability Optional Coverage** on the SCHEDULE at the top of this endorsement is marked as "Included", then "network security liability suit" also means a civil proceeding against you in which damages are alleged which is brought in the United States of America, Puerto Rico or Canada and which is based on an allegation that a negligent security failure or weakness with respect to a computer or other electronic hardware that is owned or leased by you and operated under your control allowed the loss, release or disclosure of business data that is owned by or proprietary to a third party. This does not include personally identifying information or other information that is sensitive or personal to individuals. If the **3rd Party Business Information** line under **Network Security Liability Optional Coverage** on the SCHEDULE at the top of this endorsement is marked as "Excluded" or is blank, then "network security liability suit" does not include such suits.

   **c.** "Network security liability suit" includes the following:

      **(1)** An arbitration or alternative dispute resolution proceeding that you are required to submit to or which we agree you should submit to; or

      **(2)** A written demand for money, when such demand could reasonably result in a civil proceeding as described in this definition.

   **d.** "Network security liability suit" does not mean any demand or action alleging or arising from property damage or bodily injury.

   **e.** "Network security liability suit" does not mean any demand or action brought by or on behalf of someone who is:

      **(1)** Your director or officer;

      **(2)** Your owner or part-owner; or

      **(3)** A holder of your securities;

      in their capacity as such, whether directly, derivatively, or by class action.

9. "Period of Restoration" means the period of time that begins at the time that the "computer attack" is discovered by you and continues until the earlier of:

      **a.** The date that all data restoration, data re-creation and system restoration directly related to the "computer attack" has been completed; or

      **b.** The date on which such data restoration, data re-creation and system restoration could have been completed with the exercise of due diligence and dispatch.

**10.** "System Restoration Costs"

      **a.** "System restoration costs" means the costs of an outside professional firm hired by you to do any of the following in order to restore your computer system to its pre- "computer attack" level of functionality:

          **(1)** Replace or reinstall computer software programs;

          **(2)** Remove any malicious code; and

          **(3)** Configure or correct the configuration of your computer system.

      **b.** "System restoration costs" does not mean:

          **(1)** Costs to increase the speed, capacity or utility of your computer system;

          **(2)** Labor of your employees;

          **(3)** Any costs in excess of the actual cash value of your computer system; or

          **(4)** Costs to repair or replace hardware.

**11.** "Termination of Coverage" means, whether made by the insurer or the insured at any time:

      **a.** Cancellation or nonrenewal of a policy; or

      **b.** Decrease in limits, reduction of coverage, increased deductible or self-insured retention, new exclusion, or any other change in coverage less favorable to the insures.

All other provisions of this policy apply.

COMMERCIAL GENERAL LIABILITY
SP 92 01 14

**POLICY NUMBER:**   21-31120731-36          **ENDORSEMENT NUMBER:**

**ISSUED TO:**     Michael Cetta, Inc., Sparks Steak House

**BY:**    Admiral Indemnity Company

**EFFECTIVE DATE OF COVERAGE:**     06/26/2019
(12:01 A.M. Standard time at your mailing address
shown in the Declarations)

## THIS ENDORSEMENT CHANGES THIS POLICY.  PLEASE READ IT CAREFULLY.

# RESTAURANT EXTENSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Location # | Address of Premises |
|------------|---------------------|
| 1 | 210-220 E 46th St, New York, New York,  10017-2903 |

With respect to the locations specified in the schedule above:

**A.  Broadened Named Insured**

   **1.**   The Named Insured reflected on the Declarations is amended to include any organization, other than a partnership or joint venture, over which you maintain ownership or majority interest on the effective date of this policy. However, coverage for any such organization will cease as of the date, during the policy period, that you no longer maintain ownership of, or majority interest in, such organization.

   **2.**   Paragraph **3.a.** of **Section II - Who Is An Insured** is deleted in its entirety and replaced by the following:

   **a.**   Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier, unless reported to us in writing within 180 days.

   **3.**   This provision **A.** does not apply to any person or organization for which coverage is excluded by endorsement.

**B.  Damage To Premises Rented To You Extension**

   **1.**   The final paragraph of **Section I - Coverages, Coverage A - Bodily Injury And Property Damage Liability** is deleted in its entirety and replaced by the following:

   Exclusions **c.** through **n.** do not apply to "property damage" to premises rented to you, or temporarily occupied by you with permission of the owner, caused by:

   **a.**   Fire;

   **b.**   Explosion;

   **c.**   Lightning;

   **d.**   Smoke resulting from such fire, explosion, or lightning; or

   **e.**   Leakage from automatic fire protective systems.

   A separate limit of insurance applies to this coverage as described in **Section III - Limits Of Insurance**.

**2.** This insurance does not apply to "property damage" to premises rented to you, or temporarily occupied by you with permission of the owner, caused by:

   **a.** Rupture, bursting, or operation of pressure relief devices;

   **b.** Rupture or bursting due to expansion or swelling of the contents of any building or structure, caused by or resulting from water;

   **c.** Explosion of steam boilers, steam pipes, steam engines, or steam turbines.

**3.** Paragraph **6.** of **Section III - Limits Of Insurance** is deleted in its entirety and replaced by the following:

   **6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises while rented to you, or temporarily occupied by you with permission of the owner, caused by fire, explosion, lightning, smoke resulting such fire, explosion, or lightning or leakage from automatic fire protective systems.. The Damage To Premises Rented To You Limit will apply to all damage proximately caused by the same "occurrence", whether such damage results from fire, explosion, lightning, smoke resulting such fire, explosion, or lightning or leakage from automatic fire protective systems, or any combination of these.

   The Damage To Premises Rented To You Limit will be the higher of:

   **a.** $500,000; or

   **b.** The amount shown on the Declarations for Damage To Premises Rented To You Limit.

**4.** For purposes of this coverage, paragraph **9.a.** of **Section V - Definitions** does not include that portion of the contract for a lease of premises that indemnifies any person or organization for damage to premises while rented to you, or temporarily occupied by you with permission of the owner, caused by:

   **a.** Fire;

   **b.** Explosion;

   **c.** Lightning;

   **d.** Smoke resulting from such fire, explosion, or lightning; or

   **e.** Leakage from automatic fire protective systems

**5.** This provision **B.** does not apply if coverage for Damage To Premises Rented To You is excluded by endorsement.

**C. Blanket Additional Insured - Managers or Lessors of Premises**

**1.** **Section II - Who Is An Insured** is amended to include as an additional insured, any person(s) or organization(s) with whom you have agreed in a written contract, executed prior to loss, to name as an additional insured, but only with respect to liability arising out of the ownership, maintenance or use of that part of any premises leased to you, subject to the following provisions:

**2.** This insurance does not apply to:

   **a.** Any "occurrence" which takes place after you cease to be a tenant in that premises;

   **b.** Structural alterations, new construction or demolition operations performed by or on behalf of such additional insured; or

   **c.** Any premises for which coverage is excluded by endorsement.

**3.** The insurance afforded to such additional insured:

   **a.** only applies to the extent permitted by law; and

   **b.** will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**4.** With respect to the insurance afforded to these additional insureds, **Section III - Limits of Insurance** is amended to include the following at the end thereof:

   The most we will pay on behalf of the additional insured is the amount of insurance:

   **a.** Required by the contract or agreement; or

   **b.** Available under the applicable Limits of Insurance shown in the Declarations;

   whichever is less.

   This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**D. Blanket Additional Insured - Lessors of Leased Equipment**

**1.** **Section II - Who Is An Insured** is amended to include as an additional insured, any person(s) or organization(s) with whom you have agreed in a written contract, executed prior to loss, to name as an

additional insured, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such additional insured, subject to the following provisions:

**2.** This insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

**3.** The insurance afforded to such additional insured:

   **a.** only applies to the extent permitted by law; and

   **b.** will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**4.** With respect to the insurance afforded to these additional insureds, **Section III - Limits of Insurance** is amended to include the following at the end thereof:

   The most we will pay on behalf of the additional insured is the amount of insurance:

   **a.** Required by the contract or agreement; or

   **b.** Available under the applicable Limits of Insurance shown in the Declarations;

   whichever is less.

   This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**E. Blanket Additional Insured - Vendors**

**1.** **Section II - Who Is An Insured** is amended to include as an additional insured, any person(s) or organization(s) with whom you have agreed in a written contract, executed prior to loss, to name as an additional insured, but only with respect to liability for "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business, subject to the following provisions:

**2.** This insurance afforded the vendor does not apply to:

   **a.** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

   **b.** Any express warranty unauthorized by you;

   **c.** Any physical or chemical change in the product made intentionally by the vendor;

   **d.** Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

   **e.** Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

   **f.** Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

   **g.** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

   **h.** "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf.  However, this exclusion does not apply to:

   **(1)** The exceptions contained in paragraphs **2.d.** or **2.f.** above; or

   **(2)** Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**3.** This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

**4.** The insurance afforded to such additional insured:

   **a.** only applies to the extent permitted by law; and

   **b.** will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**5.** With respect to the insurance afforded to these vendors, **Section III - Limits of Insurance** is amended to include the following at the end thereof:

   The most we will pay on behalf of the vendor is the amount of insurance:

    **a.** Required by the contract or agreement; or

    **b.** Available under the applicable Limits of Insurance shown in the Declarations;

    whichever is less.

    This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**F. Blanket Additional Insured - Mortgagees, Assignees or Receivers**

  **1.** **Section II - Who Is An Insured** is amended to include as an additional insured, any person(s) or organization(s) with whom you have agreed in a written contract, executed prior to loss, to name as an additional insured, but only with respect to liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you, subject to the following provisions:

  **2.** This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

  **3.** The insurance afforded to such additional insured:

    **a.** only applies to the extent permitted by law; and

    **b.** will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

  **4.** With respect to the insurance afforded to these additional insureds, **Section III - Limits of Insurance** is amended to include the following at the end thereof:

    The most we will pay on behalf of the additional insured is the amount of insurance:

    **a.** Required by the contract or agreement; or

    **b.** Available under the applicable Limits of Insurance shown in the Declarations;

    whichever is less.

    This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**G. Incidental Medical Malpractice**

  **1.** **Section V - Definitions** is amended as follows:

    **a.** Paragraph **3.** is amended to include "incidental medical malpractice injury".

    **b.** The following is added at the end thereof:

    "Incidental medical malpractice injury" means bodily injury, mental anguish, sickness or disease sustained by a person, including death resulting from any of these at any time, arising out of the rendering of, or failure to render, the following services:

      **(1)** Medical, surgical, dental, laboratory, x-ray or nursing service or treatment, advice or instruction, or the related furnishing of food or beverages;

      **(2)** The furnishing or dispensing of drugs or medical, dental, or surgical supplies or appliances;

      **(3)** First aid, or

      **(4)** "Good Samaritan services", meaning those medical services rendered or provided in an emergency and for which no remuneration is demanded or received.

  **2.** Paragraph **2.a.(1)(d)** of **Section II - Who Is An Insured**, does not apply to any registered nurse, licensed practical nurse, emergency medical technician or paramedic employed by you, but only while performing the services described in paragraph **1.b.** above and while acting within the scope of their employment by you. Any "employees" rendering "Good Samaritan services" will be deemed to be acting within the scope of their employment.

  **3.** Paragraph **2.** of **Coverage A - Bodily Injury And Property Damage Liability** is amended to include the following:

    Liability arising out of the willful violation of a penal statute or ordinance relating to the sale of pharmaceuticals by or with the knowledge or consent of the insured.

  **4.** For the purposes of determining the applicable limits of insurance, any act or omission, together with all related acts or omissions in the furnishing of the services described in paragraph **1.b.** above to any one person, will be considered one "occurrence".

  **5.** This provision **G.** does not apply if you are in the business or occupation of providing any of the services described in paragraph **1.b.** above.

  **6.** The insurance provided by this provision **G.** shall be excess over any other valid and collectible insurance available to the insured, whether primary, excess, contingent or on any other basis, except for insurance purchased specifically by you to be excess of this policy.

**H. Personal Injury - Assumed By Contract**

1. Paragraph **2.e.** of **Coverage B - Personal And Advertising Injury Liability** is deleted in its entirety and replaced by the following:

   **e.** **Contractual Liability**

   "Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to:

   **(1)** Liability for damages that the insured would have in the absence of the contract or agreement; or

   **(2)** Liability for "personal injury," arising out of the offenses of false arrest, detention or imprisonment, undertaken in that part of the contract or agreement pertaining to your business in which you assume the "tort liability" of another.  The contract or agreement must be made prior to the offense. "Tort liability" means a liability that would be imposed by law in the absence of any contract or agreement.

2. This provision **H.** does not apply if **Coverage B - Personal And Advertising Injury Liability** is excluded by endorsement.

**I. Extension of Coverage - Bodily Injury**

Paragraph **3.** of **Section V - Definitions** is deleted in its entirety and replaced by the following:

3. "Bodily injury" means physical:

   **a.** Injury;

   **b.** Sickness; or

   **c.** Disease;

   sustained by a person, including resulting death, humiliation, mental anguish, mental injury or shock at any time. All such loss shall be deemed to occur at the time of the physical injury, sickness or disease that caused it.

**J. Injury to Co-Employee**

1. It is agreed that your "employees" are insureds with respect to "bodily injury" to a co-"employee" in the course of the co-"employee's" employment by you, provided that this coverage for your "employees" does not apply to acts outside the scope of their employment by you or while performing duties unrelated to the conduct of your business.

2. Paragraphs **2.a.(1)(a)**, **(b)**, **(c)** and **3.a.** of **Section II - Who Is An Insured** do not apply to "bodily injury" for which insurance is provided under paragraph **1.** above.

**K. Non-Owned Watercraft**

1. Paragraph **2.g.(2)** of **Coverage A - Bodily Injury And Property Damage Liability** is deleted in its entirety and replaced by the following:

   **(2)** A watercraft you do not own that is:

      **(a)** Less than 51 feet long; and

      **(b)** Not being used to carry persons or property for a charge.

2. This provision **K.** applies to any person who, with your expressed or implied consent, either uses or is responsible for the use of a watercraft.

3. The insurance provided by this provision **K.** shall be excess over any other valid and collectible insurance available to the insured, whether primary, excess, contingent or on any other basis, except for insurance purchased specifically by you to be excess of this policy.

**L. Increased Supplementary Payments**

**Supplementary Payments - Coverages A And B** is amended as follows:

1. The limit referenced in paragraph **1.b.** is increased from $250 to $2,500.

2. The limit referenced in paragraph **1.d.** is increased from $250 a day to $500 a day.

**M. Unintentional Omission**

1. Paragraph **6.** of **Section IV - Commercial General Liability Conditions** is amended to include the following at the end thereof:

   The unintentional omission of, or unintentional error in, any information provided by you shall not prejudice your rights under this insurance. However, this provision **M.** does not affect our right to collect additional premium or to exercise our right of cancellation or nonrenewal in accordance with applicable state insurance laws, codes or regulations.

**N. Damage To Customers' Autos**

1.  Paragraph **2.j.** of **Coverage A - Bodily Injury And Property Damage Liability** is amended to include the following at the end thereof:

    Paragraph **(4)** does not apply to any customer's auto while parked or being parked in the course of your restaurant business. A customer's auto does not include an "auto" owned by or rented or loaned to you or an insured. The insurance afforded under this provision applies only to the amount of damages in excess of $500 to each "auto" sustaining "property damage."

**O. Revised Definition of Personal Injury**

**Section V - Definitions** is amended to include the following at the end thereof:

"Personal injury" means an act of discrimination or humiliation that results in injury to the feelings or reputation of a natural person provided that acts that result in discrimination are based solely on either disparate impact (as opposed to disparate treatment) or vicarious liability and are not:

   **a.**  Intentionally committed by you, or by any partner or executive officer;

   **b.**  Committed at your or any partner's or executive officer's direction; or

   **c.**  Directly or indirectly related to the employment or prospective employment or termination of employment of any person or persons by any insured.

**P. Medical Payments Coverage - Revised Products-Completed Operations Hazard Exclusion**

Paragraph **2.f.** of **Coverage C - Medical Payments** does not apply to "bodily injury" occurring on premises you own or rent and arising out of "your product."

COMMERCIAL AUTO
CA DS 83 00 04 10

Issuing Company: Admiral Indemnity Company

# BUSINESS AUTO DECLARATIONS

**Policy No.:** 21-31120731 - 36
Previous Policy No.: 21-31120731-35

**ITEM ONE**

| NAMED INSURED AND ADDRESS | AGENCY NAME AND ADDRESS | 8414 |
|---|---|---|
| Michael Cetta, Inc. | (631) 421-9355 | |
| Sparks Steak House | JLNY Group LLC | |
| 210-220 E 46th St | 80 Crossways Park Dr, Suite 210 | |
| aka 733 Third Avenue | Woodbury, NY 11797-2047 | |
| New York, NY 10017-2903 | | |

**POLICY PERIOD**

The Policy Period is from 06/26/2019 to 06/26/2020 12:01 A.M. Standard Time at your Mailing Address shown above.

**Form of Business:** Corporation

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

| **Premium shown is payable at inception** | Included |
|---|---|

**Audit Period (If Applicable):**

**Endorsements Attached To This Policy:**

*See attached "Schedule of Forms and Endorsements"*

| **Countersignature Of Authorized Representative** |
|---|
| **Name:** |
| **Title:** |
| **Signature:** |
| **Date:** |

**Note** Officer's facsimile signatures may be inserted here, on the policy cover or elsewhere at the company's option.

Policy No.:     21-31120731 - 36

**ITEM TWO**

**Schedule of Coverages and Covered Autos**

This policy provides only those coverages where a charge is shown in the premium column below.  Each of these coverages will apply only to those "autos" shown as covered "autos".  **"Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos Section of the Business Auto Coverage Form next to the name of the coverage.**

| Coverages & Limits | Covered Autos | Premium | |
|---|---|---|---|
| **Liability**<br>Limit = $1,000,000 | 8, 9 | $ | Included |
| **Personal Injury Protection**<br>**(Or Equivalent No-Fault Coverage)**<br>Limit = Separately Stated In Each PIP Endorsement<br>Minus $ *See Schedule* Deductible. | | $ | |
| **Added Personal Injury Protection**<br>**(Or Equivalent Added No-Fault Coverage)**<br>Limit = Separately Stated In Each Added PIP Endorsement | | $ | |
| **Extraordinary Medical Benefits**<br>Limit = Separately Stated In Each Extraordinary Medical Benefit<br>Endorsement | | $ | |
| **Auto Medical Payments**<br>Limit = $ | | $ | |
| **Medical Expense And income Loss Benefits (Virginia Only)**<br>Limit = Separately Stated In Each Medical Expense And<br>                 Income Loss Benefits Endorsement | | $ | |
| **Uninsured Motorists**<br>Limit = Separately Stated In Each UM Endorsement | | $ | |
| **Underinsured Motorists**<br>**(When not Included In Uninsured Motorists Coverage)**<br>Limit = Separately Stated In Each UIM Endorsement | | $ | |
| **Supplementary Uninsured Motorists**<br>Limit =<br>The maximum amount payable under SUM Coverage shall be<br>the policys SUM limits reduced and thus offset by motor vehicle<br>Bodily injury liability insurance policy or bond payments received<br>from, or no behalf of, any negligent party involved in the accident<br>as specified in the SUM endorsement. | | $ | |
| **Physical Damage Comprehensive Coverage**<br>Limit = Actual Cash Value Or Cost Of Repair, Whichever Is Less,<br>                 Minus $  *See Schedule*     Deductible For Each Covered<br>                 Auto, But No Deductible Applies To Loss Caused By Fire<br>                 Or Lightning.  See Item Four For Hired Or Borrowed Autos. | | $ | |
| **Physical Damage Specified Causes Of Loss Coverage**<br>Limit = Actual Cash Value Or Cost Of Repair, Whichever Is Less,<br>                 Minus $  *See Schedule*     Deductible For Each Covered<br>                 Auto, For Loss Caused By Mischief Or Vandalism.<br>                 See Item Four For Hired Or Borrowed Autos | | $ | |
| **Physical Damage Collision Coverage**<br>Limit = Actual Cash Value Or Cost Of Repair, Whichever Is Less,<br>                 Minus $  *See Schedule*     Deductible For Each Covered<br>                 Auto.  See Item Four For Hired Or Borrowed Autos | | $ | |
| **Physical Damage Towing and Labor**<br>Limit = $  *See Schedule*     For Each Disablement of a Private<br>                 Passenger Auto. | | $ | |
| **Premium For Endorsements** | | $ | |
| **Estimated Total Premium\*** | | $ | Included |
| \*This Policy May Be Subject to Final Audit. | | | |

**Policy No.:**       21-31120731 - 36

**ITEM THREE  Schedule of Covered Autos You Own**

| Veh No. | DESCRIPTION | | | Original Cost New | Stated Amount |
|---|---|---|---|---|---|
| | Year | Model | VIN Number | | |
| | | | | $ | $ |
| | | | | $ | $ |
| | | | | $ | $ |
| | | | | $ | $ |

| Veh No. | CLASSIFICATION | | | | TERRITORY (Principal Garage Location) |
|---|---|---|---|---|---|
| | Code | Radius (Miles) | Use | Size (GVW) | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| Coverages | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Veh No. | CSL Limit* | Personal Injury Protection | | Extra Med Limit* | Med Pay Limit | Medical Expense & Income Loss | Uninsured (UM) Limit* | Underinsured (UIM) Limit* | SUM Limit* |
| | | Ded | Addl | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

*Limits Shown Are In Thousands

| PREMIUMS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Veh No. | CSL | Basic PIP | Addl PIP | Extra Med | Med Pay | Med Exp & Income | UM | UIM | SUM |
| | $ | $ | $ | $ | $ | $ | $ | $ | $ |
| | $ | $ | $ | $ | $ | $ | $ | $ | $ |
| | $ | $ | $ | $ | $ | $ | $ | $ | $ |
| | $ | $ | $ | $ | $ | $ | $ | $ | $ |

| Veh No. | PHYSICAL DAMAGE COVERAGE | | | | PHYSICAL DAMAGE PREMIUMS | | | | Total Premium |
|---|---|---|---|---|---|---|---|---|---|
| | Deductibles | | | Towing & Labor Limit | Comp | Specified Cause of Loss | Coll | Towing & Labor | |
| | Comp | Specified Cause of Loss | Coll | | | | | | |
| | | | | $ | $ | $ | $ | $ |
| | | | | $ | $ | $ | $ | $ |
| | | | | $ | $ | $ | $ | $ |
| | | | | $ | $ | $ | $ | $ |

### <u>SCHEDULE OF LOSS PAYEES</u>

**Veh No.**       **Except for Towing, All Physical Damage Loss Is Payable To You And The Loss Payee Named Below As Interests May Appear At The Time Of The Loss**

Policy No.:      21-31120731 - 36

**ITEM FOUR**

**Schedule Of Hired Or Borrowed Covered Auto Coverage And Premiums**

| | | Liability Coverage - Rating Basis, Cost Of Hire | | | | |
|---|---|---|---|---|---|---|
| **State** | **Estimated Cost Of Hire For Each State** | **Rate Per Each $100 Cost Of Hire** | **Factor (If Liability Coverage Is Primary)** | | **Premium** | |
| NY | $    If Any | $ | | $ | Included | |
| | | Liability Coverage Rating Basis, Number Of Days (For Mobile Or Farm Equipment Rental Period Basis) | | | | |
| **State** | **Estimated Number Of Days Equipment Will Be Rented** | **Base Premium** | **Factor** | | **Premium** | |
| | | | | $ | | |
| | | | **Total Premium:** | $ | Included | |

Cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

**Physical Damage Coverage**

| State | Coverage | Limits Of Insurance | | |
|---|---|---|---|---|
| | **Comprehensive** | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus $                                    Deductible For Each Covered Auto, But No Deductible Applies To Loss Caused By Fire Or Lightning. | | |
| | | **Estimated Annual Cost Of Hire** | **Rate Per Each $100 Annual Cost Of Hire** | **Premium** |
| | | $ | $ | $ |
| | **Specified Causes Of Loss** | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus $                                    Deductible For Each Covered Auto For Loss Caused By Mischief Or Vandalism | | |
| | | **Estimated Annual Cost Of Hire** | **Rate Per Each $100 Annual Cost Of Hire** | **Premium** |
| | | $ | $ | $ |
| | **Collision** | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus $                                    Deductible For Each Covered Auto. | | |
| | | **Estimated Annual Cost Of Hire** | **Rate Per Each $100 Annual Cost Of Hire** | **Premium** |
| | | $ | $ | $ |

Policy No.:      21-31120731 - 36

**ITEM FIVE**

**Schedule For Non-Ownership Liability**

| State | Named Insured's Business | Rating Basis | Number | Premium |
|-------|--------------------------|--------------|--------|---------|
| NY | Other Than Garage Service Operations And Other Than Social Service Agencies | Number Of Employees | 0 | $          Included |
| | | Number Of Partners | | $ |
| | Garage Service Operations | Number Of Employees Whose Principal Duty Involves The Operation Of Autos | | $ |
| | Social Service Agencies | Number Of Employees | | $ |
| | | Number Of Volunteers | | $ |
| | | **Total Premiums:** | | $ |

**ITEM SIX**

**Schedule For Gross Receipts Or Mileage Basis - Liability Coverage - Public Auto Or Leasing Rental Concerns**

| Location No: | | |
|--------------|---|---|
| (Check One) | Gross Receipts (Per $100) | Mileage (Per Mile) |
| Estimated Yearly: | | |
| **Rates** | | |
| Liability | $ | |
| Auto Medical Payments | $ | |
| Medical Expense Benefits (VA Only) | $ | |
| Income Loss Benefits (VA Only | $ | |
| **Premiums** | | |
| Liability | $ | |
| Auto Medical Payments | $ | |
| Medical Expense Benefits (VA Only) | $ | |
| Income Loss Benefits (VA Only) | $ | |
| **Total Premiums** | | |
| Minimum Liability | $ | |
| Minimum Auto Medical Payments | $ | |
| Minimum Medical Expense Benefits (VA Only) | $ | |
| Minimum Income Loss Benefits (VA Only) | $ | |
| Liability | $ | |
| Auto Medical Payments | $ | |
| Medical Expense Benefits (VA Only) | $ | |
| Income Loss Benefits (VA Only) | $ | |

**Policy No.:**      21-31120731 - 36

| Location Number | Address |
|---|---|
|  |  |

When used as a premium basis:

**FOR PUBLIC AUTOS**

Gross Receipts means the total amount to which you are entitled for transporting passengers, mail or merchandise during the policy period regardless of whether you or any other carrier originate the transportation.  Gross Receipts does not include:

A.    Amounts you pay to railroads, steamship lines, airlines and other motor carriers operating under their own ICC or PUC permits.

B.    Advertising revenue.

C.    Taxes which you collect as a separate item and remit directly to a governmental division.

D.    C.O.D. collections for cost of mail or merchandise including collection fees.

Mileage means the total live and dead mileage of all revenue producing units operated during the policy period.

**FOR RENTAL OR LEASING CONCERNS**

Gross receipts means the total amount to which you are entitled for the leasing or rental of "autos" during the policy period and includes taxes except those taxes which you collect as a separate item and remit directly to a governmental division.

Mileage means the total of all live and dead mileage developed by all the "autos" you leased or rented to others during the policy period.

COMMERCIAL AUTO
CL CA FS 01 09 08

Policy Number:  **21-31120731 - 36**

# SCHEDULE OF FORMS AND ENDORSEMENTS

The following Declarations, Coverage Forms, Conditions, and Endorsements are applicable to:

## Commercial Auto

| State | Number | Edition | Description |
|---|---|---|---|
| ALL | CA DS 83 00 | 04-2010 | Business Auto Declarations |
| ALL | CL CA FS 01 | 09-2008 | Schedule of Forms and Endorsements |
| ALL | CA 00 01 | 03-2010 | Business Auto Coverage Form |
| ALL | CA 01 02 | 08-2014 | New York Changes - For Hire Autos |
| ALL | CA 01 12 | 12-2015 | New York Changes in Business Auto, Business Auto Physical Damage, Motor Carrier & Truckers Coverage Forms |
| ALL | CA 02 25 | 08-2014 | New York Changes - Cancellation |

ALL = ALL states on the policy
ALL* = Applies to all states on the policy unless a specific state form is designated.

COMMERCIAL AUTO
CA 00 01 03 10

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| **1** | Any "Auto" | |
| **2** | Owned "Autos" Only | Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| **3** | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| **4** | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| **5** | Owned "Autos" Subject To No-fault | Only those "autos" you own that are required to have no-fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have no-fault benefits in the state where they are licensed or principally garaged. |
| **6** | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| **7** | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| **8** | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| **9** | Non-owned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs. |

© Insurance Services Office, Inc., 2009

| 19 | Mobile Equipment Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |

**B. Owned Autos You Acquire After The Policy Begins**

1. If Symbols **1**, **2**, **3**, **4**, **5**, **6** or **19** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   **a.** We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   **b.** You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos**

If Liability Coverage is provided by this coverage form, the following types of vehicles are also covered "autos" for Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   **a.** Breakdown;

   **b.** Repair;

   **c.** Servicing;

   **d.** "Loss"; or

   **e.** Destruction.

**SECTION II – LIABILITY COVERAGE**

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**1. Who Is An Insured**

The following are "insureds":

   **a.** You for any covered "auto".

   **b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

      **(1)** The owner or anyone else from whom you hire or borrow a covered "auto".

      This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

**(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

**(5)** A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2. Coverage Extensions**

**a. Supplementary Payments**

We will pay for the "insured":

**(1)** All expenses we incur.

**(2)** Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b. Out-of-state Coverage Extensions**

While a covered "auto" is away from the state where it is licensed we will:

**(1)** Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

 © Insurance Services Office, Inc., 2009

**4. Employee Indemnification And Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" arising out of and in the course of:

    **(1)** Employment by the "insured"; or

    **(2)** Performing the duties related to the conduct of the "insured's" business; or

**b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

    **(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

    **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the coverage form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to:

**a.** Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

**b.** The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph **a.** above.

**6. Care, Custody Or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling Of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement Of Property By Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of:

**a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

**b.** Machinery or equipment that is on, attached to or part of a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraph **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

    **(1)** When all of the work called for in your contract has been completed.

    **(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

    **(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

 © Insurance Services Office, Inc., 2009 CA 00 01 03 10   □

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

   **(1)** Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

   **(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

   **(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

   **(1)** The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

   **(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

   **(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

   **(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## SECTION III – PHYSICAL DAMAGE COVERAGE

### A. Coverage

1. We will pay for "loss" to a covered "auto" or its equipment under:

    **a. Comprehensive Coverage**

    From any cause except:

    **(1)** The covered "auto's" collision with another object; or

    **(2)** The covered "auto's" overturn.

    **b. Specified Causes Of Loss Coverage**

    Caused by:

    **(1)** Fire, lightning or explosion;

    **(2)** Theft;

    **(3)** Windstorm, hail or earthquake;

    **(4)** Flood;

    **(5)** Mischief or vandalism; or

    **(6)** The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

    **c. Collision Coverage**

    Caused by:

    **(1)** The covered "auto's" collision with another object; or

    **(2)** The covered "auto's" overturn.

2. **Towing**

    We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

    If you carry Comprehensive Coverage for the damaged "auto", we will pay for the following under Comprehensive Coverage:

    **a.** Glass breakage;

    **b.** "Loss" caused by hitting a bird or animal; and

    **c.** "Loss" caused by falling objects or missiles.

    However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**

    **a. Transportation Expenses**

    We will pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes Of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

    **b. Loss Of Use Expenses**

    For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

    **(1)** Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

    **(2)** Specified Causes Of Loss only if the Declarations indicate that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

    **(3)** Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".

    However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

### B. Exclusions

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

    **a. Nuclear Hazard**

    **(1)** The explosion of any weapon employing atomic fission or fusion; or

    **(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

 © Insurance Services Office, Inc., 2009

**b. War Or Military Action**

   **(1)** War, including undeclared or civil war;

   **(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   **(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

**3.** We will not pay for "loss" due and confined to:

   **a.** Wear and tear, freezing, mechanical or electrical breakdown.

   **b.** Blowouts, punctures or other road damage to tires.

This exclusion does not apply to such "loss" resulting from the total theft of a covered "auto".

**4.** We will not pay for "loss" to any of the following:

   **a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

   **b.** Any device designed or used to detect speed-measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed-measurement equipment.

   **c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

   **d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

**5.** Exclusions **4.c.** and **4.d.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

   **a.** Permanently installed in or upon the covered "auto";

   **b.** Removable from a housing unit which is permanently installed in or upon the covered "auto";

   **c.** An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

   **d.** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

**6.** We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limit Of Insurance**

**1.** The most we will pay for "loss" in any one "accident" is the lesser of:

   **a.** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

   **b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**2.** $1,000 is the most we will pay for "loss" in any one "accident" to all electronic equipment that reproduces, receives or transmits audio, visual or data signals which, at the time of "loss", is:

   **a.** Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

   **b.** Removable from a permanently installed housing unit as described in Paragraph **2.a.** above or is an integral part of that equipment; or

   **c.** An integral part of such equipment.

**3.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**4.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

**SECTION IV – BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

  **1. Appraisal For Physical Damage Loss**

    If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

    **a.** Pay its chosen appraiser; and

    **b.** Bear the other expenses of the appraisal and umpire equally.

    If we submit to an appraisal, we will still retain our right to deny the claim.

  **2. Duties In The Event Of Accident, Claim, Suit Or Loss**

    We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

    **a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

      **(1)** How, when and where the "accident" or "loss" occurred;

      **(2)** The "insured's" name and address; and

      **(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

    **b.** Additionally, you and any other involved "insured" must:

      **(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

      **(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

      **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

      **(4)** Authorize us to obtain medical records or other pertinent information.

      **(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

    **c.** If there is "loss" to a covered "auto" or its equipment you must also do the following:

      **(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

      **(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

      **(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

      **(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

  **3. Legal Action Against Us**

    No one may bring a legal action against us under this coverage form until:

    **a.** There has been full compliance with all the terms of this coverage form; and

    **b.** Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

  **4. Loss Payment – Physical Damage Coverages**

    At our option we may:

    **a.** Pay for, repair or replace damaged or stolen property;

    **b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

    **c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

    If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

  **5. Transfer Of Rights Of Recovery Against Others To Us**

    If any person or organization to or for whom we make payment under this coverage form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

© Insurance Services Office, Inc., 2009

## B. General Conditions

### 1. Bankruptcy

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this coverage form.

### 2. Concealment, Misrepresentation Or Fraud

This coverage form is void in any case of fraud by you at any time as it relates to this coverage form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This coverage form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this coverage form.

### 3. Liberalization

If we revise this coverage form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

### 4. No Benefit To Bailee – Physical Damage Coverages

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this coverage form.

### 5. Other Insurance

**a.** For any covered "auto" you own, this coverage form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this coverage form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this coverage form provides for the "trailer" is:

**(1)** Excess while it is connected to a motor vehicle you do not own.

**(2)** Primary while it is connected to a covered "auto" you own.

**b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**c.** Regardless of the provisions of Paragraph **a.** above, this coverage form's Liability Coverage is primary for any liability assumed under an "insured contract".

**d.** When this coverage form and any other coverage form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our coverage form bears to the total of the limits of all the coverage forms and policies covering on the same basis.

### 6. Premium Audit

**a.** The estimated premium for this coverage form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**b.** If this policy is issued for more than one year, the premium for this coverage form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

### 7. Policy Period, Coverage Territory

Under this coverage form, we cover "accidents" and "losses" occurring:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

The coverage territory is:

**(1)** The United States of America;

**(2)** The territories and possessions of the United States of America;

**(3)** Puerto Rico;

**(4)** Canada; and

**(5)** Anywhere in the world if:

**(a)** A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

**(b)** The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico or Canada or in a settlement we agree to.

                    © Insurance Services Office, Inc., 2009                        ☐

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two Or More Coverage Forms Or Policies Issued By Us**

If this coverage form and any other coverage form or policy issued to you by us or any company affiliated with us applies to the same "accident", the aggregate maximum Limit of Insurance under all the coverage forms or policies shall not exceed the highest applicable Limit of Insurance under any one coverage form or policy. This condition does not apply to any coverage form or policy issued by us or an affiliated company specifically to apply as excess insurance over this coverage form.

## SECTION V – DEFINITIONS

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

**1.** A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

**2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

**1.** Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**2.** Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph **6.b.** or **6.c.** of the definition of "mobile equipment".

© Insurance Services Office, Inc., 2009

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

    **(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

    **(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract" means:

    **1.** A lease of premises;

    **2.** A sidetrack agreement;

    **3.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    **4.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    **5.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

    **6.** That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

    **a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

    **b.** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

    **c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **2.** Vehicles maintained for use solely on or next to premises you own or rent;

    **3.** Vehicles that travel on crawler treads;

    **4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        **a.** Power cranes, shovels, loaders, diggers or drills; or

        **b.** Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **5.** Vehicles not described in Paragraph **1., 2., 3.** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        **a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

        **b.** Cherry pickers and similar devices used to raise or lower workers; or

© Insurance Services Office, Inc., 2009

**6.** Vehicles not described in Paragraph **1.**, **2.**, **3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    **a.** Equipment designed primarily for:

        **(1)** Snow removal;

        **(2)** Road maintenance, but not construction or resurfacing; or

        **(3)** Street cleaning;

    **b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**L.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**M.** "Property damage" means damage to or loss of use of tangible property.

**N.** "Suit" means a civil proceeding in which:

    **1.** Damages because of "bodily injury" or "property damage"; or

    **2.** A "covered pollution cost or expense";

to which this insurance applies, are alleged.

"Suit" includes:

    **a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

    **b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

COMMERCIAL AUTO
CA 01 02 08 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – FOR HIRE AUTOS

For a covered "auto" subject to the provisions of Sections 370 **(a)** and **(b)** of the New York Vehicles and Traffic Laws that is licensed or principally garaged in New York, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

The following is added to Paragraph **C. Limit Of Insurance** of **Section II – Covered Autos Liability Coverages:**

**1.** If the insurance provided by this Policy covers "autos" subject to the provisions of Sections 370 **(a)** and **(b)** of the New York Vehicles and Traffic Laws, we will apply the limit shown in the Declarations to first provide the separate limits required by the New York Motor Vehicle Safety Responsibility Act as follows:

**a.** $25,000 for "bodily injury" to any one person caused by any one "accident";

**b.** $50,000 for "bodily injury" to two or more persons caused by any one "accident"; and

**c.** $10,000 for "property damage" caused by any one "accident".

**2.** Our minimum liability for damages for and incident to death or injuries to persons is based upon the seating capacity for passengers of the covered "auto" described as set forth in the following table:

| Seating capacity of motor vehicle. | For a judgment or judgments for damages, including damages for care and loss of services, because of "bodily injury" to any one person in any one "accident". | For a judgment or judgments for damages, including damages for care and loss of services because of "bodily injury" to two or more persons in any one "accident", upon claims arising out of the same transactions connected with the same subject of action, to be apportioned ratably among the judgment creditors according to the amount of their prospective judgments. | For a judgment or judgments for damages because of death of any one person in any one "accident". | For a judgment or judgments for damages because of death of two or more persons in any one "accident", upon claims arising out of the same transactions connected with the same subject of action to be apportioned ratably among the judgment creditors according to the amount of their respective judgments. |
|---|---|---|---|---|
| 1 to 7 | $25,000 | $ 50,000 | $50,000 | $100,000 |
| 8 to 12 | $25,000 | $ 80,000 | $50,000 | $150,000 |
| 13 to 20 | $25,000 | $120,000 | $50,000 | $150,000 |
| 21 to 30 | $25,000 | $160,000 | $50,000 | $200,000 |
| over 30 | $25,000 | $200,000 | $50,000 | $250,000 |

 © Insurance Services Office, Inc., 2013

COMMERCIAL AUTO
CA 01 12 12 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES IN BUSINESS AUTO AND MOTOR CARRIER COVERAGE FORMS

For a covered "auto" licensed or principally garaged in New York, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

1. The third paragraph of **A. Coverage** is replaced by the following:

   We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense", even if the allegations of the "suit" are groundless, false or fraudulent. However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered "Autos" Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

2. Who Is An Insured does not include anyone loading or unloading a covered "auto" except you, your "employees", a lessee or borrower or any of their "employees".

3. **Supplementary Payments** is amended as follows:

   a. Paragraph **(5)** is replaced by the following:

      **(5)** All costs taxed against the "insured" in any "suit" against the "insured" we defend.

   b. The following paragraphs are added:

      **(7)** All expenses incurred by an "insured" for first aid to others at the time of an "accident".

      **(8)** The cost of appeal bonds.

4. Paragraph **b. Out-of-state Coverage Extensions** in the Business Auto and Motor Carrier Coverage Forms is replaced by the following:

   b. While a covered "auto" is used or operated in any other state or Canadian province, we will provide at least the minimum amount and kind of coverage which is required in such cases under the laws of such jurisdiction.

5. **Exclusions** is changed as follows:

   a. The **Employee Indemnification And Employer's Liability** Exclusion is replaced by the following:

      **Employee Indemnification And Employer's Liability**

      This insurance does not apply to:

      "Bodily injury" to an "employee" of the "insured" arising out of and in the course of:

      **(1)** Employment by the "insured"; or

      **(2)** Performing the duties related to the conduct of the "insured's" business.

CA 01 12 12 15                © Insurance Services Office, Inc., 2015                Page 1 of 8

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**b.** The **Fellow Employee** Exclusion is replaced by the following:

**Fellow Employee**

This insurance does not apply to:

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

However, this exclusion only applies if the fellow "employee" is entitled to benefits under any of the following: workers' compensation, unemployment compensation or disability benefits law, or any similar law.

**c.** The **Handling Of Property** Exclusion does not apply.

**d.** The **Movement Of Property By Mechanical Device** Exclusion does not apply.

**e.** The **Operations** Exclusion does not apply.

**f.** The **Completed Operations** Exclusion does not apply.

**g.** The **Pollution** Exclusion does not apply.

**h.** The **War** Exclusion is replaced by the following:

**War**

"Bodily injury" or "property damage" caused by war, whether or not declared, civil war, insurrection, rebellion or revolution, or any act or condition incident to any of the foregoing.

**i.** The **Racing** Exclusion does not apply.

**j.** The following exclusion is added:

**Spousal Liability**

"Bodily injury" to or "property damage" of the spouse of an "insured". However, we will pay all sums an "insured" legally must pay if named as a third-party defendant in a legal action commenced by his or her spouse against another party.

**6.** If the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations is equal to or greater than $160,000, the **Limit Of Insurance** provision is changed by the following:

**Limit Of Insurance** applies except that we will apply the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations to first provide the separate limits required by the New York Motor Vehicle Safety Responsibility Act for:

**a.** "Bodily injury" not resulting in death of any one person caused by any one "accident";

**b.** "Bodily injury" not resulting in death of two or more persons caused by any one "accident";

**c.** "Bodily injury" resulting in death of any one person caused by any one "accident";

**d.** "Bodily injury" resulting in death of two or more persons caused by any one "accident"; or

**e.** "Property damage" in any one "accident".

This provision will not change our total Limit of Insurance.

**7.** If the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations is less than $160,000, the **Limit Of Insurance** provision is replaced by the following:

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident", is the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations, except for those damages for "bodily injury" resulting in death. We will apply the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations to first provide the separate limits required by the New York Motor Vehicle Safety Responsibility Act as follows:

**a.** "Bodily injury" not resulting in death of any one person caused by any one "accident";

**b.** "Bodily injury" not resulting in death of two or more persons caused by any one "accident"; or

**c.** "Property damage" in any one "accident".

© Insurance Services Office, Inc., 2015

This provision will not change our total Limit of Insurance.

All "bodily injury" and "property damage" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

In addition, our Limit of Insurance for "bodily injury" resulting in death is as follows:

**a.** Up to $50,000 for "bodily injury" resulting in death of any one person caused by any one "accident"; and

**b.** Up to $100,000 for "bodily injury" resulting in death of two or more persons caused by any one "accident", subject to a $50,000 maximum for any one person.

If the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations is not exhausted by payment of damages for:

**a.** "Bodily injury" not resulting in death;

**b.** "Property damage"; or

**c.** "Covered pollution cost or expense";

any remaining amounts will be used to pay damages for "bodily injury" resulting in death, to the extent the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations is not increased.

**8.** If forming part of the Policy, the Nuclear Energy Liability Exclusion (Broad Form) Endorsement does not apply to the Commercial Auto Coverage Part.

**B. Changes In Trailer Interchange Coverage**

Paragraph **A.2.** of **Section III – Trailer Interchange Coverage** in the Motor Carrier Coverage Form is replaced by the following:

**2.** We have the right and duty to defend any "insured" against a "suit" asking for these damages, even if the allegations of the "suit" are groundless, false or fraudulent. However, we have no duty to defend any "insured" against a "suit" seeking damages for any "loss" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

**C. Changes In Physical Damage Coverage**

**1.** The **Owned Autos You Acquire After The Policy Begins** provision of Section **I – Covered Autos** is replaced by the following:

**Owned Autos You Acquire After The Policy Begins**

**a.** If Symbols **1, 2, 3, 4, 5, 6** or **19** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

**b.** But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

**(1)** We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

**(2)** You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**c.** Notwithstanding the provisions of Paragraphs **a.** and **b.**, during the term of the Coverage Part, Physical Damage Coverage for an additional or replacement private passenger "auto" shall not become effective until you notify us and request coverage for the "auto".

However, if you replace a private passenger "auto" currently insured with us for a continuous period of at least 12 months, we will provide the same coverage which applied to the replaced "auto", without a coverage request, for five calendar days beginning on the date you acquired the replacement "auto". After five calendar days, coverage will not apply until you request coverage for the "auto".

© Insurance Services Office, Inc., 2015

**2.** The **War Or Military Action** Exclusion is replaced by the following:

**War Or Military Action**

War, whether or not declared, civil war, insurrection, rebellion or revolution, or any act or condition incident to any of the foregoing.

**3.** **Deductible** is replaced by the following:

**Deductible**

For each covered "auto", our obligation to pay for, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations.

**4.** The following provisions are added to **Physical Damage Coverage** and apply in place of any conflicting policy provisions:

**a. Mandatory Inspection For Physical Damage Coverage**

**(1)** We have the right to inspect any private passenger "auto", including a non-owned "auto", insured or intended to be insured under this Coverage Part before physical damage coverage shall become effective, except to the extent that this right is prescribed and limited by New York State Department of Financial Services' Insurance Regulation No. 79 (11 NYCRR 67) or Section 3411 of the New York Insurance Law.

**(2)** When an inspection is required by us, you must cooperate and make the "auto" available for the inspection.

**b. "Auto" Repairs Under Physical Damage Coverage**

Payment of a physical damage "loss" shall not be conditioned upon the repair of the "auto". We may not require that repairs be made by a particular repair shop or concern.

**c. Recovery Of Stolen Or Abandoned "Autos"**

If a private passenger "auto" insured under this Coverage Part for physical damage coverage is stolen or abandoned, we or our authorized representative shall, when notified of the location of the "auto", have the right to take custody of the "auto" for safekeeping.

**D. Changes In Conditions**

**1.** Paragraphs **a.** and **b.(2)** of the **Duties In The Event Of Accident, Claim, Suit Or Loss** Condition in the Business Auto and Motor Carrier Coverage Forms are replaced by the following:

We have no duty to provide coverage under this Policy if the failure to comply with the following duties is prejudicial to us:

**a.** In the event of "accident", claim, "suit" or "loss", you or someone on your behalf must give us or our authorized representative notice as soon as reasonably possible of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

Written notice by or on behalf of the injured person or any other claimant to our authorized representative shall be deemed notice to us.

**b.** Additionally, you and any other involved "insured" must:

**(2)** Send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit" as soon as reasonably possible.

**2.** The **Legal Action Against Us** Condition in the Business Auto and Motor Carrier Coverage Forms is replaced by the following:

**Legal Action Against Us**

**a.** Except as provided in Paragraph **b.,** no one may bring a legal action against us until:

**(1)** There has been full compliance with all of the terms of the Coverage Form; and

**(2)** Under Covered Autos Liability Coverage, we, by written agreement with the "insured" and the claimant, agree that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No person or organization has any right under this Policy to bring us into any action to determine the "insured's" liability.

**b.** With respect to "bodily injury" claims, if we deny coverage or do not admit liability because an "insured" or the injured person, someone acting for the injured person or other claimant fails to give us written notice as soon as practicable, then the injured person, someone acting for the injured person or other claimant may bring an action against us, provided the sole question is whether the denial of coverage or nonadmission of liability is based on the failure to provide timely notice.

However, the injured person, someone acting for the injured person or other claimant may not bring an action if within 60 days after we deny coverage or do not admit liability, we or an "insured":

**(1)** Brings an action to declare the rights of the parties under the Policy; and

**(2)** Names the injured person, someone acting for the injured person or other claimant as a party to the action.

**3.** Paragraph **d.** of the **Other Insurance** Condition in the Business Auto Coverage Form and Paragraph **h. Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

When this Coverage Form and any valid and collectible insurance under any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**4.** The following provision is added and supersedes any provision to the contrary:

Failure to give notice to us as soon as practicable, as required under this Coverage Part, shall not invalidate any claim made by the "insured", injured person or any other claimant, unless the failure to provide such timely notice has prejudiced us. However, no claim made by the "insured", injured person or other claimant will be invalidated if it shall be shown not to have been reasonably possible to give such timely notice and that notice was given as soon as was reasonably possible thereafter.

**5.** The **Loss Payment – Physical Damage Coverages** Condition is replaced by the following:

**Loss Payment – Physical Damage Coverages**

At our option, we may:

**a.** Pay for or replace damaged or stolen property; or

**b.** Return the stolen or damaged property, at our expense. We will pay for any damage that results to the "auto" from the "loss".

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**6.** The **Two Or More Coverage Forms Or Policies Issued By Us** Condition in the Business Auto and Motor Carrier Coverage Forms is changed as follows:

This condition does not apply to liability coverage.

**7.** The **Premium Audit** Condition is amended by the addition of the following:

An audit to determine the final premium due or to be refunded will be completed within 180 days after the expiration date of the Policy or the anniversary date, if this is a continuous policy or a policy written for a term longer than one year. But the audit may be waived if:

**a.** The total annual premium attributable to the auditable exposure base is not reasonably expected to exceed $1,500; or

**b.** The Policy requires notification to the insurer with specific identification of any additional exposure units (e.g., autos) for which coverage is requested.

**c.** Except as provided in Paragraphs **a.** and **b.** above, the **Examination Of Your Books And Records** Common Policy Condition continues to apply.

© Insurance Services Office, Inc., 2015

## E. Changes In Definitions

The **Definitions** section in the Business Auto and Motor Carrier Coverage Forms is changed as follows:

1. The "covered pollution cost or expense" definition is replaced by the following:

   "Covered pollution cost or expense" means any cost or expense arising out of:

   a. Any request, demand, order or statutory or regulatory requirement; or

   b. Any claim or "suit" by or on behalf of a governmental authority demanding;

   that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

2. The "insured contract" definition is replaced by the following:

   "Insured contract" means:

   a. A lease of premises;

   b. A sidetrack agreement;

   c. An easement or license agreement in connection with vehicle or pedestrian private railroad crossings at grade;

   d. Any other easement agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   e. An indemnification of a municipality as required by ordinance, except in connection with work for a municipality;

   f. That part of any contract or agreement entered into, as part of your business, by you or any of your employees, pertaining to the rental or lease of any "auto"; or

   g. That part of any other contract or agreement pertaining to your business under which you assume the tort liability of another to pay damages because of "bodily injury" or "property damage" to a third person or organization, if the contract or agreement is made prior to the "bodily injury" or "property damage". Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

An "insured contract" does not include that part of any contract or agreement:

a. That pertains to the loan, lease or rental of an "auto" to you or any of your employees, if the "auto" is loaned, leased or rented with a driver;

b. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority; or

c. Under which the "insured" assumes liability for injury or damage caused by the dumping, discharge or escape of:

   (1) Irritants, pollutants or contaminants that are, or that are contained in, any property that is:

      (a) Being moved from the place where such property or pollutants are accepted by the "insured" for movement into or onto the covered "auto";

      (b) Being transported or towed by the covered "auto";

      (c) Being moved from the covered "auto" to the place where such property or pollutants are finally delivered, disposed of or abandoned by the "insured";

      (d) Otherwise in the course of transit; or

      (e) Being stored, disposed of, treated or processed in or upon the covered "auto" other than fuels, lubricants, fluids, exhaust gases or other similar pollutants that are needed for, or result from, the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts.

   (2) Irritants, pollutants or contaminants not described in Paragraph **(1)** above unless:

      (a) The pollutants or any property in which the pollutants are contained is upset, overturned or damaged as a result of the maintenance or use of the covered "auto"; and

**(b)** The discharge, dispersal, release or escape of the pollutants is caused directly by such upset, overturn or damage.

**3.** The "mobile equipment" definition is replaced by the following:

"Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers.

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers.

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

"Mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

However, the operation of:

**a.** Equipment described in Paragraphs **f.(2)** and **f.(3)** above; or

**b.** Machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged;

is considered operation of "mobile equipment" and not operation of an "auto".

**F. Changes In Forms And Endorsements**

**1.** All references to Underinsured Motorists Coverage shall mean Supplementary Uninsured/Underinsured Motorists Coverage.

**2.** If the Garagekeepers Coverage endorsement or the Garagekeepers Coverage – Customers' Sound-receiving Equipment endorsement is attached, then:

**a.** Paragraph **B.2.** is replaced by the following:

**2.** We will have the right and duty to defend any "insured" against a "suit" asking for these damages, even if the allegations of the "suit" are groundless, false or fraudulent. However, we have no duty to defend any "insured" against a "suit" seeking damages for "loss" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

 © Insurance Services Office, Inc., 2015

   **b.** Exclusion **3.** is replaced by the following:

      **3.** We will not pay for "loss" caused by war, whether or not declared, civil war, insurrection, rebellion or revolution, or any act or condition incident to any of the foregoing.

**3.** If the Auto Medical Payments Coverage endorsement is attached, then Exclusion **C.6.** is replaced by the following:

   **6.** "Bodily injury" caused by war, whether or not declared, civil war, insurrection, rebellion or revolution, or any act or condition incident to any of the foregoing.

**4.** If the Single Interest Automobile Physical Damage Insurance Policy is attached, the **War** Exclusion is replaced by the following:

This insurance does not apply to "loss" caused by war, whether or not declared, civil war, insurrection, rebellion or revolution, or any act or condition incident to any of the foregoing.

**5.** If the Stated Amount Insurance endorsement is attached, then Paragraph **C.2.** of that endorsement does not apply.

**6.** If the Trailer Interchange Coverage endorsement is attached, then Paragraph **A.2.** is replaced by the following:

   **2.** We have the right and duty to defend any "insured" against a "suit" asking for these damages, even if the allegations of the "suit" are groundless, false or fraudulent. However, we have no duty to defend any "insured" against a "suit" seeking damages for any "loss" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

**7.** If the Motor Carrier Endorsement is attached, then Paragraph **B.1.c.** is replaced by the following:

   **c.** We have the right and duty to defend any "insured" against a "suit" asking for these damages, even if the allegations of the "suit" are groundless, false or fraudulent. However, we have no duty to defend any "insured" against a "suit" seeking damages for any "loss" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

© Insurance Services Office, Inc., 2015

COMMERCIAL AUTO
CA 02 25 08 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – CANCELLATION

For a covered "auto" licensed or principally garaged in, or for "auto dealer operations" conducted in, New York, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**I.** If you are an individual and a covered "auto" you own is predominantly used for nonbusiness purposes, the **Cancellation** Common Policy Condition does not apply. The following condition applies instead:

**Ending This Policy**

**A. Cancellation**

1. You may cancel the entire Policy by returning it to us or by giving us advance notice of the date cancellation is to take effect.

2. When this Policy is in effect less than 60 days and is not a renewal or continuation policy, we may cancel the entire Policy for any reason provided we mail you notice within this period. If we cancel for nonpayment of premium, we will mail you at least 15 days' notice and such notice of cancellation on this ground shall inform the first Named Insured of the amount due. Payment of premium will be considered on time if made within 15 days after we mail you notice of cancellation. If we cancel for any other reason, we will mail you at least 20 days' notice.

3. When this Policy is in effect 60 days or more or is a renewal or continuation policy, we may cancel it or any insurance deemed severable only for one or more of the following reasons:

a. Nonpayment of premium, provided, however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due. If we cancel for this reason, we will mail you at least 15 days' notice. Payment of premium will be considered on time if made within 15 days after we mail you notice of cancellation.

b. Your driver's license or that of a driver who lives with you or customarily uses the covered "auto" has been suspended or revoked during the policy period, other than a suspension issued pursuant to Subdivision (1) of Section 510(b) of the New York Vehicle and Traffic Law, or one or more administrative suspensions arising out of the same incident which has or have been terminated prior to the effective date of cancellation. If we cancel for this reason, we will mail you at least 20 days' notice.

© Insurance Services Office, Inc., 2014

**c.** We replace this Policy with another one providing similar coverages and the same limits for a covered "auto" of the private passenger type. The replacement policy will take effect when this Policy is cancelled, and will end a year after this Policy begins or on this Policy's expiration date, whichever is earlier.

**d.** This Policy has been written for a period of more than one year or without a fixed expiration date. We may cancel for this reason, subject to New York Laws, only at an anniversary of its original effective date. If we cancel for this reason, we will mail you at least 45 but not more than 60 days' notice.

**e.** This Policy was obtained through fraud or material misrepresentation. If we cancel for this reason, we will mail you at least 20 days' notice.

**f.** Any "insured" made a fraudulent claim. If we cancel for this reason, we will mail you at least 20 days' notice.

If one of the reasons listed in this Paragraph **3.** exists, we may cancel the entire Policy.

**4.** Instead of cancellation, we may condition continuation of this Policy on a reduction of Covered Autos Liability Coverage or elimination of any other coverage. If we do this, we will mail you notice at least 20 days before the date of the change.

**5.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**6.** If this Policy is cancelled, we will send you any premium refund due. The refund will be pro rata.

However, when the premium is advanced under a premium finance agreement, we will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

**B. Nonrenewal**

**1.** If this Policy is written for a period of less than one year and we decide, subject to New York Laws, not to renew or continue it, or to condition renewal or continuation on a reduction of Covered Autos Liability Coverage or elimination of any other coverage, we will mail or deliver to you written notice at least 45 but not more than 60 days before the end of the policy period.

**2.** We will have the right not to renew or continue a particular coverage, subject to New York Laws, only at the end of each 12-month period following the effective date of the first of the successive policy periods in which the coverage was provided.

**3.** We do not have to mail notice of nonrenewal if you, your agent or broker or another insurance company informs us in writing that you have replaced this Policy or that you no longer want it.

**C. Mailing Of Notices**

We will mail or deliver our notice of cancellation, reduction of limits, elimination of coverage or nonrenewal to the address shown on the Policy. However, we may deliver any notice instead of mailing it. If notice is mailed, a United States Postal Service certificate of mailing will be sufficient proof of notice.

**II.** For all policies other than those specified in Section **I.,** the **Cancellation** Common Policy Condition is completely replaced by the following:

**Ending This Policy**

**A. Cancellation**

**1.** The first Named Insured shown in the Declarations may cancel the entire Policy by returning it to us or by giving us advance notice of the date cancellation is to take effect.

**2.** When this Policy is in effect 60 days or less and is not a renewal or continuation policy, we may cancel the entire Policy by mailing to the first Named Insured written notice at least 15 days before the effective date of cancellation if we cancel for any of the reasons included in Paragraph **3.** below. We will provide the first Named Insured with 20 days' written notice if we cancel for any other reason.

**3.** When this Policy is in effect more than 60 days or is a renewal or continuation policy, we may cancel only for any of the reasons listed below, provided we mail the first Named Insured written notice at least 15 days before the effective date of cancellation:

   **a.** Nonpayment of premium, provided, however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due;

   **b.** Conviction of a crime arising out of acts increasing the hazard insured against;

   **c.** Discovery of fraud or material misrepresentation in the obtaining of the Policy or in the presentation of a claim thereunder;

   **d.** After issuance of the Policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current policy period;

   **e.** Material physical change in the property insured, occurring after issuance or last annual renewal anniversary date of the Policy, which results in the property becoming uninsurable in accordance with our objective, uniformly applied underwriting standards in effect at the time the Policy was issued or last renewed; or material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the Policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the Policy was issued or last renewed;

   **f.** Required pursuant to a determination by the Superintendent that continuation of our present premium volume would jeopardize our solvency or be hazardous to the interest of our policyholders, our creditors or the public;

   **g.** A determination by the Superintendent that the continuation of the Policy would violate, or would place us in violation of, any provision of the Insurance Code;

   **h.** Where we have reason to believe, in good faith and with sufficient cause, that there is a probable risk of danger that the "insured" will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. However, if we cancel for this reason, the first Named Insured may make a written request to the Department of Financial Services, within 10 days of receipt of this notice, to review our cancellation decision. We will also send a copy of this notice, simultaneously, to the Department of Financial Services; or

   **i.** Suspension or revocation during the required policy period of the driver's license of any person who continues to operate a covered "auto", other than a suspension issued pursuant to Subdivision (1) of Section 510(b) of the New York Vehicle and Traffic Law or one or more administrative suspensions arising from the same incident which has or have been terminated prior to the effective date of cancellation.

**4.** Regardless of the number of days this Policy has been in effect, if:

   **a.** This Policy covers "autos" subject to the provisions of Section 370 (a) and (b) of the New York Vehicle and Traffic Law; and

   **b.** The Commissioner of the Department of Motor Vehicles deems this Policy to be insufficient for any reason;

we may cancel this Policy by giving you notice of such insufficiency 45 days before the effective date of cancellation to permit you to replace this Policy.

**5.** If this Policy is cancelled, we will send the first Named Insured any premium refund due. The refund will be pro rata.

However, when the premium is advanced under a premium finance agreement, we will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

**6.** The effective date of cancellation stated in the notice shall become the end of the policy period.

**7.** Notice will include the reason for cancellation. We will mail or deliver our notice to the first Named Insured at the address shown in the Policy and to the authorized agent or broker. However, we may deliver any notice instead of mailing it. Proof of mailing will be sufficient proof of notice.

**B. Notices Of Nonrenewal And Conditional Renewal**

**1.** If we decide not to renew or continue this Policy, we will send notice as provided in Paragraph **3.** below.

**2.** If we conditionally renew this Policy upon:

   **a.** A change of limits;

   **b.** A change in type of coverage;

   **c.** A reduction of coverage;

   **d.** An increased deductible;

   **e.** An addition of exclusion; or

   **f.** Increased premiums in excess of 10%, exclusive of any premium increase due to and commensurate with insured value added; or as a result of experience rating, retrospective rating or audit;

we will send notice as provided in Paragraph **3.** below.

**3.** If we decide not to renew or continue this Policy, or to conditionally renew this Policy as provided in Paragraphs **1.** and **2.** above, we will mail the first Named Insured notice at least 60 but not more than 120 days before the end of the policy period. If the policy period is other than one year, we will have the right not to renew or continue it only at an anniversary of its original effective date.

**4.** We will not send you notice of nonrenewal or conditional renewal if you, your authorized agent or broker or another insurer of yours mails or delivers notice that you have replaced this Policy or no longer want it.

**5.** Any notice of nonrenewal or conditional renewal will be mailed to the first Named Insured at the address shown in the Policy and to the authorized agent or broker. However, we may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

**6.** Notice will include the specific reason(s) for nonrenewal or conditional renewal, including the amount of any premium increase, and description of any other changes.

**7.** If we violate any of the provisions of Paragraph **3., 5.** or **6.** above by sending the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice:

   **a.** And if notice is provided prior to the expiration date of this Policy, coverage will remain in effect at the same terms and conditions of this Policy at the lower of the current rates or the prior period's rates until 60 days after such notice is mailed or delivered, unless the first Named Insured, during this 60-day period, has replaced the coverage or elects to cancel.

   **b.** And if the notice is provided on or after the expiration date of this Policy, coverage will remain in effect at the same terms and conditions of this Policy for another policy period, at the lower of the current rates or the prior period's rates, unless the first Named Insured, during this additional policy period, has replaced the coverage or elects to cancel.

**8.** If you elect to renew on the basis of a late conditional renewal notice, the terms, conditions and rates set forth in such notice shall apply:

   **a.** Upon expiration of the 60-day period, unless Subparagraph **b.** below applies; or

   **b.** Notwithstanding the provisions in Paragraphs **7.a.** and **7.b.,** as of the renewal date of the Policy if the conditional renewal notice was sent at least 30 days prior to the expiration or anniversary date of the Policy.

© Insurance Services Office, Inc., 2014

**C.** With respect to the Auto Dealers Coverage Form:

  **1.** Paragraph **F.6. Limits Of Insurance – General Liability Coverages** of **Section II – General Liability Coverages** and Paragraph **E.4. Limit Of Insurance And Deductible** of **Section III – Acts, Errors Or Omissions Liability Coverages** are amended as follows:

    **a.** The Aggregate Limits Of Insurance for General Liability Coverages and the "Acts, Errors Or Omissions" Liability Aggregate Limit shown in the Declarations will be increased in proportion to any policy extension provided in accordance with Section **II,** Paragraph **B.7.** of this endorsement.

    **b.** The last sentence of Paragraphs **F.6.** and **E.4.** does not apply when the policy period is extended because we sent the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice.

  **2.** If the Limited Product Withdrawal Expense Endorsement is attached, then Paragraph **B.2.** is amended as follows:

    **a.** The Product Withdrawal Aggregate Limit shown in the Schedule will be increased in proportion to any policy extension provided in accordance with Section **II,** Paragraph **B.7.** of this endorsement.

    **b.** The last sentence of Paragraph **B.2.** does not apply when the policy period is extended because we sent the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice.

**THIS POLICY CONSISTS OF:**

_____        **DECLARATIONS**

_____        **COMMON POLICY CONDITIONS**

_____        **ONE OR MORE COVERAGE PARTS.  A COVERAGE PART CONSISTS OF:**

☐  ONE OR MORE COVERAGE FORMS

☐  APPLICABLE FORMS AND ENDORSEMENTS

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

*Secretary*                              *President and CEO*